**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CASEY OAKS and JAMES MORMILE Individual and on behalf of a class of similarly situated investors, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:23-cv-02833-X |
| MARABOYINA CAPITAL, LLC and SURAJ MARABOYINA, | § § § | |
| Defendants. | § § | |

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS UNDER**
**FEDERAL RULES OF CIVIL PROCEDURE 9(b), 12(b)(1), AND 12(b)(6)**

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD ....................................................................................................1

III. FACTUAL BACKGROUND ........................................................................................2

IV. ARGUMENT ...............................................................................................................7

A. Plaintiffs state a claim under the Texas Securities Act. ..............................................7

i. Plaintiffs' Claim Relates to Omissions. ........................................................................9

ii. Scienter is not required under the TSA .......................................................................11

B. Plaintiffs State a Claim for Negligent Misrepresentation ..........................................12

C. Plaintiffs State a Claim for Unjust Enrichment .........................................................14

D. Maraboyina Capital is a proper party. .......................................................................15

CONCLUSION ................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Hays*,
63 F.4th 307 (5th Cir. 2023) ................................................................................2

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ........................................................................................1

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................1

*Billitteri v. Securities America, Inc.*,
No. 09-cv-1568-F, 2010 U.S. Dist. LEXIS 143358 (N.D. Tex. July 26, 2010) ...................11

*Carroll v. Fort James Corporation*,
470 F.3d 1171 (5th Cir. 2006) ...........................................................................9

*Coburn Supply Co. v. Kohler Co.*,
342 F.3d 372 (5th Cir.2003) .............................................................................13

*Dorsey v. Portfolio Equities, Inc.*,
540 F.3d 333 (5th Cir. 2008) ...........................................................................11

*Hawkins v. Jenkins*,
No. 05-19-01396-CV, 2021 Tex. App. LEXIS 136 (Tex. App. Jan. 8, 2021)......................14

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
546 S.W.3d 648, 653-54, 61 Tex. Sup. Ct. J. 522 (2018)......................................12

*Hopkins v. Green Dot Corporation*,
No. 5:16-CV-365-DAE, 2016 WL 4468272 (W.D. Tex. Aug. 24, 2016) ..........................13

*Lockridge v. Dallas Cnty. Sch.*,
No. 3:10-CV-1175-O, 2010 WL 5538436 (N.D. Tex. Dec. 8, 2010)..................................2

*McReynolds v. Bell Textron, Inc.*,
No. 4:22-CV-00194-O-BP, 2023 WL 2432916 (N.D. Tex. Feb. 2, 2023) ..........................2

*Mitchell v. Crescent River Port Pilots Ass'n*,
265 F. App'x 363 (5th Cir. 2008) .......................................................................2

*NCUA Board v. Morgan Stanley & Co.*,
2014 U.S. Dist. LEXIS 7809 (S.D.N.Y. Jan. 22, 2014)........................................12

*O'Donnell v. Roo Investment Fund II, LLC*,
No. 05-23-00238-CV, 2024 Tex. App. LEXIS 962, (Tex. App. Feb. 7, 2024)....................7, 8

*Padua v. Jason A. Gibson*, P.C.,
No. 14-21-00489-CV, 2023 Tex. App. LEXIS 4833 (Tex. App. July 6, 2023) ...................14

*Pinter v. Dahl*,
486 U.S. 622 (1988)...........................................................................................................8

Plaintiffs, Casey Oaks and James Mormile ("Plaintiffs"), individually and on behalf of a class of similarly situated investors, through their undersigned counsel, in response to Defendants Maraboyina Capital, LLC and Suraj Maraboyina's ("Defendants") Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6) state as follows:

## I.    INTRODUCTION

Defendants were one of two American onramps for investors into for a giant Canadian Ponzi scheme. Defendants knew or should have known they were dealing with a fraudster and are liable on a series of negligence-based theories as detailed herein. With their motion to dismiss, as is all too common, Defendants attempt to dismiss the claims by seeking even more specificity. The problem with a specificity argument is that it cannot be avoided. One can always plead more facts. In this case there are sufficient facts to state a claim and this case needs to move onto discovery. These grievances are better addressed on a later motion for summary judgment after discovery is completed rather than requiring further amendment.  In deciding a motion to dismiss, the Court should be mindful that all reasonable inferences must be drawn in the Plaintiff's favor.

## II.    LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard" does not require a plaintiff to plead facts with such detail as to make the defendant's liability probable. *Robinson v. Radio One, Inc.*, 695 F. Supp. 2d 425, 427 (N.D. Tex. 2010) (*citing Iqbal*, 129 S.Ct. at 1949). Rather, a plaintiff will meet the plausibility standard when they plead "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (*citing Twombly*, 550 U.S. at 556). Additionally, the court must "accept all well-pled facts as true [and construe] all reasonable inferences in the complaint in the light most favorable to the plaintiff." *Allen v. Hays*, 63 F.4th 307, 313 (5th Cir. 2023) (*citing White v. U.S. Corrections, L.L.C.,* 996 F.3d 302, 306–07 (5th Cir. 2021)). A court cannot dismiss a plaintiff's claims based on its supposition that the plaintiff is not likely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 953 (E.D. Tex. 2011) (*quoting Twombly*, 550 U.S. at 563 n. 8).

Motions to dismiss are generally viewed with "disfavor," *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 367 (5th Cir. 2008), and rarely granted. *Lockridge v. Dallas Cnty. Sch.*, No. 3:10-CV-1175-O, 2010 WL 5538436, at *3 (N.D. Tex. Dec. 8, 2010), report and recommendation adopted, No. 3:10-CV-1175-O, 2011 WL 52735 (N.D. Tex. Jan. 6, 2011). In fact, "[d]istrict courts 'can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McReynolds v. Bell Textron, Inc.*, No. 4:22-CV-00194-O-BP, 2023 WL 2432916, at *2 (N.D. Tex. Feb. 2, 2023), report and recommendation adopted, No. 4:22-CV-00194-O-BP, 2023 WL 2432028 (N.D. Tex. Mar. 9, 2023) (*quoting Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Plaintiffs have me met—and far exceeded—the pleading standards required to survive Defendants' Motion.

## III.    FACTUAL BACKGROUND

Jason Cloth ("Cloth") is a movie producer and principal of two bankrupt entities. (Cmplt, ¶ 1). Cloth purported to raise money for specific movie projects but instead commingled all the invested funds and moved money from entity to entity without any regard for what was agreed to with investors. (Id.). At some point in or about 2021 the scheme turned Ponzi and in 2023 it went

bankrupt. (Id.) Cloth's Ponzi scheme is described in detail in the Complaint and, for the sake of brevity, will not be repeated here. (Id. ¶¶ 24-113).

Defendant Suraj Maraboyina's ("Maraboyina") role in the scheme was to recruit wealthy individuals to invest in the Ponzi scheme. (Id., ¶ 14). Maraboyina was an Investment Adviser who passed a series 65 Examination. (Id., ¶ 12). His focus as an Investment Adviser was selling and managing alternative investments for high net worth individuals and families. (Id., ¶ 13). Cloth was deceptive and his scheme was designed to prey on wealthy individuals without in depth knowledge of the innerworkings of Hollywood. Maraboyina was taken hook, line, and sinker by Cloth and wanted to be a Hollywood producer himself. (Id., ¶ 19).

Cloth raised money in the United States via two principal firms who acted as placement agents selling notes for investment, including Maraboyina, most of whom raised funds from friends, family, and other downstream investors for the purpose of investing in promissory notes and co-investment agreements used to fund individual projects offered by Cloth (hereinafter "Cloth Offering"). (Id., ¶ 114). Cloth's scheme was a house of cards and an iota of due diligence by the middlemen who were earning commissions would have demonstrated this investment was not safe for anyone. (Id., ¶ 115).

Maraboyina relied on personal relationships and word-of-mouth referrals to obtain investors. (Id., ¶ 116). He typically solicited investors in person, over the telephone, and via email for the Cloth Offering, ultimately soliciting over $100,000,000 in investment for the Cloth Offering of which approximately $60,000,000 remains outstanding. (Id., ¶¶ 117-18). Maraboyina was Cloth's salesmen and broker raising money for Cloth throughout the United States. (Id., ¶ 119). Maraboyina negligently relied only on representations from Cloth when recommending the investment to Plaintiffs rather than confirming anything with third parties or looking into Cloth's

companies' finances. (Id., ¶ 120). The capital deployed by Maraboyina was provided by Plaintiffs. (Id., ¶ 121).

During this time, Cloth made representations and provided purported contracts, emails, and other information to Maraboyina, which Maraboyina negligently believed to be true and accurate without investigating the obvious holes in the story that was far too good to be true. (Id., ¶ 122). Maraboyina sold Plaintiffs investments in the Cloth Offering by regurgitating the lies told by Cloth without performing any due diligence. (Id., ¶ 123).

Maraboyina acted as the gatekeeper of information from Cloth. (Id., ¶ 124). Plaintiffs reasonably relied on Maraboyina's due diligence on the investment and representations that they were actually investing in specific projects rather than Cloth's personal piggy bank. (Id., ¶ 125). Rather than relying on any substantive investigation of its own, Maraboyina relied on the fact that Cloth kept paying as sufficient evidence that the apparent Ponzi Scheme was legitimate. (Id., ¶ 126). Maraboyina kept his head in the sand so long as the payments kept coming in from Cloth. (Id., ¶ 128).

After the defaults Maraboyina admitted to investors he was in the dark on how Cloth's scheme operated and where the invested funds went. (Id., ¶ 129). Maraboyina admitted to no understanding the investment he sold and its relationship with the previous Ponzi scheme Cloth had run. (Id., ¶ 130). Maraboyina admitted he did not know that CWMF was in litigation in Canada at the time they invested. (Id., ¶ 131). Maraboyina further admitted to eventually discovering the underlying fraud that he knew or should have known about prior to the investment. (Id., ¶ 132).

The Cloth Offerings were structured as co-investment in various film projects. (Id., ¶ 136). For all intents and purposes, Maraboyina was acting as a placement agent for Cloth and paid to make the sales. (Id., ¶ 137). Plaintiffs and the Class reasonably relied on Maraboyina's

representations and due diligence into Cloth because he was an investment advisor who passed a Series 65 Examination and he was at all times a Registered Representative of Finalis Securities LLC Member FINRA/SIPC. (Id., ¶ 138). Placement agents such as Maraboyina who sell private placements to retail customers for a commission, such as Maraboyina, are required to register with the Financial Industry Regulatory Authority ("FINRA"). (Id., ¶ 139). FINRA regulates broker/dealer firms like Maraboyina and their registered representatives (*i.e.*, stockbrokers), and promulgates rules and regulations that brokerage firms and their registered representatives must adhere to. (Id., ¶ 140). A placement agent, or at least a party acting in that role such as Maraboyina, is required to perform reasonable due diligence on a private placement prior to offering it for sale to its customers pursuant to FINRA Rule 2111.05(a), FINRA Regulatory Notice 10-22, NASD Notice to Members 03-71, and NASD Notice to Members 05-26, 17 C.F.R. § 240.15l-1(b)(1). (Id., ¶ 141). In order to ensure that it has fulfilled its responsibilities, FINRA requires that a broker-dealer in a Regulation D offering must, at a minimum, conduct a reasonable investigation concerning: (a) the issuer and its management; (b) the business prospects of the issuer; (c) the assets held by or to be acquired by the issuer; (d) the claims being made; and (e) the intended use of proceeds of the offering. (Id., ¶ 143).

As set forth in FINRA Regulatory Notice 10-22 and securities industry standards, a reasonable investigation of Cloth's business prospects by Maraboyina should have included: (a) inquiring about the viability and value of any movies funded by Cloth; (b) inquiring about the industry in which Cloth operates, and the competitive position of Cloth; and (c) requesting any business plan, business model or other description of the business intentions of Cloth and its management and their expectations for the business, and analyzing management's assumptions upon which any business forecast is based. (Id., ¶ 148). This was not done here. Instead, it is

apparent that Cloth oversubscribed each investment and operated a Ponzi Scheme with the excess investment. (Id., ¶ 149).

Minimal investigation would have confirmed that the investments were oversubscribed, and investors were getting paid with new investments rather than proceeds of the movies they supposedly invested in. (Id., ¶ 150). While broker-dealers like Maraboyina are not expected to have the same knowledge as an issuer or its management, firms are required to exercise a high degree of care in investigating and independently verifying an issuer's representations and claims. The fact that a broker-dealer's customers may be sophisticated and knowledgeable does not obviate this duty to investigate. (Id., ¶ 157).

Maraboyina's solicitation of Plaintiffs to invest in the Cloth offering omitted to state the following material facts that were required to make the statements contained in the solicitations not misleading:

    a.    That Creative Wealth was operated by the same principals who ran another Ponzi Scheme called Crystal Wealth;

    b.    That the investments in profitable movies were oversubscribed;

    c.    That the invested funds were not used on the specific projects promised;

    d.    That investors would be paid from a line of credit rather than from the proceeds of the films they invested in;

    e.    That Maraboyina had no personal knowledge of how the invested funds were deployed;

(Id., ¶ 204).

Between March 2020 and July 2022, Plaintiff Oaks invested over $2,000,000 in the Cloth Offering through Maraboyina. (Id., ¶ 166). He is owed over $3,400,000. (Id., ¶ 167). Plaintiff

Mormile invested $125,000 in July 2019. (Id., ¶ 168). All of the investments were total losses. (Id., ¶¶ 167, 169).

## IV.    ARGUMENT

### A.    Plaintiffs state a claim under the Texas Securities Act.

The crux of Maraboyina's motion is that Plaintiffs do not meet the pleading standards of Rule 9(b). To the contrary, it is hard to envision a complaint with more detail! Plaintiffs explain, in painstaking detail the way in which the fraudster, Cloth, operated his business. But, more importantly for this lawsuit against Maraboyina, the Plaintiffs allege the way in which Maraboyina negligently parroted Cloth's sales pitch without *any* due diligence. Maraboyina acted as a middleman, obtaining investors to participate in Cloth's Ponzi scheme. And he was handsomely rewarded for his efforts. The problem was it was a Ponzi scheme and Maraboyina's investors lost millions due entirely to the first touch point: Maraboyina. But for Maraboyina's negligence in failing to perform due diligence, none of these investors would have invested in the incredibly risky endeavor.

The Texas Securities Act ("TSA") establishes both primary and secondary liability for securities violations. *Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 839 (Tex. 2005). Primary liability arises when a person "offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." *O'Donnell v. Roo Investment Fund II, LLC*, No. 05-23-00238-CV, 2024 Tex. App. LEXIS 962, at *11-12 (Tex. App. Feb. 7, 2024) quoting Tex. Rev. Civ. Stat. art. 581-33A(2).[1] Secondary liability is derivative

---

[1] In 2019, the Legislature recodified the TSA as Title 12 of the Texas Government Code. *See* Tex. Govt. Code § 4001.001. Former Section 33(A)(2) is now codified at Section 4008.052 of the Government Code. The recodification of the TSA became effective on January 1, 2022. *See O'Donnell*, fn 3.

liability for another person's securities violation; it can attach to either a control person, defined as "[a] person who directly or indirectly controls a seller, buyer, or issuer of a security," or to an aider, defined as one "who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security." *Id*. quoting Rev. Civ. art. 581-33F(1)-(2). At issue here is the primary liability of Maraboyina as the one offering and selling the Cloth Offering.

Critically, liability under the TSA extends to persons other than the person who passes title. *O'Donnell*, 2024 Tex. App. LEXIS 962 at *16. Liability also extends to a person motivated at least in part by a desire to serve his own financial interest or those of the securities owner. *Id.*

A person liable under the TSA for offering or selling a security is not liable if he can establish (a) the buyer knew of the untruth or omission or (b) the offeror or seller did not know, and in the exercise of reasonable care could not have known, of the untruth or omission. Tex. Gov't Code § 4008.052. As such, the TSA establishes a negligence standard.

In *O'Donnell*, the Court of Appeals determined that O'Donnell could be held liable in his individual capacity for his role in soliciting the investments despite the fact that he was not the person who passed title because there was sufficient evidence that he was motivated by a financial interest in the transaction. *Id.* The court quoted the U.S. Supreme Court, stating that "[t]he solicitation of a buyer is perhaps the most critical stage of the selling transaction" and that "brokers and other solicitors are well positioned to control the flow of information to a potential purchaser . . . and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors." *Id.* at *16-17, quoting *Pinter v. Dahl*, 486 U.S. 622, 646 (1988).

The present case is analogous to *O'Donnell* in that, despite the fact that Maraboyina was

not passing title – Cloth was passing title – Maraboyina had a financial interest in the transaction and was "well positioned to control the flow of information" to the investors. Maraboyina, like O'Donnell was the participant in the selling transaction disseminating information to investors. He simply parroted Cloth's lies with no due diligence into the veracity of the information. Maraboyina was a well-paid, willing participant in the scheme.

### i. Plaintiffs' Claim Relates to Omissions.

In suggesting that Plaintiffs failed to allege the who, what, when, where, and how of their TSA claim, Maraboyina misses the entire point of the claim. It is not what Maraboyina said. It was what he did not say. It was what he did not do: due diligence. All of the claims against Maraboyina are related to his failure to perform due diligence related to the Cloth Offerings. Even a modicum of due diligence – a Google search perhaps – would have revealed that immediately prior to opening Creative Wealth, that the same bad actors had operated a Ponzi scheme in Canada through a remarkably and disconcertingly similar name, Crystal Wealth; both with acronyms of CWMF.

In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading. *Carroll v. Fort James Corporation*, 470 F.3d 1171, 1174 (5th Cir. 2006).

The facts omitted are as follows: That Creative Wealth was operated by the same principals who ran another Ponzi Scheme called Crystal Wealth; That the investments in profitable movies were oversubscribed; That the invested funds were not used on the specific projects promised; That investors would be paid from a line of credit rather than from the proceeds of the films they invested in; That Maraboyina had no personal knowledge of how the invested funds were deployed; Cloth did not employ an accountant or bookkeeper to track the invested funds and funds returned to investors;  That profits on successful projects would be diverted elsewhere; Cloth was

spending the investor funds on his own lavish lifestyle. (Cmplt, ¶ 204).

The facts of the case are absolutely terrible. Cloth was running a Ponzi scheme, and a modicum of due diligence would have prevented millions of dollars of losses by Maraboyina's investors. If Maraboyina had done an ounce of due diligence he would have realized that no investment with Cloth was suitable. A peek into Creative Wealth's books and records would have revealed that specific projects were oversubscribed and that funds were not being used for their specified purposes. Maraboyina could have easily sought the records of the accountant or bookkeeper and then immediately realized that there was none; a huge red flag, especially considering that it was the accountant that was tagged with a huge amount for Cloth's last Ponzi scheme.

This information – these omissions – were all necessary for Maraboyina's investors to make fully informed investment decisions. Maraboyina "issued numerous statements and other papers or documents touting the value of the Cloth Offering." (Cmplt, ¶ 202). Imagine, if Maraboyina had prefaced his sales pitch by telling the prospective investor that they would be investing with someone who had just recently managed a Ponzi scheme in Canada that was in bankruptcy. So, where should these omissions have been identified? Everywhere. But, more specifically, in the statements, papers, and documents Maraboyina used to tout the investments to his investors.

Finally, Plaintiffs are required to describe the way in which the omitted facts made the representations misleading. As an initial matter, it seems obvious that not informing your clients that the investment is run by someone who just came off a Ponzi scheme would be a critical factor in deciding whether to invest a substantial amount of money. Investing money in a Ponzi scheme is obviously riskier than investing in a legitimate investment.

10

But the key element here is that Plaintiffs were entitled to rely on Maraboyina's representations because he had duties to investors under FINRA. (Cmplt, ¶ 143). Specifically, FINRA requires a broker-dealer like Maraboyina to conduct a reasonable investigation concerning (a) the issuer and its management; (b) the business prospects of the issuer; (c) the assets held by or to be acquired by the issuer; (d) the claims being made; and (e) the intended use of proceeds of the offering. (Cmplt, ¶ 143). Further, under FINRA Rule 2111 broker-dealer must have a reasonable basis to believe that a recommendation to purchase, sell or exchange a security is suitable for the customer. (Cmplt, ¶ 153). A broker-dealer must also note any information that it encounters that could be considered a "red flag" that would alert a prudent person to conduct further inquiry. (Cmplt, ¶ 160).

As a result of these duties, Plaintiffs reasonably relied on Maraboyina's due diligence on the investment and his representations that investors were actually investing in specific projects rather than Cloth's personal piggy bank. (Cmplt, ¶ 125). Maraboyina's silence, in light of his extraordinary responsibilities to investors, suggests that he completed his due diligence, when we now know that he did not.

### ii.   Scienter is not required under the TSA.

Defendants suggest that Plaintiffs claims under the TSA fail because fraud requires scienter. Defendants plainly miscomprehend the cause of action. Plaintiffs are not claiming fraud. They are making a claim under the TSA, which does not have the same elements as a common law claim for fraud. Under the TSA, negligence is sufficient to establish a claim.

"[U]nlike a common law fraud cause of action, an article 581-33 claim does not require scienter--i.e., proof that the speaker knew that the representation was false, or made it without regard to its truth or falsity." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343-44 (5th Cir. 2008); *Billitteri v. Securities America, Inc.*, No. 09-cv-1568-F, 2010 U.S. Dist. LEXIS 143358, at

*22 (N.D. Tex. July 26, 2010).

With respect to pleading requirements, the TSA "place[s] a relatively minimal burden on the plaintiff." *NCUA Board v. Morgan Stanley & Co*., 2014 U.S. Dist. LEXIS 7809, at *47-48 (S.D.N.Y. Jan. 22, 2014). It does not require allegations of scienter, reliance, or loss causation in order to state a claim. *Id.*

Plaintiffs do not suggest that Maraboyina *knew* that Cloth was defrauding his clients, only that Maraboyina epically failed in his duties to perform due diligence into the suitability of the investment. Section 33 of the TSA provides the offeror or seller a defense he "did not know, and in the exercise of reasonable care could not have known, of the untruth or omission." Here, Maraboyina will not be able to establish this defense when, in the exercise of reasonable care, he would have determined the truth behind this Ponzi scheme.

The TSA does not require that the offeror or seller have actively defrauded his investors; merely that he could have uncovered the truth if he had exercised of reasonable care.

**B. Plaintiffs State a Claim for Negligent Misrepresentation**

To prevail on a cause of action for negligent misrepresentation, a plaintiff must show: (1) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence  in obtaining or communicating the  information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C*., 546 S.W.3d 648, 653-54, 61 Tex. Sup. Ct. J. 522 (2018).

Defendants, again, miss the point that the claim is related to omissions by Maraboyina that were necessary to provide full context for the purported investments. It is not that Maraboyina

said, "Cloth is not a fraudster." It is the fact that he had a duty to disclose red flags and did not disclose the many red flags, including that the same bad actors had just operated a Ponzi scheme. It is both material and presumed that an investment broker with the duty to do so would investigate and disclose the significant red flags. The fact that Maraboyina did not disclose the red flags gives the investors the false sense of security that he did.

Defendants disingenuously suggest that it is "temporally impossible" for statements by Maraboyina "to have influenced any investment decisions by Plaintiffs." (Mot., p. 12.) It is shocking that Maraboyina would recruit and sell an investment into a Ponzi scheme and then suggest that if he had told his clients that it was a Ponzi scheme that they still would have invested. Maraboyina had a duty to his investors and utterly failed in that regard.

Defendants suggest "there is no Texas case law supporting a misrepresentation claim based upon an omission <u>without a corresponding duty to disclose</u>." (Mot., pp. 13-14, citing *Hopkins v. Green Dot Corporation*, No. 5:16-CV-365-DAE, 2016 WL 4468272, at *8-9 (W.D. Tex. Aug. 24, 2016); *Coburn Supply Co. v. Kohler Co*., 342 F.3d 372, 377 (5th Cir.2003)) (Emphasis added). The key portion of that statement is now underlined: "without a corresponding duty to disclose." In making this argument, Defendants ignore the entire section of the Complaint devoted to defining Maraboyina's duties under FINRA. (Cmplt, ¶¶ 138-142). The relevant allegations are below:

140.     FINRA regulates broker/dealer firms like Maraboyina and their registered representatives (*i.e.*, stockbrokers), and promulgates rules and regulations that brokerage firms and their registered representatives must adhere to.

141.     A placement agent, or at least a party acting in that role such as Maraboyina, is required to perform reasonable due diligence on a private placement prior to offering it for sale to its customers pursuant to FINRA Rule 2111.05(a), FINRA Regulatory Notice 10-22, NASD Notice to Members 03-71, and NASD Notice to Members 05-26, 17 C.F.R. § 240.15l-1(b)(1).

142.     SEC Regulation Best Interest ("Reg B1") provides Maraboyina as a placement agent owed the following duties to Plaintiff and the Class:

(ii) Care obligation. The broker, dealer, or natural person who is an associated person of a broker or dealer, in making the recommendation, exercises reasonable diligence, care, and skill to:

(A) Understand the potential risks, rewards, and costs associated with the recommendation, and have **a reasonable basis to believe that the recommendation could be in the best interest of at least some retail customers**;

(B) **Have a reasonable basis to believe that the recommendation is in the best interest of a particular retail customer based on that retail customer's investment profile and the potential risks,** rewards, and costs associated with the recommendation and does not place the financial or other interest of the broker, dealer, or such natural person ahead of the interest of the retail customer;

(C) Have a reasonable basis to believe that a series of recommended transactions, even if in the retail customer's best interest when viewed in isolation, is not excessive and is in the retail customer's best interest when taken together in light of the retail customer's investment profile and does not place the financial or other interest of the broker, dealer, **or such natural person** making the series of recommendations ahead of the interest of the retail customer.

(17 C.F.R. § 240.15l-1(b)(1).)

Maraboyina's duties are defined by FINRA and the TSA. He cannot close his eyes to the many red flags with which he was faced without performing due diligence. He had a duty to investigate and a duty to inform his clients that the investment was risky and unsuitable. He failed in that regard and cannot avoid a claim for negligent misrepresentation where he had a duty to disclose information and the information he omitted was material to investors understanding the incredible risks involved.

**C.      Plaintiffs State a Claim for Unjust Enrichment**

A party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. *Padua v. Jason A. Gibson, P.C.*, No. 14-21-00489-CV, 2023 Tex. App. LEXIS 4833, at *14 (Tex. App. July 6, 2023); *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex. App. 1999). Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Hawkins v. Jenkins*, No. 05-19-01396-CV, 2021 Tex. App.

LEXIS 136, at *5 (Tex. App. Jan. 8, 2021).

Here, Maraboyina wrongfully secured payments from Cloth as a result of the millions of dollars Maraboyina secured for Cloth's Ponzi scheme. It would undoubtedly be unconscionable to allow Maraboyina to retain a windfall while his investors lost millions of dollars due to his own failure to perform due diligence.

### D. Maraboyina Capital is a proper party.

It is unclear at this stage what role Maraboyina Capital played in the recruiting of investors to Cloth's Ponzi scheme. However, we know that Maraboyina told investors as late as January 2023 that "[a]s we move forward, all future projects will be under the MarCap banner." (Cmplt, ¶ 21). Plaintiffs alleged that Maraboyina Capital was formed in January 2023. (Cmplt, ¶ 20). This appears to be incorrect as the Secretary of State lists Maraboyina Capital's registration date as May 16, 2022. Oaks alleges that Maraboyina sold him investments into Cloth's offerings in May 2022, June 2022, and July 2022 and that, during that time, he invested more than $1,000,000. Plaintiffs are not in a position to determine whether in May, June, and July 2022, Maraboyina was selling into Cloth's Ponzi scheme as an individual or whether he was already doing so under the Maraboyina Capital banner. But it is entirely plausible that those investments were placed with Maraboyina Capital, making it a proper party. Plaintiffs should be entitled to pursue discovery to determine who placed those investments.

**CONCLUSION**

WHEREFORE, Plaintiffs pray for an order denying Defendants' Motion to Dismiss and awarding such other and further relief as the Court deems just.

15

Dated: May 22, 2024                          Respectfully submitted,

                                             **CASEY OAKS and JAMES MORMILE,**
                                             Plaintiffs

                                             By:     /s/*Ross Good*

                                                     One of Plaintiffs' Attorneys

Ross Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
ross@loftusandeisenberg.com