UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASEY OAKS and JAMES MORMILE, | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 3:23-CV-2833-X |
| SURAJ MARABOYINA and MARABOYINA CAPITAL, LLC, | § § § § | |
| *Defendants.* | § | |

### MEMOROANDUM OPINION AND ORDER

Before the Court is Suraj Maraboyina and Maraboyina Capital, LLC's (MarCap) motion to dismiss Plaintiffs Casey Oaks and James Mormile's Complaint under Federal Rules of Civil Procedure Rule 9(b), 12(b)(1) and 12(b)(6). (Doc. 14). Considering the pleadings, the parties' briefing, and the applicable law the Court **GRANTS** the motion and **DISMISSES WITHOUT PREJUDICE** all claims.

### I. Factual Background

This is a case about Hollywood and how movies and shows get from the script to the screen. The short answer is money—and lots of it. Wishful investors put their money into different movies and shows hoping to see a return when their investments do well. In this case, Maraboyina and MarCap, allegedly facilitated a scheme to defraud movie and show investors, including Casey Oaks and James Mormile. Those investors, realizing their La-La-Land investment had flopped worse than *John Carter*, brought this suit.

1

Jason Cloth is allegedly the Jordan Belfort of this story. He is a Hollywood movie producer, credited on such titles as *Joker*, *The Ministry of Ungentlemanly Warfare,* and *The Green Knight*.[1] The plaintiffs allege that Cloth is also a prolific fraudster who financed many films through a Ponzi scheme. Cloth's scheme allegedly worked by oversubscribing investments for movies and shows—apparently paying out investors only as needed to string them along. Oaks and Mormile assert that they were hustled for head-spinning sums of dollars in these schemes.

Ultimately, the Jordan Belfort character is not a defendant in this lawsuit. Instead, the corporeal defendant is Suraj Maraboyina, who is more like Jonah Hill's character Donnie Azoff. Maraboyina is a Hollywood producer in his own right, credited on films like *Babylon* and *The Man from Toronto*.[2] He also purportedly served as one of Cloth's aides in pushing this scheme. According to the complaint, Maraboyina "held [him]self out as a fiduciary for investors and sold dozens of individuals on the lies told by Cloth."[3] These "lies" were designed to induce investment into Cloth's scheme, colorfully described in the complaint as the "Cloth Offering."[4]

---

[1] *Jason Cloth*, IMDB, https://www.imdb.com/name/nm6672783/ (last accessed February 6, 2025).

[2] *Suraj Maraboyina*, IMDB, https://www.imdb.com/name/nm11476186/ (last accessed February 6, 2025).

[3] Doc. 1 at ¶ 4.

[4] *See, e.g.*, Doc. 1 at ¶ 170.

For a period of roughly three years, Maraboyina "regurgitat[ed] the lies told by Cloth" to Oaks and Mormille.[5] In so doing, he issued "numerous statements and other papers or documents touting the value of the Cloth Offering."[6] These unidentified "solicitation[s] contained materially false and untrue statements including negligent misrepresentations about the nature of Cloth's scheme."[7] The plaintiffs do not cite to any of these documents.

Cloth's scheme eventually fell apart. In July 2023, Cloth's companies sought bankruptcy protections in Canada. At some undisclosed point in time, Maraboyina allegedly "admitted to no[t] understanding the investment he sold,"[8] and "further admitted to eventually discovering the underlying fraud that he knew or should have known about prior to the investment."[9] Tired of waiting for a payout that would never come, the plaintiffs filed this lawsuit against Maraboyina and MarCap.

## II. Legal Standards

Because the motion to dismiss seeks dismissal both on Rule 12(b)(1) and 12(b)(6) grounds, legal standards for both Rule 12(b)(1) and Rule 12(b)(6) are laid out below. Lastly, the Court will discuss the heightened pleading standards under Rule 9(b).

---

[5] Doc. 1 at ¶ 123.
[6] Doc. 1 at ¶ 202.
[7] Doc. 1 at ¶ 203.
[8] Doc. 1 at ¶ 130.
[9] Doc. 1 at ¶ 132.

3

A Rule 12(b)(1) motion seeks dismissal for lack of subject-matter jurisdiction. To determine if the court has subject-matter jurisdiction, the Court may consider "any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[10] While "[t]he party asserting jurisdiction constantly bears the burden of proof that jurisdiction does in fact exist,"[11] "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction."[12] If the Court finds that it lacks subject-matter jurisdiction, the Court should dismiss without prejudice.[13] If a court does so, then the party may generally replead once to cure the jurisdictional defects if they are curable.[14]

Next is Rule 12(b)(6). For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[15] To do so, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] In assessing this motion, the court must accept all factual allegations as true, but need not defer to conclusory legal

---

[10] *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (cleaned up).

[11] *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (cleaned up).

[12] *Santerre v. Agip Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999).

[13] *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020), *as revised* (Dec. 30, 2020).

[14] *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

[16] *Id.*

statements.[17] Thus, to be considered plausible, the complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[18]

The plaintiffs must plead certain causes of action with heightened specificity. Fraud, in its various flavors, is one of them.[19] Rule 9(b) demands that a complainant establish the "who, what, when, where, and how" of a fraud.[20] Namely, a complainant must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[21] Courts recognize that "[a] complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail."[22] Thus, in looking for particularity, "we apply the rule with force, without apology."[23]

"Rule 9(b) applies to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."[24] Accordingly, "[a] plaintiff alleging a violation of Texas securities fraud under the TSA, that is, a violation of article 33 of the TSA, must satisfy the heightened pleading

---

[17] *Id.*

[18] *Id.*

[19] Fed. R. Civ. P. 9(b).

[20] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (cleaned up).

[21] *Id.* at 177.

[22] *Id.* at 178.

[23] *Id.*

[24] *Tour Strategy LLC v. Star-Telegram, Inc.*, No. 4:18-CV-074-A, 2018 WL 3242280, at *2 (N.D. Tex. July 3, 2018) (McBryde, J.) (citing *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998)).

requirements of Rule 9(b)."[25] This particularity requirement applies with equal force to theories of fraud that rest on omissions.[26] This means that a plaintiff must plead precise occasions when an omission occurred and cannot rest on allusions to a defendant's ongoing selective forgetfulness.[27]

### III. Analysis

The plaintiffs fail to show the Court's subject-matter jurisdiction over MarCap and fail to state a claim for any cause of action against Maraboyina himself. The gravamen of the complaint is that Maraboyina omitted details of Cloth's fraudulent activity when he pitched various projects to investors. The plaintiffs do not point to specific representations that Maraboyina made to induce their investment and explain how those statements were rendered defective by material omissions; the plaintiffs fail to plead how Maraboyina committed a securities fraud. Further, they fail to show that he abridged any affirmative disclosure duties, as a placement agent or otherwise. As such, their claims mut be dismissed.

### A. Maraboyina Capital, LLC and 12(b)(1)

The defendants assert that the plaintiffs' injuries are not traceable to MarCap because MarCap did not exist until 2023[28] and the alleged statements and omissions

---

[25] *Billitteri v. Sec. Am., Inc.*, No. 09-CV-1568-F, 2010 WL 6785484, at *5 (N.D. Tex. July 26, 2010) (Furgeson, J.) (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343–44 (5th Cir. 2008)) (cleaned up).

[26] *Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019), *as revised* (June 6, 2019) ("To plead an omission with sufficient particularity, plaintiff must specifically plead when a given disclosure should have been made.").

[27] *See id.*

[28] The plaintiffs admit that their pleading as to when MarCap was formed "appears to be incorrect" as "the Secretary of State lists Maraboyina Capital's registration date as May 16, 2022."

occurred prior to the formation of MarCap. A plaintiff must establish standing as to each defendant and for each form of relief the plaintiff seeks.[29] Here, that means the plaintiffs must show that their alleged injuries are fairly traceable to both Maraboyina and MarCap.

The plaintiffs have not traced their injuries to MarCap. The plaintiffs have not pled sufficient facts detailing how MarCap is involved—although they possibly could. In short, as the plaintiffs have pled, MarCap appears to have begun operations around January 2023—well after the solicitations at issue here.[30] Because it appears that the plaintiffs might be able to plead sufficient facts that would implicate MarCap, but have not yet pled them, the Court **GRANTS** the 12(b)(1) motion, but only **DISMISSES WITHOUT PREJUDICE** the claims against MarCap. The Court grants leave to the plaintiffs to file one amended complaint to cure this defect within twenty-eight days from the date of this order.

### B. Texas Securities Act

Under the Texas Securities Act, a securities salesman is liable if he "offers or sells the security by means of an untrue statement of a material fact *or an omission to state a material fact necessary in order to make the statements made*, in light of the circumstances under which they are made, not misleading."[31] And there is no

---

Doc. 16 at 15. While the plaintiffs' response to the motion to dismiss provides a theory for how MarCap could have been involved, that does not appear in the Complaint. *Id.*

[29] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

[30] Doc. 1 at ¶ 20.

[31] Tex. Govt. Code § 4008.052(a) (emphasis added). Prior to 2019, this portion of the Texas Securities Act was codified at Tex. Rev. Civ. Stat. art. 581-33(A)(2). *Slack v. Shreve*, No. 12-24-00014-CV, 2024 WL 4644610, at *1 n.2 (Tex. App.—Tyler 2024, no pet.).

scienter requirement here.[32] Still, these omissions must render "*the statement made . . . misleading.*"[33] Omissions cannot be alleged to exist *everywhere*.[34]

The complaint alleges Maraboyina omitted material facts that he was obligated to disclose to investors.[35] Even if that is the case, those omissions are not pled with the requisite specificity to satisfy Rule 9(b). The very few Maraboyina quotes the complaint cites almost all came after the investments were concluded. But as the defendants aptly note,[36] this sort of *post hoc* admission could not have possibly influenced earlier investment decisions.[37] Therefore, it cannot be said that those omissions, even if they are omissions, were the *means* by which Maraboyina sold or offered the security.

There appears to be one exception to this temporal befuddlement of Maraboyina's statements in the complaint. That is, on April 16, 2021, Maraboyina allegedly emailed Oaks that the sale of one show was nearing completion. Then, Oaks informed Maraboyina that as soon as that investment was paid back, then Oaks could invest in another venture. Oaks was then paid in time to invest in *National Anthem*. But what the complaint has in leadup, it lacks in follow through. It has all the

---

[32] *Dorsey*, 540 F.3d at 343–44 ("an article 581-33 claim does not require scienter"). While this is generally true, if asserting a claim "based on an untrue promise of future performance, fraudulent intent would be required." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564 (5th Cir. 2002).

[33] Tex. Govt. Code § 4008.052(a)

[34] *See Carroll v. Fort James Corp,* 470 F.3d 1171, 1174 (5th Cir. 2006) (noting that to survive on motions to dismiss, complaints must state "the place in which the omissions should have appeared").

[35] Doc. 1 at ¶ 186.

[36] *See* Doc. 17 at 5–6.

[37] The only way it could have is explained in the film *Interstellar*, where Cooper, after falling into a tesseract, communicates with his daughter from the future. No such facts have been pled here.

relevant information except the solicitation actually at issue with respect to *National Anthem*. Far from asserting, "Maraboyina called me on *X* day, told me to invest in *Y*, and omitted *Z*," the Court is left to guess as to the solicitation and whether and under what circumstances Maraboyina may have induced Oaks to invest by omitting material information.

### C. Negligent Misrepresentation

The plaintiffs also plead that Maraboyina is liable for negligent misrepresentation. But this claim must also be dismissed for similar issues. Negligent misrepresentation normally has four elements under Texas law:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.[38]

Importantly, to plead negligent misrepresentation when fraud and negligent representation claims "are based on the same set of alleged facts," Rule 9(b)'s pleading standard still applies.[39]

---

[38] *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (cleaned up).

[39] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003)

9

Texas law does recognize negligent misrepresentation by omission when there is a special duty of disclosure.[40] "Generally, a duty of disclosure arises only in confidential or fiduciary relationships."[41]

Even assuming the defendants owed fiduciary duties to the plaintiffs, the plaintiffs fail to plead any pecuniary loss occurred by "justifiably relying" on any representation or omission. As above, the plaintiffs never specifically allege a solicitation. Some pleading that the plaintiffs relied on a particular statement and suffered pecuniary loss is necessary.

But other problems persist. The plaintiffs recite a set of Financial Industry Regulatory Authority regulations that purportedly required the defendants to disclose red flags to the plaintiffs, thus establishing a duty to disclose. But those regulations only cover the recommendation to invest—not subsequent interactions.[42] Because the plaintiffs have not pled as to the particular statements recommending that the plaintiffs invest, they have failed to establish a duty to disclose existed as to a particular statement.

Finally, the plaintiffs have failed to plead that the defendants owed a fiduciary duty to the plaintiffs. Sure, Maraboyina was a certified financial advisor, and had allegedly worked at all relevant times for a company registered under the Financial

---

[40] *Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372, 377 (5th Cir. 2003) ("non-disclosures cannot be negligent *unless* there is a duty to disclose") (emphasis added).

[41] *Fleming v. Tex. Coastal Bank*, 67 S.W.3d 459, 461 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

[42] 17 C.F.R. § 240.15*l*-1(a)(2)(ii).

Industry Regulatory Authority.[43]  But middlemen, even if they are brokers, are not necessarily fiduciaries under Texas law,[44] and the plaintiffs admit Maraboyina was merely a "middleman."[45]  To show a fiduciary duty, one must plead facts that support the conclusion that some sort of principal–agent relationship existed.[46]  No such pleading has been made here.

### D. Unjust Enrichment

"Unjust enrichment is not an independent cause of action under Texas law."[47]  Instead, it is "a theory upon which an action for restitution may rest."[48]  Because the plaintiffs fail to state a claim on their other two causes, they cannot sustain this basis for restitution, either.

### IV. Conclusion

For the foregoing reasons, the motion to dismiss for failure to state a claim is **GRANTED**.  The Court **DISMISSES WITHOUT PREJUDICE** the plaintiffs' claims, but they have leave to amend the complaint within twenty-eight days of this order.  The changes to that pleading must be limited to curing the defects this opinion identifies.

---

[43] Doc. 1 at ¶ 138.

[44] *Rauscher Pierce Refsnes, Inc. v. Great Sw. Sav., F.A.*, 923 S.W.2d 112, 115 (Tex. App.—Houston [14th Dist.] 1996, no writ)

[45] Doc. 1 at ¶ 115.

[46] *See Rauscher Pierce Refsnes, Inc.*, 923 S.W.2d at 115.

[47] *Hoffman v. L&M Arts*, 774 F. Supp. 2d 826, 848 n.18 (N.D. Tex. 2011) (Fitzwater, C.J.)

[48] *Id.* (collecting cases).

**IT IS SO ORDERED** this 6th day of February, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE