# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| **CASEY OAKS and JAMES MORMILE** **individually and on behalf of a class of** **similarly situated investors,** | § § § § | |
| **Plaintiffs,** | § § | **Case No.  3:23-cv-02833-X** |
| **v.** | § § | |
| **SURAJ MARABOYINA,** | § § | |
| **Defendants.** | § § § | |

## DEFENDANTS' MOTION TO STRIKE AND DISMISS
## PLAINTIFFS' AMENDED COMPLAINT

**TABLE OF CONTENTS**

I.    FACTUAL BACKGROUND ................................................................................3

II.   LEGAL STANDARD ........................................................................................6

      a.    Federal Rule of Civil Procedure 12(f) ....................................................6

      b.    Federal Rule of Civil Procedure 12(b)(6) ..............................................7

III.  ARGUMENT    ........................................................................................7

      a.    The Court should strike Plaintiffs' three new claims and all allegations related to the Conover case because they exceed the leave to amend authorized in the Court's February 6, 2025 Opinion ....................................................................7

      b.    The Court may take judicial notice of the Participation Agreements and consider them on a Motion to Dismiss ...............................................................9

      c.    Plaintiffs fail to state a claim for breach of fiduciary duty ....................................11

      d.    Plaintiffs fail to state a claim for negligence ........................................14

              i.    Plaintiffs fail to allege that Maraboyina owed them a duty of case as an investment advisor or broker-dealer to conduct a particular sort of investigation before offering the investment ................14

              ii.    Plaintiffs fail to allege that any acts by Maraboyina caused their injury ....................................................................15

                      1.    Plaintiffs fail to allege that they relied on Maraboyina's "approval" in deciding to purchase the security ............15

                      2.    Plaintiffs fail to allege that Maraboyina, and not a third-party, proximately caused their injury ....................................19

      e.    Plaintiffs fail to state claim for assumpsit .........................................20

      f.    Dismissal should be made with prejudice .........................................22

IV.   CONCLUSION ...............................................................................22

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 7

*Beauty MedSpa, Inc. v. FPG The Point LP*,
  2021 WL 4991998 (N.D. Tex. Oct. 27, 2021)...................................................... 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007). ........................................................................................... 7

*Berry v. Lee*,
  428 F.Supp.2d 546, 563 (N.D.Tex. 2006); *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985)
  .......................................................................................................................... 6,9

*Boley v. Pineloch Assocs., Ltd.*,
  700 F. Supp. 673 (S.D.N.Y. 1988) ..................................................................... 12

*Boreri v. Fiat S.p.A.*,
  763 F.2d 17 (1st Cir. 1985).............................................................................. 6, 9

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
  907 S.W.2d 472 (Tex. 1995) .............................................................................. 20

*Fowler v. Schmidt Advisory Services, Inc.*,
  No. 2024CH01610 (Cook Cnty. Circuit Ct., Ch. Div. filed Mar. 5, 2024) ................... 4

*Gilmore v. Off. of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*,
  No. CV 14-00434-JWD-EWD, 2016 WL 3675482 (M.D. La. Apr. 5, 2016 ................ 8

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) .............................................................................. 7

*Iron Mt. Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*,
  42 S.W.3d 149 (Tex. App.—Amarillo 2000, no writ)............................................ 21

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*,
  341 S.W.3d 323 (Tex. 2011) .............................................................................. 17

*Jefferson Parish Consol. Garbage Dist. No. 1 v. Waste Mgmt. of La.*,
  2010 WL 1731204 (E.D. La. Apr. 28, 2010)....................................................... 9

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*,
  546 S.W.3d 648 (Tex. 2018) .............................................................................. 18

*King v. Tubb*,
  551 S.W.2d 436 (Tex.App.—Corpus Christi 1977, no writ)..................................... 20

iii

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ................................................................. 9

*Lone Star Steel Co. v. Scott*,
   759 S.W.2d 144 (Tex. App.—Texarkana 1988, writ denied) ................................. 9, 21

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
   369 F.3d 464 (5th Cir. 2004) ................................................................. 7

*McInerney v. Moyer Lumber & Hardware, Inc.*,
   244 F.Supp.2d 393 (E.D.Pa.2002)........................................................... 6, 9

*McIntosh v. Wiley*,
   2006 WL 3691109 (S.D. Tex. Dec. 11, 2006)............................................... 21

*Moss v. Morgan Stanley Inc.*,
   719 F.2d 5 (2d Cir. 1983), *cert. denied* 465 U.S. 1025 (1984)................................ 11

*Nat'l Prop. Holdings, L.P. v. Westergren*,
   453 S.W.3d 419 (Tex. 2015) ................................................................. 18

*Providence Title Co. v. Truly Title, Inc.*,
   2022 WL 925055 (E.D. Tex. Mar. 29, 2022 ............................................... 17-18

*Schiller v. Physicians Res. Group, Inc.*,
   342 F.3d 563 (5th Cir. 2003) ................................................................. 3

*Schlumberger Tech. Corp. v. Swanson*,
   959 S.W.2d 171 (Tex. 1997) ................................................................. 18

*Staats v. Miller*,
   150 Tex. 581, 243 S.W.2d 686 (Tex. 1951) ................................................. 20

*Taubenfeld v. Hotels.com*,
   385 F. Supp. 2d 587 (N.D. Tex. 2004) ..................................................... 3, 22

*United States v. Coney*,
   689 F.3d 365 (5th Cir. 2012) ................................................................. 9

*Vannest v. Sage, Rutty & Co.*,
   960 F. Supp. 651 (W.D.N.Y. 1997)........................................................... 12

*W & W Oil Co. v. Capps*,
   784 S.W.2d 536 (Tex. App.—Tyler 1990, no writ) ......................................... 21

*Weatherly v. Pershing, LLC*,
   2015 WL 13742270 (N.D. Tex. June 23, 2015) ........................................... 15

*Williams v. City of Irving*,
   No. 3:15-CV-1701-L, 2018 WL 4145052 (N.D. Tex. Aug. 30, 2018) ......................................... 8

*Woodard v. S.W. States, Inc.*,
   384 S.W.2d 674 (Tex. 1964) ........................................................................... 21

## **RULES**

Federal Rules of Civil Procedure 12(b)(6) ........................................................ 1

Federal Rules of Civil Procedure 12(f) ....................................................... 1, 6

Defendant Suraj Maraboyina respectfully moves to strike improper amendments and allegations in the Amended Complaint and dismiss the Amended Complaint in its entirety with prejudice under Federal Rules of Civil Procedure 12(f) and 12(b)(6).

Plaintiffs Oaks and Mormile are lenders to several films who now claim they face significant losses because of a purported "Ponzi Scheme" orchestrated by Jason Cloth through Bron Studios and Creative Wealth Management Fund Corp. ("CWMF"). As the Court may recall from Maraboyina's prior Motion to Dismiss, none of these purported wrongdoers is a party to this lawsuit. Plaintiffs' counsel filed a nearly identical lawsuit against those parties in Illinois state court, a case that has since been dismissed. *See* Terwey Decl, Ex. A (Fowler Order).[1] Here, Plaintiffs have sued Suraj Maraboyina. Plaintiffs initially asserted claims for securities fraud, negligent misrepresentation, and unjust enrichment; however, the Court dismissed those claims under Rule 12(b)(6). Plaintiffs now seek a second bite at the apple. Plaintiffs have abandoned their earlier claims and fraud/misrepresentation theories and now assert entirely new claims for breach of fiduciary duty, negligence, and assumpsit against Maraboyina, in contravention of the Court's February 6, 2025 Opinion instructing them to limit amendments to addressing the defects the Court identified in Plaintiffs' original claims. The Court should strike Plaintiffs' new claims in their entirety and dismiss Plaintiffs' Amended Complaint for exceeding the scope of the Court's authorization.

Even if the Court were to consider them, Plaintiffs' new claims fare no better than those asserted in Plaintiffs' first attempt. Not only do Plaintiffs fail to add sufficient factual content to address the flaws highlighted in the Court's opinion dismissing their original Complaint, but Plaintiffs cannot state a claim in light of contracts Plaintiffs signed in connection with their loans to various films through CWMF. Each loan at issue in this lawsuit (which Plaintiffs refer to vaguely as "investments" in their Amended Complaint) was memorialized in a Placement Agreement

---

[1] "Terwey Decl." refers to the Declaration of Margaret Terwey, filed contemporaneously with this Motion.

between Plaintiffs and Jason Cloth/CWMF.  In each of these Agreements (which the Court may

consider at this stage because of their centrality to the allegations in the Amended Complaint[2]),

Plaintiffs expressly represented that they:

- ***"acknowledge[d] the risks inherent in making loans and/or equity investments in the Picture and the related risks inherent in developing, producing, and marketing the Picture***, including but not limited to the possibility of cost overruns, lower sales than anticipated and loss of financing."

- Acknowledged that "Lender shall not have any liability to Financier with respect to any action taken or omitted by Lender, its employees or agents, in connection with the Financing Agreements or for any error in judgment except for its own gross negligence or wilful misconduct."

- "acknowledge[d] that it may make its own independent investigation of the Borrower and that it will be given access to all information with respect to the Borrower and Lender that it wished to have and an opportunity to make such inquiry of the Borrower as to Borrowers' condition and the arrangements between the Borrower and Lender and inquiry of Lender in connection therewith as Financier determines to be necessary or appropriate.  ***The Financier is not relying on the Lender, its affiliates or counsel to any of them in this regard***."

*See* Terwey Decl., Ex. B § 8(a) (Oaks – Monkey Man) (emphasis added); Ex. C § 8(a) (Oaks –

Fables); Ex. D § 8(a) (Oaks – Bubbles Hotel); Ex. E § 8(a) (Oaks – Young Bear Grylls);  Ex. F § 8(a)

(Oaks – Hailey and the Hero Heart - unexecuted);  Ex. G § 8(a) (Oaks – Monkey Man); Ex. H § 8(a)

(Oaks – Monkey Man); Ex. I § 8(a) (Oaks – National Anthem); Ex. J § 8(a) (Oaks – Robin Hood);

Ex. K § 8(a) (Oaks – Gossamer); Ex. L § 8(a) (Oaks – Gossamer).[3]  In the Term Sheets incorporated

into the Participation Agreements, Plaintiffs further represented that they "relied on [their] own

examination of the investment" and were "aware that [they] may be required to bear the financial

risks of this investment for an indefinite period of time."  *Id.*, Ex. B, Term Sheet at 2; Ex. C, Term

---

[2] *See infra* Section III.b.

[3] Discovery has not commenced yet in this action, and Maraboyina does not presently have access to each of the Participation Agreements for the entire class.  Each of the attached Participation Agreements contained nearly identical disclaimer language, and Defendant believes each of the Participation Agreements was substantially the same.  At the very least, the loans that are subject to the Participation Agreements that contain the disclaimer language—including nearly all the Oak investments listed in this lawsuit and attached to this Motion—should be dismissed, which would significantly limit the size and scope of the proposed class.

Sheet at 2; Ex. D, Term Sheet at 2; Ex. E, Term Sheet at 2; Ex. F, Term Sheet at 2 (unexecuted); Ex. G, Term Sheet at 2; Ex. H, Term Sheet at 2; Ex. J, Term Sheet at 2-3; Ex. K, Term Sheet at 2; Ex. L, Term Sheet at 2.  Plaintiffs' allegations in the Amended Complaint are incompatible with their own representations in the Participation Agreements, in which they expressly recognized the significant risks inherent in investing in films, acknowledged that they had an opportunity to conduct their own independent investigation into the investment, were relying on their own investigation, and were not relying on CWMF, its affiliates or counsel, regarding the soundness of the investment. Notwithstanding these express and unequivocal disclaimers, Plaintiffs now claim they relied on Maraboyina, who they allege was a "placement agent or broker for Cloth" (an "affiliate") of CWMF, for precisely this advice.  *E.g.*, ECF No. 5 ¶ 5.  In short, Plaintiffs appear to seek the benefits of the Participation Agreements through this lawsuit yet hope to avoid the consequences of their own promises in those same Agreements.

For these reasons, as well as the other deficiencies discussed herein, Plaintiffs again fail to state a claim against Maraboyina, and their Amended Complaint should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(6).  As this is Plaintiffs' second attempt to state claims against Maraboyina, it is clear that facts that would support such claims do not exist and further amendment would be futile.  *Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004) (citing *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)) ("A dismissal with prejudice is appropriate when amending a complaint would be futile.").  Accordingly, Maraboyina respectfully requests that any dismissal be with prejudice.

## I.    FACTUAL BACKGROUND

Plaintiffs are two non-Texas citizens who loaned money to CWMF to invest in several movie projects between July 29, 2019, and July 15, 2022. ECF No. 19 ¶¶ 184, 186.  Plaintiffs also seek to certify a class of "[a]ll persons who invested in CWMF's projects offered by Maraboyina from January 1, 2019 to December 31, 2022."  *Id.* ¶ 191.

According to Plaintiffs' allegations, they invested in specific movies and were informed by Cloth that they would be repaid (or not) depending on that movie's success. *Id.* ¶ 59. However, the investors claim that they were not repaid appropriately—they received more than expected for less profitable projects and received less than expected for profitable ones—because Cloth was engaged in a "Ponzi Scheme" and did not use their investments for the intended purposes. *Id.* ¶¶ 2-4. It is not clear from Plaintiffs' Amended Complaint what the nature of the Ponzi Scheme was. Both Bron and CWMF are currently in bankruptcy proceedings in Canada, which has frozen their assets and prevented these entities from distributing profits from the films to investors. *Id.* ¶¶ 182-83. The Plaintiffs may be paid back in part or in whole once these bankruptcy proceedings are resolved.

None of the supposed bad actors—Cloth, Bron Studios, CWMF—are parties to this lawsuit, although Plaintiffs' counsel has sued Cloth for the same conduct and same injury in a separate class action in Illinois state court. *Fowler v. Schmidt Advisory Services, Inc.*, No. 2024CH01610 (Cook Cnty. Circuit Ct., Ch. Div. filed Mar. 5, 2024). On February 20, 2025, the Illinois Court granted Defendant Jason Cloth's motion to dismiss the claims for failure to state a claim on some of the same grounds as in this Court's February 6, 2025 opinion. *See* Terwey Decl., Ex. A.

Instead, Plaintiffs seek to hold Suraj Maraboyina liable for negligently failing to discover Cloth's alleged "Ponzi Scheme." According to Plaintiffs, Maraboyina acted as a placement agent for Cloth/CWMF and recruited Plaintiffs as potential investors. ECF. No. 19 ¶¶ 5, 132-34. Plaintiffs allege that Maraboyina was entirely ignorant of Cloth's scheme and concede that he genuinely—if, they allege, negligently—"believed [Cloth's claims] to be true and accurate." ECF. No. 19 ¶ 140 & Section D ("Maraboyina's Ignorant Participation in the Scheme"). Plaintiffs claim Maraboyina acted negligently by "rel[ying] on only representations from Cloth when recommending the investment to Plaintiffs and the Class rather than confirming anything with third parties or looking into Bron or CWMF's finances." *Id.* ¶ 138. However, Plaintiffs fail to allege a single representation made by Maraboyina on which they relied when making the decision to invest in the films or how further

investigation on his part would have revealed that the investments were more than low risk.

Additionally, each of Plaintiffs' investments was memorialized in a Participation Agreement, and each of those Agreements contained substantially the same terms.[4] In each Participation Agreements, the investors—dubbed "Financiers" in the Agreement—made the following representation:

> Financier further ***acknowledges the risks inherent in making loans and/or equity investments in the Picture and the related risks inherent in developing, producing, and marketing the Picture, including but not limited to the possibility of cost overruns, lower sales than anticipated and loss of financing***. Lender makes no representation or warranty as to the commercial release of the Picture or the amount of proceeds, if any, to be received from exploitation of the Picture. ***There is no assurance that Financier will earn a profit from or recoup its Participation***. Lender agrees that it will use normal prudence and judgment in the servicing of the account and in the carrying out of the terms of the Financing Agreements. ***Lender shall not have any liability to Financier with respect to any action taken or omitted by Lender, its employees or agents, in connection with the Financing Agreements or for any error in judgment except for its own gross negligence or wilful misconduct.*** Lender does not assume, and shall not have, any responsibility or liability, express or implied, for the enforceability or collectability of the Financing Agreements, the Collateral or the condition of the Borrower or guarantors or any obligor, financial or otherwise, or the Collateral, or for the accuracy of any credit or other information furnished by the Borrower unless Lender has acted with gross negligence or wilful misconduct. ***Financier acknowledges that it may make its own independent investigation of the Borrower*** and that it will be given access to all information with respect to the Borrower and Lender that it wished to have and an opportunity to make such inquiry of the Borrower as to Borrowers' condition and the arrangements between the Borrower and Lender and inquiry of Lender in connection therewith as Financier determines to be necessary or appropriate. ***The Financier is not relying on the Lender, its affiliates or counsel to any of them in this regard***.

*See* Terwey Decl., Ex. B § 8(a) (Oaks – Monkey Man) (emphasis added); Ex. C § 8(a) (Oaks – Fables); Ex. D § 8(a) (Oaks – Bubbles Hotel); Ex. E § 8(a) (Oaks – Young Bear Grylls);  Ex. F § 8(a) (Oaks – Hailey and the Hero Heart – unexecuted);  Ex. G § 8(a) (Oaks – Monkey Man); Ex. H § 8(a) (Oaks – Monkey Man); Ex. I § 8(a) (Oaks – National Anthem); Ex. J § 8(a) (Oaks – Robin Hood);

---

[4] Although these Participation Agreements were not attached to the Amended Complaint, they are nonetheless central to Plaintiffs' claims and referenced in the Amended Complaint and thus may be considered on a Motion to Dismiss.  *See infra* Section III.b.

Ex. K § 8(a) (Oaks – Gossamer); Ex. L § 8(a) (Oaks – Gossamer).  The parties further acknowledged that the Participation Agreements contained the entire agreement between the parties, and "The parties have not relied and are not relying on any other information, discussion or understanding in entering into and completing the transactions contemplated by this Agreement."  *Id.*, Ex. B at 6; Ex. C at 6; Ex. D at 6; Ex. E at 6; Ex. F at 6 (unexecuted); Ex. G at 6; Ex. H at 6; Ex. I at 7; Ex. J at 7; Ex. K at 6; Ex. L at 6. The Term Sheets attached as exhibits to the Participation Agreements contained similar representations:

> Investor has ***relied on its own examination*** of the investment hereunder including, but not limited to, the LSA and the merits and risks involved. Investor ***is aware that it may be required to bear the financial risks of this investment for an indefinite period of time***.

*See Id.*, Ex. B, Term Sheet at 2 (emphasis added); Ex. C, Term Sheet at 2; Ex. D, Term Sheet at 2; Ex. E, Term Sheet at 2; Ex. F, Term Sheet at 2 (unexecuted); Ex. G, Term Sheet at 2; Ex. H, Term Sheet at 2; Ex. J, Term Sheet at 2-3; Ex. K, Term Sheet at 2; Ex. L, Term Sheet at 2 (emphasis added).

## II.    LEGAL STANDARD

### a.    Federal Rule of Civil Procedure 12(f)

Rule 12 of the Federal Rules of Civil Procedure provides "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of this rule is to streamline the pleadings and the litigation and to avoid unnecessary inquiry into immaterial matters. *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D.Pa.2002). Although motions to strike are infrequently granted, striking certain allegations can be appropriate when they "have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.*; *see also Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex. 2006); *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985).

### b. Federal Rule of Civil Procedure 12(b)(6)

A defendant may move to dismiss a claim under Rule 12(b)(6) where the plaintiff fails to state a claim upon which relief can be granted. Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.    ARGUMENT

### a. The Court should strike Plaintiffs' three new claims and all allegations related to the Conover case because they exceed the leave to amend authorized in the Court's February 6, 2025 Opinion.

In its February 6, 2025, Opinion, the Court granted Plaintiffs leave to amend their complaint but ordered that "changes to that pleading must be limited to curing the defects this opinion identifies." ECF No. 18 at 11. Plaintiffs' Amended Complaint goes far beyond curing the defects identified in the Court's Opinion. In the original Complaint, Plaintiffs asserted claims for violation of the Texas Securities Act, negligent misrepresentation, and unjust enrichment, all of which were dismissed. In their second attempt, Plaintiffs, perhaps recognizing that their original claims were unsalvageable, wholly abandoned those claims and asserted three new ones: breach of fiduciary duty, assumpsit, and negligence. Plaintiffs' assertion of three new claims and abandonment of the

misrepresentation theory of the case are changes that go well beyond the Court's instructions to limit their amendments to curing the identified defects.  Accordingly, Plaintiffs' new claims should be stricken, and their Amended Complaint should be dismissed for exceeding the leave to amend authorized by the Court in its Opinion. *Williams v. City of Irving*, No. 3:15-CV-1701-L, 2018 WL 4145052, at *8 (N.D. Tex. Aug. 30, 2018) ("[T]he court determines that all of the claims in Plaintiff's Amended Complaint, other than his section 1983 and 1985(2) claims against the City, exceed the scope of amendment authorized by the magistrate judge's July 14, 2017 findings and conclusions, which were accepted by the court. Consequently, all claims by Plaintiff, except for those under sections 1983 and 1985(2) against City, are not properly before the court."); *cf. Gilmore v. Off. of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*, No. CV 14-00434-JWD-EWD, 2016 WL 3675482, at *7 (M.D. La. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 3675485 (M.D. La. July 7, 2016) ("Since these two proposed amendments exceed the scope of this Court's prior ruling and attempt to reassert claims that this Court has already dismissed, plaintiffs' request for leave to amend should be denied.").

Additionally, Maraboyina respectfully asks this Court to strike all allegations referring to or arising from the SEC Cease-and-Desist Order issued in the Matter of Hudson Valley Wealth Management, Inc. and Christopher Conover, including the exhibit attached to the Amended Complaint.  *See* ECF 19 at Exhibit A.  The Cease-and-Desist Order addresses breaches of fiduciary duty by a registered investment advisor, Hudson Valley Wealth Management, Inc., and its principal Christopher Conover.  *Id.* at 2.  The order states that Conover advised his private investment fund as well as certain separately managed accounts to invest in certain films produced by an unspecified Production Company A (although we are to understand the company is also CWMF) and received fees from both his investor clients and from CWMF for those investments without disclosing the conflict to his investor clients.  *Id.*  Although Conover and Hudson Valley apparently invested in the same film company, the rest of the facts in the Order are utterly dissimilar to the facts here: Plaintiffs

8

here directly invested with CWMF, and they do not allege that they every exchanged money with or paid any fees to Maraboyina or that they had any kind of agreement with Maraboyina through which he controlled or invested their funds.   Nonetheless, Plaintiffs use the Conover case to make assumptions about the arrangement Maraboyina had with Cloth and CWMF based on the facts Conover and Hudson Valley described in the Order, without providing any basis to support that assumption.  *See* ECF No. 19 ¶ 135.  The Conover Order and allegations in the Amended Complaint do not add any factual allegations relevant to the claims against Maraboyina, nor do they address the defects discussed in the Court's Opinion.   They do nothing more than confuse the issues and prejudice Maraboyina by suggesting that because the Order concludes Conover breached his fiduciary duties, Maraboyina must have also.    While ordinarily Courts use their power to strike allegations sparingly, striking certain allegations is appropriate when those allegations exceed the scope of the authorized amendment (as discussed above) or when they have no possible relation to the controversy and may cause prejudice to one of the parties.  *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012); *Jefferson Parish Consol. Garbage Dist. No. 1 v. Waste Mgmt. of La.*, 2010 WL 1731204, at *5 (E.D. La. Apr. 28, 2010) (citing *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985); *Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex. 2006); *McInerney v. Moyer Lumber & Hardware*, Inc., 244 F. Supp. 2d 393, 401 (E.D. Pa. 2002)).  The Conover allegations and exhibit should be stricken from the pleadings for both reasons.

> **b.  The Court may take judicial notice of the Participation Agreements and consider them on a Motion to Dismiss.**

Although the Court must take as true Plaintiffs' well-pled allegations in ruling on a Rule 12(b)(6) motion to dismiss, the Court may properly consider "any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  Each of Plaintiffs' claims in this action arise from investments Plaintiffs made into several films.  Each of those investments was

memorialized by a Participation Agreement between the Plaintiffs and CWMF, and each of those Participation Agreements contained substantially the same terms.    Plaintiffs refer to those Participation Agreements in the Amended Complaint, *e.g.*, ECF No. 19 ¶ 99, and the terms of those Agreements are central to Plaintiffs' claims as they go to Plaintiffs' expectations and understanding of their rights and obligations in relation to those investments as well as Plaintiffs' relationship with and reliance on Maraboyina in connection with those investments. Accordingly, the Court may properly consider the Participation Agreements listed in Table A below in ruling on Maraboyina's Motion to Dismiss.

**Table A: Participation Agreements and Term Sheets attached to Terwey Declaration**

| Exhibit | Plaintiff | Film | Reference in Am. Compl. |
|---------|-----------|------|-------------------------|
| B | Oaks | Monkey Man | ¶ 184 |
| C | Oaks | Fables | ¶ 184 |
| D | Oaks | Bubble's Hotel | ¶ 184 |
| E | Oaks | Young Bear Grylls | ¶ 184 |
| F | Oaks | Hailey and the Hero Heart (unexecuted) | ¶ 184 |
| G | Oaks | Monkey Man | ¶ 184 |
| H | Oaks | Monkey Man | ¶ 184 |
| I | Oaks | National Anthem | ¶ 184 |
| J | Oaks | Robinhood | ¶ 184 |
| K | Oaks | Gossamer (June 9, 2022) | ¶ 184 |
| L | Oaks | Gossamer (July 15, 2022) | ¶ 184 |

Discovery has not commenced in this case, and Maraboyina does not have each of the fully executed versions of the Participation Agreements and Term Sheets for each member of the proposed class in his possession, as noted in the Terwey Declaration.    As the above chart reflects, however, Maraboyina does have Participation Agreements and Term Sheets executed by the investor for all of the investments specifically referenced in the Amended Complaint, except for Mormile's investment in Ghostbusters (ECF No. 19 ¶ 186) and Oaks's investment in Hailey and the Hero Heart (*Id.* ¶ 184). On information and belief, fully executed versions of these documents exist and are likely to be produced in this litigation by Plaintiffs or by a third party.    Based on the consistency across

documents, each of the Participation Agreements and Term Sheets likely contain the same or very similar disclaimer language.

### c. Plaintiffs fail to state a claim for breach of fiduciary duty.

In its opinion dismissing Plaintiffs' original Complaint, the Court found that Plaintiffs "failed to plead that the defendants owed a fiduciary duty to the plaintiffs," acknowledging that although Maraboyina may have been licensed as a certified financial advisor and was registered under FINRA, the Plaintiffs' allegations amounted to no more than alleging that Maraboyina was "merely a 'middleman.'"  ECF No. 18 at 10-11.  Despite the Court's ruling, Plaintiffs have doubled down on this theory by adding a new breach of fiduciary duty claim in their Amended Complaint.  Yet Plaintiffs once again fail to allege facts that establish that they were Maraboyina's clients or that he acted in any fiduciary capacity.  Thus, Plaintiffs' claim fails on the first element of their breach of fiduciary duty claim because their allegations fall well short of establishing that a fiduciary relationship between the plaintiff and defendant existed.  *Dernick Resources v. Wilstein*, 312 S.W.3d 864, 877 (Tex. App.—Houston [1st Dist.] 2009).

As in their original Complaint, Plaintiffs repeat the same allegations that Maraboyina was qualified as an investment advisor and worked for a financial firm that was registered with FINRA. *See* ECF No. 19 ¶¶ 155-157.  Yet, while an investment advisor may be a fiduciary under certain circumstances, Plaintiffs have not alleged sufficient facts establishing that Maraboyina was *their* fiduciary with respect to the investments at issue.  The entire basis for Plaintiffs' claim of a fiduciary relationship with Maraboyina is that "Maraboyina owed Plaintiffs and the Class a fiduciary duty as a Registered Investment Advisor as a matter of law." *Id.* ¶ 202. But there is no law that imposes a "special duty of disclosure on broker-dealers simply by virtue of their status as market professionals" in the absence of some type of principal-agent relationship.  *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 15 (2d Cir. 1983), *cert. denied* 465 U.S. 1025 (1984).

Once again, Plaintiffs fail to supply any facts establishing such a principal-agent relationship, other than conclusory statements that must be disregarded. Despite the Court's guidance in its opinion, Plaintiffs claim a fiduciary relationship while at the same time acknowledging that Maraboyina acted as a "middleman" between them and Cloth. ECF No. 19 ¶ 131. Plaintiffs repeatedly refer to Maraboyina as a "placement agent," a "representative of [CWMF] selling investment [*sic*] to wealthy individuals in the United States," or a "broker for Cloth," which, taking their own allegations as true, would make him an affiliate of their counterparty in the transaction, not their own representative. *Id.* ¶¶ 5, 14, 129, 154, 157, 176, 177. Several courts have specifically rejected the argument that a placement agent owes an investor a fiduciary or heightened duty. *E.g.*, *Vannest v. Sage, Rutty & Co.*, 960 F. Supp. 651, 655 (W.D.N.Y. 1997) (holding that defendant, "an underwriter and placement agent" of plaintiffs' limited partnership interests, was not a fiduciary, noting that mere titles such as "placement agent" were insufficient to establish "'[t]he existence of fiduciary duties'") (citations omitted); *see also Boley v. Pineloch Assocs., Ltd.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988) (rejecting allegations of the existence of a fiduciary duty based on one-time purchases of securities, observing "[a]llegations of reliance on another party with superior expertise, standing by themselves, will not suffice"). Plaintiffs contend Maraboyina was better positioned to have more complete information about the investment than they did, but that is true of any counterparty to any arms-length transaction and does not itself create any kind of fiduciary duty.

Facts that would establish a fiduciary relationship between Plaintiffs and Maraboyina are notably missing from the Complaint: Plaintiffs do not allege that they executed any kind of investment advisor agreement with Maraboyina; they do not allege that they ever exchanged any money with or paid any money to Maraboyina; they do not allege that they participated in any fund invested by Maraboyina; they do not allege that Maraboyina offered any investments to them other than the investments in CWMF; and they do not allege that they were ever clients of the financial firm Maraboyina purportedly worked for that was registered with FINRA. In fact, as each of the

Participation Agreements demonstrates, Plaintiffs invested their money directly with CWMF, never with or through Maraboyina or any fund; acknowledged that they were aware of the significant risks inherent in investing in film; and represented that they had an opportunity to conduct their own independent investigation into the investment and were "***not relying on the Lender, its affiliates or counsel to any of them in this regard***."  *See* Terwey Decl., Ex. B § 8(a) (Oaks – Monkey Man); Ex. C § 8(a) (Oaks – Fables); Ex. D § 8(a) (Oaks – Bubbles Hotel); Ex. E § 8(a) (Oaks – Young Bear Grylls);  Ex. F § 8(a) (Oaks – Hailey and the Hero Heart – unexecuted);  Ex. G § 8(a) (Oaks – Monkey Man); Ex. H § 8(a) (Oaks – Monkey Man); Ex. I § 8(a) (Oaks – National Anthem); Ex. J § 8(a) (Oaks – Robin Hood); Ex. K § 8(a) (Oaks – Gossamer); Ex. L § 8(a) (Oaks – Gossamer).[5] Based on the Agreements Plaintiffs signed, they understood at the time that they were responsible for their own investment decisions and were expressly ***not*** relying on any "affiliates" of CWMF or Cloth, such as a placement agent like Maraboyina, in making that decision.

At most, Plaintiffs allege that the "statements for the investments at issue in this case indicated [Maraboyina] was the Adviser assigned."  ECF No. 19 ¶ 1.  But Plaintiffs do not explain how statements produced by the film company in which they invested establish that they and Maraboyina had a separate fiduciary relationship or set the terms for that relationship, particularly when the documents memorializing their investment—the ones the Plaintiffs actually executed and agreed to—disclaim any such reliance on a fiduciary.  Plaintiffs also do not identify which of the Plaintiffs received the statements, which films the statements were associated with, or what the precise nature of those statements was.  Because Plaintiffs' allegations are wholly insufficient to establish that Maraboyina owes them any fiduciary duties, their breach of fiduciary duty claim must be dismissed.

---

[5] Notably, Plaintiffs' representations in the Participation Agreements directly contradict their allegation in the Amended Complaint that "Investors were assured that each project was thoroughly analyzed and would be successful."  ECF No. 19 ¶ 62.

**d. Plaintiffs fail to state a claim for negligence.**

Plaintiffs' new negligence claim appears to be an effort to avoid the fatal deficiencies of their initial negligent misrepresentation allegations. Plaintiffs' new theory is that Maraboyina breached his duty to Plaintiffs by making the investments available to them, when he should have conducted more due diligence that would have led him not to offer the securities to them. This new theory appears to be an effort to circumvent the most significant defect with Plaintiffs' original misrepresentation theory, namely that they cannot identify any misrepresentations Maraboyina made that induced their investment. ECF No. 18 at 8. Yet even as repackaged, Plaintiffs' negligence claim fails for the same reasons as did their original negligent misrepresentation claim. First, Plaintiffs fail to establish that Maraboyina owed them any duty to conduct a particular kind of investigation into the investments. Second, Plaintiffs fail to allege that Maraboyina's purported negligent acts caused their injuries because (a) they cannot establish that they relied on his investigation and "approval" to make their investment decision, and (b) they fail to allege that Maraboyina's negligence and not that of a third-party was the proximate cause of their injury. Accordingly, Plaintiffs' negligence claim should be dismissed.

**i. Plaintiffs fail to allege that Maraboyina owed them a duty of case as an investment advisor or broker-dealer to conduct a particular sort of investigation before offering the investment.**

The threshold question in a negligence action is the existence of a duty. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). As part of their negligence claim, Plaintiffs allege that Maraboyina owed them a duty of care that included the responsibility to undertake the type of due diligence or investigation Plaintiffs allege he failed to do. ECF No. 19 ¶ 208-11. Plaintiffs contend that the "applicable standards for conduct for Maraboyina are the rules promulgated by FINRA which each broker offering securities such as the Cloth notes should be a member of." ECF No. 19 ¶ 205. (The investments at issue were actually structured as loans, and not securities. *See* Terwey Decl., Exs. B-M). While some courts have looked to FINRA rules to set the standard of care, however, the law is

clear that FINRA rules, without allegations supporting a client relationship, do not serve as a basis for creating a duty of care until it has already been established that a defendant owes a plaintiff such a duty. *Weatherly v. Pershing, LLC*, 2015 WL 13742270, at *3 (N.D. Tex. June 23, 2015). As discussed above, Plaintiffs fail to allege any facts demonstrating that Maraboyina had a fiduciary or other type of professional relationship with them that would give rise to the heightened duty to investigate or conduct due diligence described in the Amended Complaint. *See supra* Section III.c; ECF No. 18 at 10 (dismissing Plaintiffs' negligent misrepresentation claim because Plaintiffs failed to allege a duty of disclosure). Accordingly, Plaintiffs fail to state a claim for negligence, just as they fail to state a claim for breach of fiduciary duty.

### ii. Plaintiffs fail to allege that any acts by Maraboyina caused their injury.

#### 1. Plaintiffs fail to allege that they relied on Maraboyina's "approval" in deciding to purchase the security.

Plaintiffs allege that Maraboyina's negligence caused their injury because "Plaintiff[s] and the Class acted in reliance on Maraboyina's approval to offer to sell the Cloth offerings" when they made their investment decisions. ECF No. 19 ¶ 213. Although reliance is not always an element of a standard negligence claim, it is here because Plaintiffs' reliance on Maraboyina's approval is an essential piece of their theory of causation.[6] Elsewhere in the Amended Complaint, Plaintiffs allege that they relied on certain representations made by Maraboyina in making their decision to accept the investment: "Maraboyina told [Oaks and Mormile] the investment was low risk," *id.* ¶¶ 16, 22; "that Maraboyina himself invested as did his close family and [Oaks and Mormile] should trust Maraboyina's … judgment and investigation when choosing to invest in a foreign business," *id.* ¶¶ 17, 23; "that he did his own due diligence on Cloth and Creative Wealth," *id.* ¶¶ 18, 24; and "that

---

[6] Although Plaintiffs suggest the "but for" cause of their injury was that Maraboyina "presented the opportunity to participate in the Cloth Offerings," *id.* ¶ 214, they do not allege that they were forced or required to participate merely because Maraboyina made an offer; thus, taking Plaintiffs' allegations as true, Plaintiffs retained the discretion to participate or not to participate and made that decision in reliance on Maraboyina's approval of the offering.

Creative Wealth had a track record of paying investors for its many successful productions," *id.* ¶¶ 19, 26.  Plaintiffs further allege they "justifiably relied" on "Maraboyina's representations about the suitability of investment in Cloth Offerings," "to investigate the Cloth Offerings and confirm facts presented in the offering materials," and "on statements about the investment and that Maraboyina had a reasonable basis for recommending the investment."  *Id*. ¶ 188-90.[7]

However, Plaintiffs cannot claim that they relied on Maraboyina's "approval," investigation, or any statements made by him because Plaintiffs expressly disclaimed such reliance in the Participation Agreements and Term Sheets.  Whether or not Plaintiffs understood that Maraboyina would receive a fee, Plaintiffs allege throughout the Amended Complaint that he was an affiliate of Cloth/CWMF and that he only offered them investments in CWMF.  *See supra* Section III.c.  And in each of their Participation Agreements, Plaintiffs expressly acknowledged the risks inherent in the investment and disclaimed any reliance on CWMF, its affiliates, or counsel to investigate the investments:

> Financier further ***acknowledges the risks inherent in making loans and/or equity investments in the Picture and the related risks inherent in developing, producing, and marketing the Picture, including but not limited to the possibility of cost overruns, lower sales than anticipated and loss of financing***. Lender makes no representation or warranty as to the commercial release of the Picture or the amount of proceeds, if any, to be received from exploitation of the Picture. ***There is no assurance that Financier will earn a profit from or recoup its Participation***. Lender agrees that it will use normal prudence and judgment in the servicing of the account and in the carrying out of the terms of the Financing Agreements. ***Lender shall not have any liability to Financier with respect to any action taken or omitted by Lender, its employees or agents, in connection with the Financing Agreements or for any error in judgment except for its own gross negligence or wilful misconduct.*** Lender does not assume, and shall not have, any responsibility or liability, express or implied, for the enforceability or collectability of the Financing Agreements, the Collateral or the condition of the Borrower or guarantors or any obligor, financial or otherwise, or the Collateral, or for the accuracy of any credit or other information furnished by the Borrower unless Lender has acted with gross negligence or wilful misconduct. ***Financier***

---

[7] Plaintiffs do not allege in the Amended Complaint *when* Maraboyina made these representations, so these allegations do not establish that Plaintiffs relied on these statements from Maraboyina before investing in the CWMF films.  Regardless of when the statements were made, however, Plaintiffs' claims fail for the reasons explained herein.

> *acknowledges that it may make its own independent investigation of the Borrower* and that it will be given access to all information with respect to the Borrower and Lender that it wished to have and an opportunity to make such inquiry of the Borrower as to Borrowers' condition and the arrangements between the Borrower and Lender and inquiry of Lender in connection therewith as Financier determines to be necessary or appropriate. *The Financier is not relying on the Lender, its affiliates or counsel to any of them in this regard*.

*See* Terwey Decl., Ex. B § 8(a) (Oaks – Monkey Man); Ex. C § 8(a) (Oaks – Fables); Ex. D § 8(a) (Oaks – Bubbles Hotel); Ex. E § 8(a) (Oaks – Young Bear Grylls);  Ex. F § 8(a) (Oaks – Hailey and the Hero Heart - unexecuted);  Ex. G § 8(a) (Oaks – Monkey Man); Ex. H § 8(a) (Oaks – Monkey Man); Ex. I § 8(a) (Oaks – National Anthem); Ex. J § 8(a) (Oaks – Robin Hood); Ex. K § 8(a) (Oaks – Gossamer); Ex. L § 8(a) (Oaks – Gossamer). In the accompanying Term Sheets, Plaintiffs further confirmed that they "*relied on [their] own examination of the investment*" and were "aware that [they] may be required to bear the financial risks of this investment for an indefinite period of time." *See id.*, Ex. B, Term Sheet at 2; Ex. C, Term Sheet at 2; Ex. D, Term Sheet at 2; Ex. E, Term Sheet at 2; Ex. F, Term Sheet at 2 (unexecuted); Ex. G, Term Sheet at 2; Ex. H, Term Sheet at 2; Ex. J, Term Sheet at 2-3; Ex. K, Term Sheet at 2; Ex. L, Term Sheet at 2.

This disclaimer is clear and unequivocal and therefore enforceable; "[t]here is no plausible interpretation of this provision other than that [Plaintiffs] agreed not to rely on any representation of [CWMF, its affiliates or counsel]" in investigating the Borrower or assessing the suitability of lending to the Borrower.  *See Providence Title Co. v. Truly Title, Inc.*, 2022 WL 925055, at *8 (E.D. Tex. Mar. 29, 2022).  Texas law permits contracting parties "to disclaim reliance on [pre-contractual] representations." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 332 (Tex. 2011).  "Courts are to assume that the parties intended every contractual provision to have some meaning," and thus Texas courts have held that provisions that "disclaim[] reliance on representations about specific matters in dispute" bar subsequent tort claims involving a party's

reliance.[8] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180 (Tex. 1997) ("[W]e must presume that the parties contemplated, by the inclusion of this clause, that the Swansons would not rely on any representations of Schlumberger about the commercial feasibility and value of this project, which, after all, was the very dispute that the release was supposed to resolve. Therefore, we conclude that the disclaimer of reliance is binding and, as a matter of law, precludes the Swansons' claim that they were fraudulently induced to sell their interest in the sea-diamond project."). Whether asserted under a fraud or negligence theory, "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms," nor can such a party reasonably expect outcomes or conditions that contradict terms expressly written in that contract. *Beauty MedSpa, Inc. v. FPG The Point LP*, 2021 WL 4991998, at *4 (N.D. Tex. Oct. 27, 2021) (citing *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424-25 (Tex. 2015); *accord JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 659-60 (Tex. 2018)); *see also Beauty MedSpa, Inc.*, 2021 WL 4991998, at *5 (noting that Plaintiffs' negligence claims, which also depended on a reliance theory, "fail for the same reasons expressed above, namely that Plaintiff could not have justifiably relied on Defendant's purported misrepresentations"). Texas courts have enforced such disclaimers even where the person on whom the plaintiff allegedly relied played multiple roles in the transaction. For example, in *Providence Title Company*, the plaintiff argued that the disclaimer did not apply to having her own attorney represent her in the transaction, although the individual she claimed as her attorney was also an officer, director, shareholder, and agent of her contractual counterparty. 2022 WL 925055, at *9. Thus, the court concluded that the disclaimer unambiguously applied to that individual in his role with the counterparty. *Id.* Here, Plaintiffs claim Maraboyina was both their investment advisor and an affiliate of CWMF/Cloth; thus, the disclaimer

---

[8] Plaintiffs have brought claims against Maraboyina under Texas law, and thus this Motion analyzes whether contract disclaimers may preclude Texas tort claims under Texas law; however, the Participation Agreements provides that any contract dispute should be governed in accordance with the laws of Ontario.

unambiguously encompasses Plaintiffs' reliance on Maraboyina.  As the Texas Supreme Court noted, "After-the-fact protests of misrepresentation are easily lodged, and parties who contractually promise not to rely on extra-contractual statements—more than that, promise that they have in fact not relied upon such statements—should be held to their word."  *Id.* at *9 (quoting *Forest Oil*, 268 S.W.3d at 60).

Because Plaintiffs disclaimed any reliance on any investigation conducted by Maraboyina and acknowledged that their investment was more than "low risk," their allegations are insufficient to establish that they made the investment "in reliance" on Maraboyina's approval or any representations made by him.  The allegations in Plaintiffs' Amended Complaint, even taken as true, do not establish that any act by Maraboyina *caused* Plaintiffs' injury as a matter of law.  Accordingly, Plaintiffs cannot state a claim for negligence.

### 2. Plaintiffs fail to allege that Maraboyina, and not a third-party, proximately caused their injury.

As in the original Complaint, Plaintiffs' negligence claim also fails because their allegations do not establish that Maraboyina's negligence—and not other parties' misconduct—proximately caused their injuries.  Although the allegations are less than clear, Plaintiffs allege that a third party, Jason Cloth, took investors' money and then failed to pay them back what they were owed, even though the movies cited in the Complaint were largely profitable.  *See e.g.*, ECF No. 19 ¶¶ 36-70.  In fact, counsel for Plaintiffs has also filed a separate class action against Cloth related to the same injuries involved in this case, and Plaintiffs in this action would also be included in the class in the Illinois action, positioning them for a double recovery.

Plaintiffs concede Maraboyina did not know of or participate in any fraudulent scheme conducted by Cloth or other actors, and Plaintiffs fail to identify any statements by Maraboyina that were intended to guide Plaintiffs into entering a business transaction.  ECF No. 19 ¶¶ 129-53.  Taking the Complaint's allegations at face value, it establishes that Cloth's misconduct—not reliance on

anything Maraboyina said to Plaintiffs—was the proximate cause of Plaintiffs' investment losses. *See Hopkins*, 2016 WL 4468272, at *10 (dismissing negligent misrepresentation claim where losses occurred because of third-party criminal, not because of reliance on statements by defendants); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477–78 (Tex. 1995) (causation is "not shown if the defendant's negligence did no more than furnish a condition which made the injury possible."). For this additional reason, Plaintiffs fail to state a claim for negligent misrepresentation against Maraboyina, and their claim must be dismissed.

### e. Plaintiffs fail to state a claim for assumpsit.

Finally, Plaintiffs fail to state a claim for assumpsit under Texas law. "Assumpsit is a recovery for the unjust retention of a benefit to the loss of another, or the retention of money of another against the fundamental princip[les] of justice and equity." *King v. Tubb*, 551 S.W.2d 436, 442 (Tex.App.—Corpus Christi 1977, no writ). "Where one seeks a recovery in assumpsit ... the complaining party must only show that the defendant holds money which in equity and good conscience belongs to the plaintiff." *Id.*; *see also Staats v. Miller*, 243 S.W.2d 686 (Tex. 1951). Thus, for a plaintiff to recover under this theory, he must show that there is "a quasi-contractual obligation to repay funds advanced for another's benefit." *Tubb*, 551 S.W.2d at 442; *Staats*, 243 S.W.2d 686.

Although the theory underlying Plaintiffs' assumpsit claim is less than clear, Plaintiffs appear to allege that Maraboyina received fees from Cloth or related entities that should belong to Plaintiffs because Plaintiffs invested money with Cloth and were not repaid. ECF No. 19 ¶ 216. However, Plaintiffs fail to allege that they paid any money to or exchanged any money with Maraboyina, that they advanced any money to Maraboyina, or that there was any sort of quasi-contractual understanding between Plaintiffs and Maraboyina through which *he* received funds from Plaintiffs and unjustly retained them or under which Plaintiffs expected any repayment or future benefit from Maraboyina.

Further, the loans Plaintiffs made in CWMF are the subject of *express* contracts that govern the very subject matter giving rise to Plaintiffs' claims, *i.e.* the loss of those funds purportedly in violation of the terms of those agreements. "Texas courts have repeatedly held that '[w]here there exists a valid express contract covering the subject matter, there can be no implied contract." *McIntosh v. Wiley*, 2006 WL 3691109, at *6 (S.D. Tex. Dec. 11, 2006) (quoting *Woodard v. S.W. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964), *see also Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied) ("Recovery on either unjust enrichment or quantum meruit is recovery on a quasi-contract or a contract implied in law, and there can be no recovery on either if the same subject is covered by an express contract.")). Although the Participation Agreements covering each investment were between CWMF and Plaintiffs and not directly with Maraboyina, the existence of those agreements still vitiates Plaintiffs' assumpsit claims. As a sister court held, "the difference between the present case and those in which the above rule has been reiterated is that, here, Plaintiffs' contract was with a separate Defendant. However, this fact makes no difference, as Texas courts have already established that such mutual claim exclusion is 'applicable not only when the plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also…when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefited from its performance.'" *McIntosh*, 2006 WL 3691109, at *6 (quoting *W & W Oil Co. v. Capps*, 784 S.W.2d 536, 537 (Tex. App.—Tyler 1990, no writ); *Iron Mt. Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*, 42 S.W.3d 149, 160 (Tex. App.—Amarillo 2000, no writ)). Plaintiffs do not allege that Maraboyina had any financial obligation to them other than through their investment with CWMF; thus, their claims against him also relate to the performance of the original contracts.

For these reasons, not only have Plaintiffs failed to plead facts to support the required elements of an assumpsit claim, but their claim based on a quasi-contractual theory is barred by the

existence of valid written contracts that address precisely the subject matter at issue in this case. Accordingly, Plaintiffs' assumpsit claim must also be dismissed.

### f. Dismissal should be with prejudice.

This is Plaintiffs' second attempt to state claims against Maraboyina, and Plaintiffs have abandoned their initial set of claims from the original Complaint.  As Plaintiffs' second attempt should also be dismissed in its entirety under Rule 12(b)(6), it is clear that facts that could support claims against Maraboyina do not exist and any further amendment will be futile.  *Taubenfeld*, 385 F. Supp. 2d at 592.  Accordingly, the Court should dismiss Plaintiffs' Amended Complaint with prejudice and refuse any further amendment.

## IV.   CONCLUSION

For the foregoing reasons, Maraboyina respectfully requests that this Court grant this Motion and dismiss Plaintiffs' Amended Complaint against Maraboyina in its entirety with prejudice and award Maraboyina all other relief to which he is entitled.

Respectfully submitted,

*/s/ Margaret D. Terwey*
Margaret D. Terwey
Texas Bar No. 24087454
margaret.terwey@rm-firm.com
Tyler Bexley
Texas Bar No. 24073923
tyler.bexley@rm-firm.com
REESE MARKETOS LLP
750 N. Saint Paul St.,
Suite 600
Dallas, Texas 75201-3201
214.382.9810 telephone
214.501.0731 facsimile

ATTORNEYS  FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served by electronic transmittal by CM/ECF to all counsel of record on April 9, 2025.

*/s/ Margaret D. Terwey*