## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| DIANE FOWLER, individually and on behalf of the class members described below, | Case No. 2024 CH 01610 |
|  | Motion to Dismiss |
| Plaintiff, | Calendar 1 |
| v. | |
|  | Hon. Thaddeus L. Wilson |
| SCHMIDT ADVISORY SERVICES, INC. d/b/a/ CATALYST WEALTH MANAGEMENT, SANFORD SCHMIDT, and JASON CLOTH, | Judge Presiding |
| Defendants. | |

### ORDER

THIS MATTER comes before the Court on Defendant Jason Cloth's Combined Motion to Dismiss Plaintiff's Class Action Complaint. The Court, having heard oral argument, and having reviewed the pleadings and applicable law, finds as follows:

## I.     Factual Background

This matter is a class action suit filed by Plaintiff Diane Fowler, individually and on behalf of class members, against Defendants Schmidt Advisory Services, Inc., Sanford Schmidt (collectively "Schmidt"), and Jason Cloth.

As pled by Plaintiff, Defendant Jason Cloth, a Canadian citizen and movie producer, was an officer of Creative Wealth Media Finance Corp. ("Creative Wealth"), a Toronto-based film and television financing entity. Creative Wealth, described as a prolific financier of over 50 film and television projects, served as the primary backer for BRON Studios following the collapse of Crystal Wealth, an alleged Canadian Ponzi scheme operated by Aaron Gilbert and Clayton Smith. Cloth, who co-founded BRON Creative and maintained a 15% ownership stake in BRON

Studios, allegedly continued similar practices through Creative Wealth. Crystal Wealth had claimed to manage $193 million, largely invested in BRON productions, before being dismantled by Canadian regulators.

Plaintiff contends that Creative Wealth replicated Crystal Wealth's business model, raising substantial funds in the United States between 2019 and 2023 through intermediaries, including Defendant Schmidt, an Illinois company, and Maraboyina Capital, a Texas company. These brokers marketed investments as tied to specific film projects. Plaintiff Diane Fowler, an Oklahoma resident, invested $1,000,000 in Creative Wealth in January 2023 through a Series B Note. The associated loan agreement, titled the "Creative Wealth Media Finance Corp. Secured Series B Loan Commitment Agreement," contained disclaimers stating that lenders could lose their entire investment, were sophisticated investors, and could not rely on representations outside the agreement. However, Plaintiff alleges the agreement itself was based on misrepresentations, invalidating its exculpatory provisions.

Plaintiff further alleges that Cloth orchestrated a Ponzi-like scheme by commingling funds from various projects, using new investments to cover returns on prior failed ventures, and diverting significant sums for personal benefit. While promising repayments based on the success of specific films, Cloth allegedly misused investor funds, failed to implement internal controls or audits, and oversubscribed investments. Investors, including Fowler, were assured that their funds were allocated to thoroughly analyzed, profitable projects; however, these representations were allegedly false.

Plaintiff also details the formation of C2 Motion Picture Group in 2022 by Cloth to replace Creative Wealth as it neared default. Cloth allegedly raised additional investments

through C2, making similar unfulfilled promises of repayment tied to prior investments in Creative Wealth and BRON Studios.

In July 2023, BRON Media filed for bankruptcy protection in Vancouver, Canada, and Creative Wealth filed for voluntary bankruptcy in Ontario, Canada, in October 2023. These bankruptcies left investors, including Plaintiff, with substantial losses.

Plaintiff filed the immediate Complaint on March 5, 2024, alleging seven Counts including but not limited to fraudulent misrepresentation, violations of Illinois Security Law ("ISL"), and unjust enrichment. Plaintiff claims that Cloth's systemic misrepresentations caused over $80,000,000 in collective investor losses.

Defendant Cloth filed the instant Combined Motion to Dismiss on October 23, 2024, seeking dismissal of the Complaint in full. They argue that the case improperly reframes an unpaid loan as fraud following the bankruptcies of Creative Wealth and BRON Media. Defendants contend that no fraud occurred, the court lacks personal jurisdiction over Cloth, Plaintiff lacks standing because the loan was made by non-party entities, the loan agreement's provisions preclude reliance claims, and the alleged loan does not qualify as a security under ISL.

## II.    Legal Standard

Defendant moves for dismissal under section 2-619. Section 2-619 allows for disposal of issues of law or easily proved issues of fact. *Williams v. Bd. of Ed. of the City of Chicago*, 222 Ill. App. 3d 559, 562 (1st Dist. 1991). A section 2-619 motion admits all well-pleaded facts in the complaint but does not admit conclusions of law or conclusions of fact unsupported by specific allegations. *Melko v. Dionisio*, 219 Ill. App. 3d 1048, 1057 (2d Dist. 1991). A 2-619 motion admits the legal sufficiency of the complaint and raises defects, defenses, or other

affirmative matter that appears on the face of the complaint or is established by external submissions that act to defeat the plaintiffs claim. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 18. In reviewing a section 2-619 motion to dismiss, the court must construe all documents presented in the light most favorable to the non-moving party and if no disputed issue of material fact is found, the court should grant the motion. *Id*. However, if it cannot be determined with reasonable certainty that the defense exists, the motion to dismiss should be denied. *Saxon Mortg. Inc. v. United Fin. Mortg. Corp.*, 312 Ill. App. 3d 1098, 1104 (1st Dist. 2000). A motion brought under section 2-619 must satisfy a rigorous standard, and can be granted only where "no set of facts can be proven that would support the plaintiffs cause of action." *Nosbaum ex rel. Harding v. Martini*, 312 Ill. App. 3d 108, 113 (1st Dist. 2000).

There are nine enumerated bases for dismissal under section 2-619. Defendant moves for dismissal pursuant to Section 2-619(a)(9) of the Illinois Code of Civil Procedure. Section 2-619(a)(9) permits involuntary dismissal where the claim asserted is barred by an affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2-619(a)(9).  The movant has the burden of proving the affirmative matter relied upon in his, her or its motion to dismiss under section 2-619. *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 12 (1st Dist. 1989).

Defendant also moves for dismissal under section 2-615. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The motion does not raise affirmative factual defenses but rather alleges only defects on the face of the complaint. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be

granted. *Id*. This determination requires an examination of the complaint as a whole, not its distinct parts. *Lloyd v. County of Du Page*, 303 Ill. App. 3d 544, 552 (2d Dist. 1999). In reviewing the sufficiency of a complaint, a court must accept all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Burger King Corp.*, 222 Ill. 2d at 429. A complaint is deficient when it fails to allege facts necessary for recovery. *Chandler v. Ill. Cent. R.R.*, 207 Ill. 2d 331, 348 (2003). A court should not dismiss a cause of action unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Redelman v. Sprayway, Inc.*, 375 Ill. App. 3d 912, 917 (1st Dist. 2007).

## III.    Analysis

### A.    Personal Jurisdiction

#### 1.    Legal Standard

Section 2-209 of the Code, commonly known as the Illinois long-arm statute, governs when Illinois courts have the power to exercise personal jurisdiction over an out-of-state defendant. *Sabados v. Planned Parenthood*, 378 Ill. App. 3d 243, 246 (2007). 735 ILCS 5/2-209(c) provides this court may exercise jurisdiction over a defendant on any basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States. A defendant can object to jurisdiction over their person under 735 ILCS 5/2-301(a). Under 735 ILCS 5/2-301(b), in ruling to grant or deny the objection to jurisdiction, a court should consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested issues of fact.

The plaintiff bears the burden of establishing a prima facie basis for exercising a court's in personam jurisdiction over a defendant. *Sabados*, 378 Ill. App. 3d at 246. A plaintiff's prima facie case may be rebutted where a defendant presents uncontradicted evidence that defeats

jurisdiction. *Id*. While a court may consider materials beyond the pleadings, the court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[W]here the issue is addressed in affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, "[p]leadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet this burden." *Pruthi v. Empire City Casino*, 2022 U.S. Dist. LEXIS 34635, at *5-6 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

Although 2-209(a) lists fourteen ways a court can have specific personal jurisdiction over a party and 2-209(b) focuses on four ways the court can have general personal jurisdiction over a party, the historic two-part analysis of each section has been replaced by an inquiry under the catch-all provision of 2-209(c). *Russell v. SNFA*, 2013 IL 113909, ¶ 30. Under this subsection, courts are only required to determine whether a defendant's Illinois contacts or connections are sufficient to satisfy federal and Illinois due process. *Id*.

Our state and federal courts agree that there is no substantive difference between Illinois and federal due process requirements regarding a court's exercise of personal jurisdiction over a nonresident defendant. *Id*. at ¶ 32. Since the Illinois due process requirements are co-extensive with those of the United States Constitution, personal jurisdiction is proper where federal due process has been satisfied. *Klump v. Duffus*, 71 F. 3d 1368, 1371 (1995).

Federal due process requires that the defendant have sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The minimum contacts analysis depends on whether general or specific jurisdiction is sought. *Russell*, 2013 IL 113909 at ¶ 36. General jurisdiction exists when a defendant has continuous and systematic contacts with the forum state, even if the suit does not arise out of or relate to the defendant's contacts with the forum. *Keller v. Henderson*, 359 Ill. App. 3d 605, 613 (2005). Specific jurisdiction exists when the defendant purposefully directed its activities at the forum's residents and the cause of action directly arises out of the contacts between the defendant and the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Russell*, 2013 IL 113909 at ¶ 40. The minimum contacts for specific jurisdiction must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 560 (2003) (quoting *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 109 (1987)). The purposeful availment requirement ensures that jurisdiction will not be obtained as the result of random, fortuitous, or attenuated contacts. *Burger King*, 471 U.S. at 475.

In order for this court to exercise personal jurisdiction over Defendant Cloth in comportment with state and federal due process requirements, he must have had sufficient minimum contacts with Illinois so as to reasonably expect being hauled into court in this state.

The parties dispute where Cloth resides. Plaintiff's Complaint alleges that Cloth resides in Florida, while Defendant Cloth's Affidavit asserts that Cloth is a Canadian citizen and resident of Ontario, Canada. Either way, Cloth does not reside in Illinois.

### 2.    General Jurisdiction

As stated above, typically, when a nonresident challenges jurisdiction, the analysis proceeds by first determining whether state law permits an Illinois court to exercise jurisdiction over that nonresident and, if so, whether the exercise of personal jurisdiction offends due process. *Russell v. SNFA*, 2013 IL 113909, ¶ 29; *see* 735 ILCS 5/2-209. Given the breadth of the Illinois long-arm statute permitting the exercise of personal jurisdiction, the analysis often collapses into only the question of due process. *Russell*, 2013 IL 113909, ¶ 30.

First, the court looks to whether Cloth had continuous and systematic contacts with Illinois, independent of whether the alleged interactions with Plaintiff or class members specifically arose from those contacts. *See Keller*, 359 Ill. App. 3d at 613. Plaintiff argues that this Court has general jurisdiction over Cloth due to his extensive and continuous business activities in the state of Illinois, citing *Goodyear Dunlop Tires Operations, S.A. v. Brown* in support. 564 U.S. 915, 927-928 (2011). Particularly, Cloth is alleged to have raised over $100 million from 130 Illinois residents through more than 100 transactions over several years. *Goodyear*, however, is distinguishable to the immediate matter. In *Goodyear*, the Supreme Court rejected general jurisdiction over foreign defendants in a products liability action based on a "stream of commerce" theory, noting that the defendants were "in no sense at home" in the forum state. The Court noted that defendants' attenuated connections to the state fell far short of the "continuous and systematic general business contacts" required to confer general jurisdiction. *See Id*. at 929 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("concluded that "mere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.""))

General jurisdiction for a corporate defendant exists when it has engaged in continuous and substantial business activity within the forum, the paradigm example for a corporation being a location where it is fairly regarded as at home." *Russell*, 2013 IL 113909, ¶ 36 (quoting *Goodyear*, 564 U.S. at 131). "The standard for finding general jurisdiction is very high and requires a showing that the nonresident defendant carried on systemic business activity in Illinois [. . .]" *Russell*, 2013 IL 113909, ¶ 36. In finding a lack of general jurisdiction in *Russell*, the Illinois Supreme Court observed that the corporate defendant in that case did not have any offices, assets, property, or employees in Illinois, nor was it licensed to do business in Illinois.

Cloth argues general jurisdiction does not exist since he is a Canadian citizen and resident who has not visited Illinois in over 20 years, does not own property in the state, and has never personally contracted with Illinois residents. They further assert that any Illinois-based activities were conducted through Creative Wealth's contractual arrangement with Schmidt Advisory Services, not by him directly. Plaintiffs, however, contend that Cloth engaged directly with Illinois investors.  This Court concludes that irrespective of whether Cloth directly engaged with Illinois investors, the alleged connections to Illinois do not meet the "continuous and systematic" threshold required for general jurisdiction. There are no allegations that Cloth himself maintains offices, assets, property, or employees in Illinois, nor any evidence that he is directly conducting business in the state. Furthermore, Plaintiff has cited no authority supporting the proposition that contracting with a broker operating in the forum is sufficient to establish general jurisdiction. Accordingly, Plaintiff has not met the burden of demonstrating general jurisdiction over Cloth.

### 3.    Specific Jurisdiction

Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's

contacts with the forum state; a nonresident defendant may be subjected to a forum state's jurisdiction based on certain "single or occasional acts" in the state, but only with respect to matters related to those acts. *Id*. at ¶ 40; *See also Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 14. "This connection does not require physical contacts with the forum state." *Id*. at ¶ 16.

There can be no debate under *Russell* that this Court could exercise general as well as specific jurisdiction over Schmidt Advisory, and Schmidt. As was the case in *Russell,* it would be proper to exercise specific personal jurisdiction, under 735 ILCS 5/2-209(c) (2002), because (1) the Schmidt Defendants are physically present in Illinois, (2) the investment agreements were formed in Illinois on a targeted full-throated basis and not on an isolated basis, (3) sufficient evidence shows they engaged in Illinois-specific activity to establish minimum contacts, as it knowingly used an Illinois company/agent to market its custom-investment products in Illinois, (4) multiple investment agreements were consummated in Illinois, (5) it had an ongoing business relationship with an Illinois company, and (6) exercising personal jurisdiction is reasonable, as Illinois has an interest in the litigation, as the investors are Illinois residents, companies and/or trusts. *See Russell*, 2013 IL 113909, ¶ 1. Further, Creative Wealth without question conducted significant business in Illinois through the Schmidt Defendants and Cloth making specific jurisdiction over it a non-issue.[2] The question is whether the Court should exercise specific jurisdiction over Defendant Cloth, independently, for his role in the alleged scheme.

Both parties acknowledge that Cloth had largely three types of contact with Illinois: (1) a Zoom call with Illinois-based investors; (2) a relationship with Schmidt Advisory; and (3)

---

[2] According to the parties, Creative Wealth is in bankruptcy proceedings in Canada and thus properly is not a named defendant in this action.

utilizing Schmidt Advisory as a broker to solicit Illinois lenders for Creative Wealth. But is that sufficient to exercise specific jurisdiction over Cloth who claims to be a mere employee/director.

In response, Plaintiff asserts that this Court has specific jurisdiction over Cloth pursuant to 735 ILCS 5/2-209(a), which provides that individuals are subject to the jurisdiction of Illinois if they, directly or through a personal representative or agent, engage in certain activities, including conducting business within the state. Plaintiff argues that since Cloth conducted business in Illinois alongside Schmidt Advisory, he is subject to specific jurisdiction in this forum. Plaintiff pleads that Cloth is more than just a mere employee of Creative Wealth but that he is the true owner, financial beneficiary, alter ego of Creative Wealth, and the mastermind behind the alleged fraudulent scheme.

In weighing "minimum contacts" with the forum state, while the defendant may not have enough ties to be sued there for any claim, their actions related to the specific lawsuit at hand created a connection to that jurisdiction. When combined with the other allegations against Cloth, a Zoom meeting can be considered a factor that contributes to the Court exercising specific jurisdiction over him. This is particularly so if the meeting involved substantial interactions, solicitations or negotiations related to the subject matter of the lawsuit and took place with the knowledge that the other party was located in the forum state. However, the Court is cognizant that simply participating in a Zoom (or other videoconferencing service) meeting with someone in a different state does not automatically establish the requisite "minimum contacts" for specific jurisdiction.

Courts must look at whether the defendant "purposefully availed" themselves of the forum state by engaging in significant activities during the Zoom meeting that were directed towards the forum state. When assessing if a Zoom meeting creates sufficient contacts for

specific jurisdiction, courts may consider factors like the frequency of meetings, the nature of discussions held, whether the defendant initiated the contact, and whether the meeting was primarily focused on the forum state. *See generally* Adam R. Kleven, *Minimum Virtual Contacts: A Framework for Specific Jurisdiction in Cyberspace*, 116 Mich. L. Rev. 785, March 14, 2018, https://repository.law.umich.edu/mlr/vol116/iss5/4; *see also* Jenny Bagger, *Dropping the Other Shoe: Personal Jurisdiction and Remote Technology in the Post Pandemic World*, 73 Hastings L.J. 861, March 30, 2022, https://repository.uchastings.edu/hastings_law_journal/vol73/iss3/7.

It is not so far-fetched to predict that with the proliferation of videoconferencing post-COVID-19 pandemic that potential defendants more likely to satisfy the "minimum contacts" test by making virtual contacts with forum states in their primary conduct. *See generally* Dodson, Scott, *Videoconferencing and Legal Doctrine*, 51 Sw. L. Rev. 9, May 20, 2021 (symposium), https://ssrn.com/abstract=3850320; *see also* Bloomberg Law, INSIGHT: Virtual Business Contacts Can Create Virtual Personal Jurisdiction (May 21, 2020), https://news.bloomberglaw.com/us-law-week/insight-virtual-business-contacts-can-create-virtual-personal-jurisdiction; *and also* Chambers and Partners, Do Videoconferences Establish Jurisdiction With Defendants? (July 5, 2023), https://chambers.com/articles/do-videoconferences-establish-jurisdiction-with-defendants.

The plaintiff has the burden to establish a *prima facie* basis to exercise personal jurisdiction over a nonresident defendant. *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 20. Any conflicts in the pleadings and affidavits must be resolved in the plaintiff's favor, but the defendant may overcome plaintiff's *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction. *Id*. ¶ 20. *Russell*, 2013 IL 113909, ¶ 28.

Plaintiff has sufficiently pled facts for this Court to assert specific personal jurisdiction over Cloth. Amongst other things, Plaintiff alleges that Cloth: (1) engaged with the parties through Zoom meetings specifically directed at Illinois citizen investors, (2) worked in concert with an Illinois agent to entice Illinois residents to invest, and (3) was more than just a director and employee but instead used Creative Wealth as his alter ego. Plaintiff also seeks to amend the complaint to include additional facts relating to Cloth's alleged control of Creative Wealth and the alleged Ponzi-like scheme at the center of this litigation.

As pled, Cloth's alleged contacts with Illinois were not too "random, fortuitous, or attenuated" to justify the exercise of personal jurisdiction over him here.

### 4.    Fiduciary Shield Doctrine

Defendant Cloth also alleges that regardless of these contacts, the fiduciary shield doctrine[3] bars the exercise of personal jurisdiction over him because he was simply acting in his capacity as an officer for Creative Wealth. Defendant cites *ISI Int'l, Inc. v. Borden Ladner Gervais LLP* for the general rule that Illinois applies this doctrine in cases where a person enters the state solely as fiduciary for another.  256 F.3d 548, 550 (7th Cir. 2001). Plaintiff rebuts, citing *Khan v. Gramercy Advisors, LLC* for the proposition that this doctrine is inapplicable to proprietors, partners, or comanaging members of a limited liability corporation. 2016 IL App (4th) 150435. Plaintiff further alleges that the fiduciary shield doctrine is only intended to protect employees "such as the police officer" who make contact with the forum state merely because

---

[3] The "fiduciary shield doctrine precludes courts in Illinois from exercising jurisdiction over a non-resident corporate official when the only contacts that individual has with Illinois are made in his or her corporate capacity. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir.1994) ("This doctrine ... denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal.") (internal citations omitted), cert. denied, 514 U.S. 1111, 115 (1995). As the Illinois Supreme Court has noted, where an individual defendant's conduct in Illinois "was a product of, and was motivated by, his employment situation and not his personal interests, ... it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Rollins v. Ellwood*, 141 Ill.2d 244 (1990).

they are following orders and therefore doesn't apply to Cloth since he has authority as director and officer of Creative Wealth. *See Id*. at ¶ 85 ("the doctrine is inapplicable to proprietors, partners, or comanaging members of a limited liability corporation.")

The decision in *Khan* establishes that the fiduciary shield doctrine does not apply to members within a limited liability company whose roles imply some level of ownership or high-level decision-making authority. Defendants, however, dispute any ownership interest on the part of Cloth, citing his affidavit in which he explicitly states that he serves as an officer and director of Creative Wealth but has never been a shareholder or held any ownership interest in the company. While Plaintiff does not directly refute Cloth's lack of ownership, they argue that Creative Wealth is partially owned by Cloth's children, and therefore, should be imputed toward Cloth. Plaintiff provides no authority to support the proposition that such an indirect connection can satisfy ownership. However, Plaintiff does make other "pierce the veil" type allegations the calls into question whether Cloth was merely an employee.

Aside from ownership, there still remains unresolved questions regarding the applicability of the fiduciary shield doctrine to individuals such as Cloth who are in positions of high-level decision-making authority. This doctrine is discretionary or "equitable," rather than an absolute entitlement. *Burnhope v. National Mortgage Equity Corp.*, 208 Ill.App.3d 426 (1990). Moreover, courts have held that it does not apply to "an individual who is a high-ranking company officer or shareholder [who] has a direct financial stake in the company's health." *See R–Five, Inc. v. Sun Tui, Ltd.*, Case No. 94 C 4100, 1995 U.S. Dist. LEXIS 13360, at *14-15 (N.D. Ill. Sept. 6, 1995) (personal jurisdiction existed where defendant was "president, board member, and (most importantly) shareholder of corporation" and "was not merely obeying the orders of his superiors."). "The determinative factor is the individual's status as a shareholder,

not merely as an officer or director." *Plastic Film Corp. of Am., Inc. v. Unipac, Inc.*, 128 F.Supp.2d 1143, 1147 (N.D. Ill.2001). The doctrine will be removed if the defendant was acting also, or instead, to serve his own personal interests. *Rice*, 38 F.3d at 912. The discretion exercised by the individual is a factor that a court should consider when determining whether the fiduciary shield doctrine applies to a case. *LaSalle Bank National Ass'n v. Epstein*, No. 99 C 7820, 2000 U.S. Dist. LEXIS 3142, *4 (N.D. Ill. Mar. 8, 2000).

According to Plaintiff, Cloth is more than just an employee/director. Plaintiff claims that Cloth is the mastermind behind the scheme to defraud Illinois investors. Plaintiff argues that Cloth acted to serve his own personal interest and exercised a high level of discretion in his position with Creative Wealth. Plaintiff alleges that Cloth is essentially profiting in the same manner as the Crystal Wealth Ponzi scheme and argues that while Cloth is only an officer or director of Creative Wealth, and may not directly hold ownership interest, Creative Wealth is 50% owned by Blac Corp., which, in turn, is 49% owned by Cloth's three children.[4] Plaintiff implies that, as the father of the children who own this indirect interest, Cloth effectively controls Creative Wealth and receives a share of its profits akin to a co-managing member as contemplated in *Khan*.

---

[4] "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *See also Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) ("[C]ourts may take judicial notice of public documents and matters of public record."); *O'Neal v. East Hampton Town*, No. CV 16-0579 (JFB) (GRB), 2017 U.S. Dist. LEXIS 138978, *1 n.2. (E.D.N.Y. Aug. 28, 2017) ("Judicial notice may be taken of the state court documentation submitted by defendants.") (collecting cases), adopted sub nom. *O'Neal v. Spota*, No. 16-CV-00579 (JFB)(GRB), 2017 U.S. Dist. LEXIS 152169 (E.D.N.Y. Sep. 19, 2017). However, "in taking judicial notice of such public records, the Court does so only to establish the fact of such litigation, not for the truth of the matters asserted in that proceeding." *Hutchins v. Solomon*, No. 16-CV-10029 (KMK), 2018 U.S. Dist. LEXIS 169421, *20 (S.D.N.Y. Sep. 29, 2018)(quotation marks and citations omitted); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order to determine what statements [a document] contained—but again not for the truth of the matters asserted.") (quotation marks and emphases omitted). Accordingly, this Court takes judicial notice of the cases supplied by Plaintiff.

Illinois courts have consistently held that the fiduciary shield doctrine does not apply where the plaintiff cannot show a direct financial interest. *See Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶ 85 (finding the doctrine inapplicable where the defendant, as a co-managing member of an LLC, was presumed to share in the company's profits); *see also Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 709-10 (N.D. Ill. 2017) (the fiduciary shield doctrine was deemed inapplicable because the defendants, key decision-makers, held equity interests, thereby giving them personal financial stakes); *see also Interlease Aviation Invs. II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 912 (N.D. Ill. 2003) (the court denied application of the doctrine to a corporate president who, as a majority shareholder, had both discretion over corporate decisions and a personal financial interest); *see also Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, No. 01 C 6985, 2002 WL 31427021, at *3-4 (N.D. Ill. Oct. 30, 2002) (the court rejected the fiduciary shield defense for a COO and board member who owned 32% and 20% of the corporation's stock, respectively, and stood to benefit personally from the company's Illinois activities); *and also United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 895 (N.D. Ill. 2002) (the court applied the fiduciary shield doctrine to protect a corporate president and loan processor from jurisdiction because they had no ownership stake or personal financial interest in the company).

Further, the pleadings raise a question regarding the extent of discretion Cloth exercised in his role at Creative Wealth to establish personal interest. In *LaSalle Bank Nat. Ass'n*, the court denied application of the fiduciary shield doctrine where the defendant, as chief financial officer, exercised substantial discretion and held personal interest through 25,000 shares of immediately exercisable stock options. 2000 U.S. Dist. LEXIS 3142, at *4. Here, while the record indicates that Cloth initiated the relationship with Schmidt Advisory, there is not authority directly

refuting the Cloth affidavit in which he states he did not personally benefit or have a direct financial stake in the transactions beyond his corporate role. *See Sabados*, 378 Ill. App. 3d at 246 (a plaintiff's *prima facie* case may be rebutted where a defendant presents uncontradicted evidence that defeats jurisdiction). Similarly, while Plaintiff alleges that Cloth participated in a Zoom call with Illinois investors, Plaintiff does not refute Defendant's assertion that Cloth acted solely in his capacity as an officer and director of Creative Wealth during that call. *Id.*

Despite this, the Court finds the fiduciary shield doctrine inapplicable in this case, as the extent of Cloth's personal and financial interest in the alleged scheme, as well as his level of participation, remains unclear. The allegations in the Complaint are concerning, and the fact that other courts have retained jurisdiction over Cloth and even entered judgments against him places this Court in a precarious position. *See* (P.'s Resp. Ex. A; Ex. B; Ex., C); *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 120 (S.D.N.Y. 2023) (finding that investors sufficiently alleged minimum contacts for personal jurisdiction over a Canadian founder (Cloth) of a media financing corporation under RICO's nationwide service provision, based on his direct involvement in signing term sheets and corresponding with U.S. investors regarding film financing).

The Court may take judicial notice of such cases as part of its evaluation, but solely for the fact of their existence and not for the truth of the matters asserted within those proceedings. *See supra*, note 3. Given the seriousness of the allegations, this Court declines to apply the fiduciary shield doctrine, aligning with other jurisdictions that have found it inapplicable where state citizens are exposed to fraud or corporate misconduct.[5] Additionally, Illinois has a vested

---

[5] There are exceptions to the fiduciary shield doctrine. For example, Louisiana courts have held that the fiduciary shield doctrine will not defeat personal jurisdiction when a nonresident corporate agent commits a tort within a forum state that would subject him to personal liability under the laws of that state. In Texas, the fiduciary shield doctrine will not prevent a court from asserting jurisdiction if it appears that the defendant individual is using the

interest in providing its residents with a forum to seek redress for injuries allegedly caused by nonresident tortfeasors. *Culligan Intern. Co. v. Wallace, Ross, & Sims*, 273 Ill. App. 3d 230 (1st Dist. 1995). Applying the fiduciary shield doctrine in this case—where the pleadings and related litigation are rife with allegations of fraud and deceptive business practices—would undermine that principle.

Furthermore, the fiduciary shield doctrine involves a balancing test that places significant emphasis on the defendant's role within the company and their direct financial interest in the company's profit. Plaintiff's argument, based on the indirect ownership interest of Cloth's children in Blac Corp., which in turn holds a partial stake in Creative Wealth, is colorable in establishing the type of direct profit-sharing interest required to overcome the fiduciary shield doctrine. Accordingly, the Court concludes that Cloth is not entitled to the protection of the fiduciary shield doctrine, and the Court will exercise personal jurisdiction over him.

### B.    Section 2-619 - Standing

Defendants argue that Plaintiff lacks standing to bring this action on behalf of the class. Plaintiff claims to have invested $1,000,000 in Creative Wealth in January 2023 through a Series B Note. However, Defendants contend that Plaintiff cannot establish standing because she did

---

corporate entity as a sham to perpetrate a fraud, to avoid personal liability, to avoid the effect of a statute, or if the corporation is the individual's alter ego. Texas courts also find that application of the fiduciary shield doctrine is determined by whether or not the corporate agent can be held personally liable under applicable law, not by whether the jurisdictional theory espoused by the plaintiff is based on general jurisdiction or specific jurisdiction. A Texas court rejected the argument that this doctrine cannot be applied to assertions of specific jurisdiction as such an argument arbitrarily ignores the rationale for the doctrine. Additionally, Texas courts will not allow a corporate officer to be shielded from the exercise of specific jurisdiction as to torts for which the officer may be held individually liable. Some states have held that the fiduciary shield doctrine does not apply to breach of fiduciary duty claims. 1 Business Torts § 2.05. *But cf. Robinson v. Sabis (R) Educ. Sys., Inc.*, No. 98 C 4251, 1999 U.S. Dist. LEXIS 9091, at *4 (N.D. Ill. May 28, 1999) (Coar, J.) (applying fiduciary shield to general counsel and vice president of corporation where there was no dispute that they acted solely in their capacity as employees); *Glass v. Kemper Corp.*, 930 F. Supp. 332, 341 (N.D. Ill. 1996) (applying fiduciary shield to director who did not hold substantial amount of stock or exercise discretion over contacts with Illinois); *Perry v. Delaney*, 5 F. Supp. 2d 617, 621 (C.D. Ill. 1998) (same). The determinative factor is the individual's status as a shareholder, not merely as an officer or director. *Plastic Film Corp. of America v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001), *Glass v. Kemper Corp.*, 930 F. Supp. 332 (N.D. Ill. 1996).

not personally fund the original $1,000,000 loan, and the new loan agreement names the Diane Fowler Revocable Trust—not Plaintiff individually—as the lender. According to Jason Cloth's affidavit, the initial loan was made in full by 272 Ventures LLC, which was created as an investment vehicle for Fowler by an investment officer. After the officer and Fowler parted ways, Fowler expressed a desire to continue the investment. Consequently, Creative Wealth replaced 272 Ventures with the Diane Fowler Revocable Trust under a new loan agreement. Plaintiff does not dispute these facts or the contents of the affidavit. Instead, Plaintiff argues that standing is satisfied because, at a minimum, the interest payments and repayment of the loan were directed to Plaintiff personally.

In explaining the purpose of the doctrine of standing, the Supreme Court in *Glisson* states, the doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. "The doctrine assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211 (1999). Further, "in the context of an action for declaratory relief, there must be an actual controversy between adverse parties, and the party requesting the declaratory judgment must possess some personal claim, status, or right that is capable of being affected by the grant of such relief." *Id*. at 1040, citing *Greer v. Illinois Hous. Dev. Auth.*, 122 Ill. 2d 462, 493 (1988).

As indicated by both parties, standing requires some "injury in fact" to a legally cognizable interest. *Id*. at 1039. This injury in fact must be (1) distinct and palpable, (2) fairly traceable to the defendant's action and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Id*. at 575; *Glisson*, 720 N.E.2d at 1040.

Because the trustee is ordinarily the appropriate person to bring (and to decide whether to bring) an action against a third party on behalf of the trust, a beneficiary may maintain a

proceeding relating to the trust or its property against a third party only in the following limited circumstances: (1) the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved); or (2) the trustee is unable or unavailable, or improperly refuses or fails, or is not well suited to protect the beneficiaries' interests. Restatement (Third) of Trusts § 107(2)(a)-(b) (2012).

Plaintiff lacks standing to bring this action in her individual capacity. The record indicates that the Diane Fowler Revocable Trust is the actual party to the new loan agreement. Fowler individually is the beneficiary. A trust is recognized as possessing a distinct legal existence, and the trustee—not the beneficiary—is ordinarily the appropriate person to bring an action on behalf of the trust. *See Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1010 (2005); *see also Grove as Tr. of Mary E. Cullinan Irrevocable Tr. Dated June 29, 1990 v. Morton Cmty. Bank*, 2022 IL App (3d) 210177, ¶ 28; *see also In re Est. of Zivin*, 2015 IL App (1st) 150606, ¶ 22 (holding an evidentiary hearing was necessary to determine whether a beneficiary had standing to bring an action where there was evidence suggesting the trustee was either incapable or unwilling to act, or had failed to protect the beneficiary's interests.) Here, Plaintiff has not sufficiently pled or provided evidence that the trustee is unwilling or incapable of pursuing the action or that the trustee improperly failed to protect the trust's interests, and thus Plaintiff, as a beneficiary, lacks standing to proceed independently.[7]

Further, Plaintiff relies on the final page of the new loan agreement, which specifies that interest payments are to be wired directly to Diane Fowler, and therefore this is sufficient to

---

[7] During oral argument, Plaintiff stated that Fowler was the trustee of the Diane Fowler Revocable Trust, though this was not conveyed in the pleadings. Even assuming this to be true, the Court's ruling remains unchanged. To properly bring this matter as trustee, Fowler would have needed to file the action in her capacity as trustee, yet she has done so in her personal capacity. Such formalities serve an essential purpose and must be observed. *Sullivan*, 359 Ill. App. 3d at, 1010.

confer standing. Defendant disputes this, arguing that Fowler does not seek interest payments in her lawsuit but instead demands the return of an "investment" or loan. Defendant contends that Fowler never made any such investment or loan, as the initial loan was made by a 272 Ventures LLC, which was later replaced by the Diane Fowler Revocable Trust.

At this stage, the Court does not assess the veracity of these conflicting statements but acknowledges that Plaintiff has pled an interest in receiving payments under the new loan agreement provided in the record. Nevertheless, the Illinois Securities Law ("ISL") of 1953, specifically when reading Section 5/13(A) & (E) together, only a "purchaser" or a "personal representative" of the purchaser has standing to seek rescission for violations of the Act. 815 Ill. Comp. Stat. Ann. 5/13(A), (B). In *Delaney v. Happel* to limit the right of rescission strictly to actual purchasers and their personal representatives, excluding other parties such as assignees from enforcing the Act. 185 Ill. App. 3d 951, 955 (1989) ("we find that the inclusion of section 13(E), specifying that the term purchaser includes personal representatives of the purchaser, implies an intent to limit the right to rescind to purchasers and their personal representatives."). Here, given the limitations conferred by the legislature, the Diane Fowler Revocable Trust would be considered the actual purchaser. Further, this Court finds that it would be inconsistent with the general rule – that a trustee can enforce actions on behalf of the trust – to conclude that Fowler, as a beneficiary, qualifies as a personal representative of the trust. Accordingly, consistent with *Delaney*, Plaintiff lacks the ability to enforce the new loan agreement under the ISL, and the interest Fowler asserts is insufficient to confer standing in this matter.

Since Plaintiff individually lacks standing to enforce the loan agreement in the manner pled, this renders her unable to maintain her claim or represent the putative class. A named plaintiff "'cannot adequately represent a class when the representative does not state a valid

cause of action.'" *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 46 (quoting *De Bouse v. Bayer AG*, 235 Ill.2d 544, 560 (2009)); *see Griffith v. Wilmette Harbor Ass'n*, 378 Ill.App.3d 173, 184 (2007) ("[i]n the context of a class action, if a purported representative plaintiff for a class action cannot maintain his individual claim against the defendant because of lack of standing or otherwise, then the class action claim cannot be maintained. [citation omitted] Accordingly, if a putative class action plaintiff has not suffered the injury that he alleges other members of the putative class have suffered, that purported plaintiff cannot represent the class.").

Again, Plaintiff did not bring this action as the trustee of the Diane Fowler Revocable Trust, but as the beneficiary, and has not pled sufficient facts to show that the trustee failed to act on behalf of the trust, she cannot personally enforce the loan agreement or represent the interests of the trust in this lawsuit.[8] Without standing, Fowler cannot represent the putative class, requiring dismissal of this class action. Consequently, Plaintiff cannot proceed with any of the remaining claims against Cloth, including Count I - Fraudulent Misrepresentation and Count II - Violation of 815 ILCS 5/12(i) Illinois Securities Law of 1953.[9]

---

[8] On January 17, 2025, Plaintiff filed a Motion for Leave to Amend to add a Plaintiff. Plaintiff sought to add John Hagerty to serve as class representative. When someone is named as a class representative in a lawsuit, they are considered to have a fiduciary duty to the other class members, meaning they must act in the class members' best interests and not prioritize their own personal gain. A class member may sue the class representative if they believe the representative breached their fiduciary duty to the class.

On information and belief, John Hagerty is an active sitting judge of the Circuit Court of Cook County. Pursuant to the Illinois Code of Judicial Conduct of 2023 RULE 3.8: APPOINTMENTS TO FIDUCIARY POSITIONS, "(A) A judge shall not accept appointment to serve in a fiduciary* position, such as executor, administrator, trustee, guardian, attorney in fact, or other personal representative, except for the estate, trust, or person of a member of the judge's family and then only if the service will not interfere with the proper performance of judicial duties. The Comments to that rule warn: "[1] A judge should recognize that other restrictions imposed by this Code may conflict with a judge's obligations as a fiduciary; in such circumstances, a judge should resign as fiduciary."" IL R S CT Rule 3.8(A), cmt. 1.

[9] Count V against Cloth was voluntarily dismissed without prejudice pursuant to the Court's Order dated September 23, 2024.

### C.    Section 2-615 – Pleading Defects

Defendant Cloth also seeks dismissal under section 2-615. Although the Court has already found grounds for dismissal under section 2-619, it is also important to address the 2-615 issues to avoid these questions in any amended pleading.

#### 1.    Count I

Defendant argues that Fowler's fraudulent misrepresentation claim is legally insufficient because the alleged statements are conclusory and fail to meet the § 2-615 fact pleading standard. Defendant contends that no false statement was made to Fowler and, even if any representations were made, they do not establish a valid fraud claim and is barred by the non-reliance clause in the loan agreement in any event.

Plaintiff in response argues otherwise, stating that the fraudulent misrepresentation claim is sufficiently pled based on the loan agreement itself, rendering any non-reliance clause barring reliance on outside information irrelevant. Plaintiff contends that the agreement contains statements intended to induce investment, such as representations that Creative Wealth was not in material default. *See, e.g.*, (P.'s Resp., at 10) ("[t]he Corporation is not in default in any material respect under any material indenture."). Plaintiff alleges, even outside the Agreement, a myriad of deceptive actions taken by Defendant, such as but not limited to: misrepresenting the financial health of Creative Wealth, soliciting more investment funds than necessary, using new investor funds to pay off old investors. (Compl. ¶189).

In their reply, Defendant argues that the statements in the loan agreement do not support a fraud claim and that Plaintiff's theory is legally deficient. First, Defendant contends that this theory of fraud was not pled in the complaint, making it improper for Plaintiff to introduce in a

response.[10] Second, Defendant asserts that the statements were made to 272 Ventures and the Fowler Trust—not to Fowler individually—and that nothing in the record establishes Cloth's personal liability for these statements. Third, Defendant maintains that a breach of contract does not constitute fraud. Fourth, even if Cloth were liable for these statements, they were directed at the "Lender," not Fowler, making reliance by Fowler unreasonable. Lastly, Defendant argues that the statements are not actionable as fraud because they are either too vague, lack specific supporting facts, or concern future conduct, which is not fraudulent as a matter of law. *See Cramer v. Ins. Exchange Agency*, 174 Ill. 2d 513,528 (1996).

Regarding the loan agreement, this Court tends to agree with Defendant that, as a matter of law, Cloth cannot be found personally liable for statements contained within the loan agreement (at least absent sufficient facts to pierce the veil of Creative Wealth). A corporation is a distinct legal entity which exists separate and distinct from its shareholders, directors and, officers. *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773 (1st Dist. 2009). The Cloth Affidavit asserts he is an officer and director of Creative Wealth. (Def.'s Mot. Dismiss, Ex. 1, ¶ 4). However, within the attached loan agreement, Cloth, as the "Authorized Signing Officer" holds himself out as the CEO of Creative Wealth. (Def.'s Mot. Dismiss, Ex. 2, at 2). Regardless, even when construed in favor of Plaintiff, a CEO is considered a corporate officer, thus Cloth cannot be personally liable in the manner alleged by Plaintiff. *See Baird & Warner, Inc. v. Addison Indus. Park, Inc.*, 70 Ill. App. 3d 59, 387 N.E.2d 831 (1979) ("[a]n agent is not liable on a contract signed as agent for a disclosed principal [citation omitted], nor is a

---

[10] The Court declines to address this argument, as Plaintiff's liability theory based on the loan agreement is substantially similar to the originally proposed theory of direct misrepresentation by Cloth, and all relevant facts for both are already pled in the complaint. *See Cigal Concepts, Inc. v. True RCM Sols., Inc.*, 2020 IL App (1st) 191990-U, ¶ 25.

corporate officer normally liable on a contract made by his corporation, even if he is the sole stockholder. [citation omitted]").

Regarding the alleged facts outside of the loan agreement, this Court finds that Plaintiff has insufficiently pled a cause of fraudulent misrepresentation. The elements for a claim of fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Board of Education of City of Chicago v. A, C & S, Inc.,* 131 Ill.2d 428, 452 (1989). The facts that constitute an alleged fraudulent misrepresentation must be pled with specificity and particularity. *Board of Education,* 131 Ill.2d at 457.

Plaintiff alleges various omissions and misrepresentations by Cloth regarding the financial health of Creative Wealth. (Compl. ¶ 189(a)-(k)) (*e.g.*, the application of investor funds, undisclosed commissions, and the profitability of certain projects). However, the Complaint lacks specificity regarding when these alleged misrepresentations were made, to whom they were directed, and whether they were communicated to Plaintiff directly. *See Iseberg,* 227 Ill. 2d at 86. Furthermore, Plaintiff fails to allege particular facts demonstrating that they personally relied on these statements when making the investment. The general allegations that Cloth misrepresented the financial state of Creative Wealth, and the use of funds do not establish a specific, knowingly false statement made directly to Plaintiff with the intent to induce reliance. Moreover, allegations regarding omissions, such as undisclosed commissions and the commingling of funds, fail to establish a duty to disclose. *See Schrager v. N. Cmty. Bank,* 328 Ill. App. 3d 696, 767 (2002) (quoting *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor,* 295 Ill. App. 3d 567, 573 (1998) ("A plaintiff must further demonstrate justifiable

reliance, as well as the existence of "a special or fiduciary relationship" giving rise to a duty to convey accurate information."). Accordingly, this claim for fraudulent misrepresentation is inadequately pled.

### 2. Count II

Defendant moves to dismiss Plaintiff's Count II for Violation of the Illinois Securities Law of 1953 ("ISL"), 815 ILCS 5/12(i), on multiple grounds, including failure to plead the claim, the claim being barred by the non-reliance clause in the loan agreement, and, most notably, that the loan in question does not qualify as a security under the ISL.

In Count II, Plaintiff alleges that the following constitute "securities" under the ISL, "interests in Creative Wealth [***] whether sold as promissory notes for a term greater than six months in specific projects, promissory notes greater than six months for investment in slates of projects (Series E Notes, Series B Notes, or membership units in Catalyst Wealth)." (Compl. ¶ 195). The ISL provides that:

> "'Security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, [***] or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

815 ILCS 5/2.1.

To put it simply, "a security within the meaning of the securities laws is a contract, transaction or scheme whereby one person invests his money in a common enterprise on the theory that he expects to receive profits solely from the efforts of others." *Van Dyke v. White*, 2019 IL 121452, ¶ 51. A common enterprise is one in which the investor's profits are dependent upon the success of those seeking the investment or another third party. *Integrated Research Services, Inc. v. Illinois Secretary of State Securities Dept.*, 328 Ill. App. 3d 67, 72 (2002). The

recitation of the loan agreement provides that the Lender, "agrees to provide a loan to the Corporation in the amount set forth below and upon the [***] terms and conditions set forth in the Secured Loan Commitment Agreement." (Def.'s Mot. Dismiss, Ex. E., at 2). No other provision of the agreement or note reflects that it concerns an investment for profits rather than a loan for interest.

Plaintiff concedes that Fowler's investment is not a security but argues this is irrelevant since Cloth obtained Class Members' money via the sale of securities. Plaintiff goes on to state that liability under 815 ILCS 5/12 does not require Cloth to have personally issued or sold the securities. Essentially, Plaintiff contends that Cloth orchestrated or participated in deceptive practices to obtain investor funds—some involving securities and others not—while exploiting loopholes to evade personal liability.

The Court disagrees that such an attenuated relationship confers standing under the ISL, as it deviates from the statute's plain and ordinary meaning. *See*, *e.g.*, *Van Dyke*, 2019 IL 121452, ¶ 45 ("[t]he determination of whether a financial instrument falls within the definition of a 'security' under the Act is a matter of statutory construction [***]."). Plaintiff fails to cite any provision within 815 ILCS 5/2.1 that supports the claim that such a relationship fits the definition of a security. Nor does Plaintiff provide authority suggesting the Court should look beyond the statute to determine whether such a relationship constitutes a security or confers general standing to bring a claim under the ISL. Accordingly, the Court finds that Plaintiff has insufficiently pled Count II.

As indicated in this Court's Order dated September 23, 2024, Plaintiff voluntarily dismissed Count V without prejudice; therefore, the Court need not address it. The remaining counts do not involve Cloth.

IV.    **Conclusion**

Based on the above discussion,

**THE COURT FINDS:**

A.    No general jurisdiction over Cloth.

B.    Specific jurisdiction over Cloth proper, especially given the contested allegations at the pleading stage of this case.

C.    The Fiduciary Shield Doctrine does not protect Cloth based upon the contested allegations asserted by Plaintiffs.

D.    Dismissal is appropriate pursuant to section 2-619 as Fowler individually lacks standing to enforce the loan agreement and, therefore, is also not an appropriate class representative.

E.    Dismissal pursuant to section 2-615 is appropriate as Fowler failed to adequately plead sufficient facts to support both Counts I and 2.

**IT IS HEREBY ORDERED**:

1.    Defendant Jason Cloth's Combined Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

2.    Plaintiff's claims against Defendant Cloth are dismissed without prejudice.

3.    Plaintiff is granted until March 27, 2025, to file an amended complaint to address the deficiencies identified in this Order, including leave to add an additional or substitute Plaintiff class representative.[11]

---

[11] Just prior to the entry of this Order, Plaintiff filed an Amended Motion for Leave to Amend along with a specimen amended complaint. This Order does not address the sufficiency of the new proposed amended complaint. Plaintiff should consider the discussion and findings herein when crafting the final version of the amended complaint.

4.  Defendant Cloth shall answer or otherwise plead to the amended complaint by April 24, 2025.

5.  This matter is continued to **May 14, 2025, at 11:00 a.m.** for **status of the pleadings** and **case management**. The parties may either appear in-person in Courtroom 2307 or appear remotely via Zoom, unless otherwise ordered by the Court. [Meeting ID: 876 8729 8501 / Passcode: 926987]

6.  With respect to the class action against the Schmidt Defendants, the Final Approval Hearing set for **March 10, 2025**, is **STRICKEN** and that class action aspect of this case is stayed until further order of Court. Given that the Court has granted Plaintiff leave to amend the complaint to add or substitute class representative(s), the Court may need to modify the order approving the class, give notice to class members listing the appropriate class representative(s), review the grant of preliminary approval and any subsequent final approval. This is unless of course Plaintiff decides to stand on their original pleading, take an involuntary dismissal and then appeal.[12] Furthermore, even after sorting through the technical points above, staying the Schmidt class action proceedings would not prejudice the Plaintiffs because the sole source of funds for class recovery hinges upon whether the Markel American policy that is the subject of *Markel American Insurance v. Sanford Schmidt, et. al.*, Case No. 2024 CH 09499, provides coverage for this case.

ENTERED:

**Judge Thaddeus L. Wilson**

| ENTERED |
| --- |
| Judge Thaddeus L. Wilson – 1976 |
| **February 20, 2025** |
| **Mariyana T. Spyropoulos** |
| CLERK OF THE CIRCUIT COURT |
| OF COOK COUNTY, IL |

---

[12] Additionally, the Court is attempting to avoid the disastrous circumstances created in another case on this Court's docket where like here the class plaintiffs cut a deal with the alleged wrongdoer defendant for the value of the insurance policy without the inclusion or permission of the insurer and where the insurer, as is the case here, later complained that the policy did not provide coverage. *Sandbox Mutual Insurance Company f/k/a/ Saskatchewan Mutual Insurance Company, CE Design, Ltd and Homegrown Advertising, Inc.*, Circuit Court of Cook County, Case No. 2024 CH 02936. The Canadian courts refuse to honor the Illinois order, and the Illinois courts refuse to vacate it.