# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CASEY OAKS and JAMES MORMILE Individual and on behalf of a class of similarly situated investors, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:23-cv-02833-X |
| MARABOYINA CAPITAL, LLC and SURAJ MARABOYINA, | § § § | |
| Defendants. | § § | |

## PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f) AND 12(b)(6)

## TABLE OF CONTENTS

I. INTRODUCTION..................................................................................................1

II. FACTUAL BACKGROUND.................................................................................1

III. ARGUMENT .....................................................................................................5

A. The Legal Standard is Dispositive of the Motion because
Maraboyina's Arguments Ask the Court to Disregard Well-Pled
Facts.......................................................................................................................5

B. Plaintiffs' Amended Complaint Complies with the Court's
Order......................................................................................................................6

C. The Court should not take Judicial Notice of the Participation
Agreements..........................................................................................................10

D. Plaintiffs State a Claim for Breach of Fiduciary Duty. ..................................10

E. Plaintiffs State a Claim for Negligence..........................................................14

F. Plaintiffs State a Claim for Assumpsit ...........................................................20

CONCLUSION ......................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Hays*,
63 F.4th 307 (5th Cir. 2023) ................................................................................5

*Amoco Prod. Co. v. Smith*,
946 S.W.2d 162 (Tex. App 1997) .................................................................20, 21

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) .........................................................................................5

*Associated Indem. Corp. v. CAT Contracting*,
964 S.W.2d 276 (Tex. 1998) ...............................................................................13

*Augustus v. Bd. of Pub. Instruction*,
306 F.2d 862 (5th Cir. 1962) ...............................................................................6

*Camp v. RCW & Co.*,
No. H-05-3580, 2008 U.S. Dist. LEXIS 133981 (S.D. Tex. Aug. 15, 2008).......................11

*Cardwell v. Gurley*,
No. 05-09-01068-CV, 2018 Tex. App. LEXIS 5460 (Tex. App. July 18, 2018).................12

*Securities & Exchange Comm'n v. Capital Gains Research Bureau, Inc.*,
375 U.S. 180 (1963) ...........................................................................................12

*Edwards v. Mid-Continent Office Distribs., L.P.*,
252 S.W.3d 833, 837 (Tex. App. 2008). ...............................................................21

*Encompass Off. Sols., Inc. v. Ingenix, Inc.*,
775 F. Supp. 2d 938 (E.D. Tex. 2011) ..................................................................5

*Everett v. TK-Taito, L.L.C.*,
178 S.W.3d 844 (Tex. App. 2005) .......................................................................21

*Dernick Resources v. Wilstein*,
312 S.W.3d 864, 877 (Tex. App.—Houston [1st Dist.] 2009)...................................11

*Goins v. Clear Creek Indep. Sch. Dist.*,
No. H-24-3248, 2024 U.S. Dist. LEXIS 233584 (S.D. Tex. 2024)................................6

*In re Heritage Org., L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007) ..................................18

*Italian Cowboy Partners, Ltd. v. Prudential Ins.*,
341 S.W.3d 323 (Tex. 2011) ................................................................................18

*Izzo v. Izzo*,
No. 03-09-00395-CV, 2010 Tex. App. LEXIS 3623 (Tex. App. May 14, 2010) ................11

*United States v. Jefferson Elec. Mfg. Co.*,
291 U.S. 386 (1934) ...........................................................................................21

*Leibovitz v. Sequoia Real Estate Holdings, L.P.*,
465 S.W.3d 331, 2015 Tex. App. LEXIS 5512 (Tex. App 2015) .........................................18

*Lockridge v. Dallas Cnty. Sch.*,
No. 3:10-CV-1175-O, 2010 WL 5538436 (N.D. Tex. Dec. 8, 2010) ...................................5

*McReynolds v. Bell Textron, Inc.*,
No. 4:22-CV-00194-O-BP, 2023 WL 2432916 (N.D. Tex. Feb. 2, 2023)............................6

*Milestone Props. v. Federated Metals Corp.*,
867 S.W.2d 113 (Tex. App. 1993) ......................................................................9

*Miley v. Oppenheimer & Co.*,
637 F.2d 318 (5th Cir. 1981) .............................................................................14

*Mitchell v. Crescent River Port Pilots Ass'n*,
265 F. App'x 363 (5th Cir. 2008) ......................................................................5

*Moss v. Morgan Stanley*,
719 F.2d 5 (2d Cir. 1983) .................................................................................12

*Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch. Comm'n*,
103 F.4th 1097 (5th Cir. 2024).........................................................................12

*Patterson v. First Nat'l Bank*,
921 S.W.2d 240, 244 (Tex. App. 1996) ...............................................................9

*Praesel v. Johnson*,
967 S.W.2d 391 (Tex. 1998)............................................................................20

*Robinson v. Radio One, Inc.*,
695 F. Supp. 2d 425 (N.D. Tex. 2010) ...............................................................5

*Russell v. Dall. Cty.*,
No. 05-17-01475-CV, 2019 Tex. App. LEXIS 1365 (Tex. App. Feb. 25, 2019) ................9

*Sewell v. Smithkline Beecham Corp.*,

584 F. Supp. 2d 548 (W.D. Tex. 2008) ..................................................................21

*Siddiqui v. Fancy Bites, LLC,*
504 S.W.3d 349 (Tex. App. 2016) .......................................................................13

*Skidmore v. Swift & Co.,*
323 U.S. 134 (1944) .............................................................................................. 6

*Staats v. Miller,*
150 Tex. 581, 243 S.W.2d 686 (1951) ................................................................21

*Travelhost, Inc. v. Brady,*
3:11-CV-00454-M-BK, 2012 U.S. Dist. LEXIS 186336 (N.D. Tex. 2012) ........18

*Tri-State Chem., Inc. v. Western Organics, Inc.,*
83 S.W.3d 189 (Tex. App. 2002) .......................................................................20

*Villarreal v. Wells Fargo Brokerage Servs., LLC,*
315 S.W.3d 109 (Tex. App. 2010) .....................................................................14

*W. Res. Life Assurance Co. v. Graben,*
233 S.W.3d 360 (Tex. App. 2007) .....................................................................11

*Williams v. Parker,*
472 S.W.3d 467 (Tex. App. 2015) .....................................................................14

*Zucker v. Aim Advisors, Inc.,*
371 F. Supp. 2d 845 (S.D. Tex. 2005)................................................................11

iv

Plaintiffs, Casey Oaks and James Mormile ("Plaintiffs"), individually and on behalf of a class of similarly situated investors, through their undersigned counsel, in response to Defendant Suraj Maraboyina's ("Defendants") Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(f) and 12(b)(6), state as follows:

## I.     INTRODUCTION

Defendant was one of three American onramps for investors into a giant Canadian Ponzi scheme that is now the subject of an enforcement action (*Ontario Securities Commission v Cloth* No. 2025-5). Defendant knew or should have known he was dealing with a fraudster and is liable on a series of negligence-based theories as detailed herein. In deciding a motion to dismiss, the Court should be mindful that all reasonable inferences must be drawn in Plaintiffs' favor and Defendant cannot rely on arguments premised upon contradicting well pled facts.

## II.    FACTUAL BACKGROUND

Suraj Maraboyina ("Maraboyina") was at all times relevant a Registered Investment Adviser who owed fiduciary duties to his clients. The statements for the investments at issue in this case indicated he was the Adviser assigned. (Am. Cmplt, ¶ 1) Maraboyina served as the de facto placement agent or broker for Cloth in America, Maraboyina held himself out as a fiduciary for investors and sold dozens of individuals on the lies told by Cloth. (Am. Cmplt, ¶ 5).

The Court is well acquainted with Jason Cloth and his scheme so we do not need to tell the whole story again here. *See* (Dkt. # 18)

Maraboyina's role in the scheme was to recruit wealthy individuals to invest in the Ponzi scheme. (Id., ¶ 14). Maraboyina was an Investment Adviser who passed a series 65 Examination. (Id., ¶ 12). As a Registered Investment Adviser, he owed fiduciary duties to his clients as a matter of law. (Id., ¶ 202). The statements for the investments at issue in this case indicated he was the

1

Adviser assigned. (Id., ¶ 1). His focus as an Investment Adviser was selling and managing alternative investments for high-net-worth individuals and families. (Id., ¶ 13). Cloth was deceptive and his scheme was designed to prey on wealthy individuals without in depth knowledge of the innerworkings of Hollywood. Maraboyina was taken hook, line, and sinker by Cloth and wanted to be a Hollywood producer himself. (Id., ¶ 30).

Maraboyina told Plaintiffs that the investment was low risk. (Id., ¶¶ 16, 22). He told Plaintiffs that he himself invested in the Cloth Offering as did his close family. (Id., ¶¶ 17, 23). He insisted that Plaintiffs should trust his judgment and investigation when choosing to invest with the foreign business. (Id.) Maraboyina told Plaintiffs that he performed his own due diligence on Cloth and Creative Wealth. (Id., ¶¶ 18, 24). Maraboyina told Plaintiffs that Creative Wealth had a track record of paying investors for its many successful productions. (Id., ¶¶ 19, 26). Maraboyina told Mormile that the proceeds of his investment into an individual picture were easily traceable. (Id., ¶ 25). Maraboyina did not tell Plaintiffs that he was paid a fee based on the amount of money he raised for Creative Wealth. (Id., ¶¶ 20, 27).

Maraboyina relied on personal relationships and word-of-mouth referrals to obtain investors. (Id., ¶ 132). He typically solicited investors in person, over the telephone, and via email for the Cloth Offering, ultimately soliciting over $100,000,000 in investment for the Cloth Offering of which approximately $60,000,000 remains outstanding. (Id., ¶¶ 133-34). Assuming Maraboyina was paid at the same rate his contemporary in New York was, Maraboyina's finders fees and executive producer fees exceeded $3,000,000. (Id., ¶ 135); *see also* Exhibit "A". Maraboyina was Cloth's salesmen and broker raising money for Cloth throughout the United States. (Id., ¶ 137). Maraboyina negligently relied only on representations from Cloth when recommending the investment to Plaintiffs rather than confirming anything with third parties or

looking into Cloth's companies' finances. (Id., ¶ 138). The capital deployed by Maraboyina was provided by Plaintiffs and the class. (Id., ¶ 139).

During this time, Cloth made representations and provided purported contracts, emails, and other information to Maraboyina, which Maraboyina negligently believed to be true and accurate without investigating the obvious holes in the story that was far too good to be true. (Id., ¶ 140). Maraboyina sold Plaintiffs investments in the Cloth Offering by regurgitating the lies told by Cloth without performing any due diligence. (Id., ¶ 141).

Maraboyina acted as the gatekeeper of information from Cloth. (Id., ¶ 142). Plaintiffs reasonably relied on Maraboyina's due diligence on the investment and representations that they were actually investing in specific projects rather than Cloth's personal piggy bank. (Id., ¶ 143). Rather than relying on any substantive investigation of its own, Maraboyina relied on the fact that Cloth kept paying as sufficient evidence that the apparent Ponzi Scheme was legitimate. (Id., ¶ 144). Maraboyina kept his head in the sand so long as the payments kept coming in from Cloth. (Id., ¶ 146).

After the defaults, Maraboyina admitted to investors he was in the dark on how Cloth's scheme operated and where the invested funds went. (Id., ¶ 147). Maraboyina admitted to no understanding the investment he sold and its relationship with the previous Ponzi scheme Cloth had run. (Id., ¶ 148). Maraboyina admitted he did not know that CWMF was in litigation in Canada at the time they invested. (Id., ¶ 149). Maraboyina further admitted to eventually discovering the underlying fraud that he knew or should have known about prior to the investment. (Id., ¶ 150).

Plaintiffs reasonably relied on Maraboyina's representations and due diligence into Cloth because he was an investment advisor who passed a Series 65 Examination and he was at all times a Registered Representative of Finalis Securities LLC Member FINRA/SIPC. (Id., ¶ 155).

Placement agents such as Maraboyina who sell private placements to retail customers for a commission, such as Maraboyina, are required to register with the Financial Industry Regulatory Authority ("FINRA"). (Id., ¶ 157). FINRA regulates broker/dealer firms like Maraboyina and their registered representatives (*i.e.*, stockbrokers), and promulgates rules and regulations that brokerage firms and their registered representatives must adhere to. (Id., ¶ 158).

Maraboyina solicited over $100,000,000 in investment for the Cloth Offering of which approximately $60,000,000 remains outstanding. (Id., ¶ 134). Maraboyina's compensation from CWMF was not disclosed, but upon information and belief he received a fee of approximately 3% of each investment. (Id., ¶ 56). Maraboyina was later named an executive producer and upon information and belief well compensated for that role. (Id., ¶ 57). Assuming Maraboyina was paid at the same rate his contemporary in New York was, Maraboyina's finders fees and executive producer fees exceeded $3,000,000. (Id., ¶ 135).

Defendant misleadingly suggests that the companion case to this one – a Cook County, Illinois case against Cloth and the other placement agent, Sanford Schmidt – has been dismissed. It has not been dismissed. The Cook County court granted a motion to dismiss by Cloth, in part, based upon arguments by Cloth that the offering was not a security and that the class representative was not an adequate representative. Plaintiffs in that action filed an amended complaint on March 14, 2025, nearly a month before Maraboyina filed the present motion suggesting that the Cook County lawsuit had been dismissed. In fact, the other placement agent, Schmidt, has wisely entered into a settlement agreement with the plaintiffs there and that class settlement is pending final approval. Based upon the arguments there, Plaintiffs did not replead their securities fraud claim.

III.    ARGUMENT

A. **The Legal Standard is Dispositive of the Motion because Maraboyina's Arguments Ask the Court to Disregard Well-Pled Facts.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard" does not require a plaintiff to plead facts with such detail as to make the defendant's liability probable. *Robinson v. Radio One, Inc*., 695 F. Supp. 2d 425, 427 (N.D. Tex. 2010) (*citing Iqbal*, 129 S.Ct. at 1949). Rather, a plaintiff will meet the plausibility standard when they plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Additionally, the court must "accept all well-pled facts as true [and construe] all reasonable inferences in the complaint in the light most favorable to the plaintiff." *Allen v. Hays*, 63 F.4th 307, 313 (5th Cir. 2023). A court cannot dismiss a plaintiff's claims based on its supposition that the plaintiff is not likely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Encompass Off. Sols., Inc. v. Ingenix, Inc*., 775 F. Supp. 2d 938, 953 (E.D. Tex. 2011) (*quoting Twombly*, 550 U.S. at 563 n. 8).

Motions to dismiss are generally viewed with "disfavor," *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 367 (5th Cir. 2008), and rarely granted. *Lockridge v. Dallas Cnty. Sch*., No. 3:10-CV-1175-O, 2010 WL 5538436, at *3 (N.D. Tex. Dec. 8, 2010), report and recommendation adopted, No. 3:10-CV-1175-O, 2011 WL 52735 (N.D. Tex. Jan. 6, 2011). In fact, "[d]istrict courts 'can grant a motion to dismiss only if it appears beyond doubt that the plaintiff

5

can prove no set of facts in support of his claim that would entitle him to relief." *McReynolds v. Bell Textron, Inc.*, No. 4:22-CV-00194-O-BP, 2023 WL 2432916, at *2 (N.D. Tex. Feb. 2, 2023), report and recommendation adopted, No. 4:22-CV-00194-O-BP, 2023 WL 2432028 (N.D. Tex. Mar. 9, 2023) (*quoting Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

Plaintiffs have me met—and far exceeded—the pleading standards required to survive Defendant's Motion. These are all affirmative arguments that can be attempted.

### B. Plaintiffs' Amended Complaint Complies with the Court's Order.

Motions to strike are used to attack "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in a pleading. Fed. R. Civ. P. 12(f). Such motions are viewed with disfavor and are rarely granted. *Goins v. Clear Creek Indep. Sch. Dist.*, No. H-24-3248, 2024 U.S. Dist. LEXIS 233584, at *7-8 (S.D. Tex. 2024); *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) ("Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice.").

First, Defendant oddly moves to strike analogous persuasive authority attached to the complaint. On March 14, 2024, the Securities and Exchange Commission entered a cease-and-desist Order against Cloth's first American Middle-Man, Christopher Conover and his firm Hudson Valley Wealth Management, Inc. based on the same acts and omissions alleged herein against Maraboyina. (Am. Cmplt. ¶ 130, Exhibit "A"). This is a federal administrative order and persuasive authority. *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). In that case another Cloth salesman was penalized by the SEC for the same conduct with the same investment. The only distinguishing factor is that Conover created a security to fund the syndicated loans rather than placing all of his clients in the loans directly as Maraboyina did. As a result of the many of the same acts and omissions in the same investment by individuals with the same relationship to their clients as Maraboyina, Conver and Hudson were required to disgorge all fees and pay a penalty as a result of their breaches of fiduciary

duty.

The Court summarized its dismissal as follows:

> "The plaintiffs do not point to specific representations that Maraboyina made to induce their investment and explain how those statements were rendered defective by material omissions; the plaintiffs fail to plead how Maraboyina committed a securities fraud. Further, they fail to show that he abridged any affirmative disclosure duties, as a placement agent or otherwise."

The Court concluded: "The changes to that pleading must be limited to curing the defects this opinion identifies."

Plaintiffs addressed these deficiencies and limited the new pleading to curing the defects the Court identified while also correcting a more significant issue not raised in this case of eliminating any claims based on the investment being a security.

Plaintiffs detailed what Maraboyina told them in the Complaint. Maraboyina told Plaintiffs that the investment was low risk. He told Plaintiffs that he himself invested in the Cloth Offering as did his close family. He insisted that Plaintiffs should trust his judgment and investigation when choosing to invest with the foreign business. Maraboyina told Plaintiffs that he performed his own due diligence on Cloth and Creative Wealth. Maraboyina told Plaintiffs that Creative Wealth had a track record of paying investors for its many successful productions. Maraboyina told Mormile that the proceeds of his investment into an individual picture were easily traceable. Maraboyina did not tell Plaintiffs that he was paid a fee based on the amount of money he raised for Creative Wealth. (Am. Cmplt, ¶¶ 16-27).

These statements were all deceptive, untruthful, or designed to garner Plaintiffs' trust. In reality, Maraboyina performed no due diligence whatsoever because even a modicum of due diligence would have revealed that Cloth had been engaged in a Ponzi scheme before, an obvious red flag. A review of Creative Wealth's financials would have revealed that proceeds were not

7

easily traceable and were only made based upon Cloth's needs at that time. They were not attached to the success of the film. Maraboyina didn't care about his clients.

Plaintiffs addressed the deficiencies the Court identified by both pleading additional facts and amending the causes of action. Doing so is permissible and warranted under Rule 63. For one, Plaintiffs removed the securities fraud claim because, after significant research as well as briefing in the Cook County, Illinois case, they determined that the Cloth Offering likely does not qualify as a security. It made more sense to drop that claim rather than amend it and necessarily replace the securities claims with common law claims.

In rejecting the negligent misrepresentation claim, the Court explained that "Texas law does recognize negligent misrepresentation by omission when there is a special duty of disclosure" and that "[g]enerally, a duty of disclosure arises only in confidential or fiduciary relationships." The Court concluded that "the plaintiffs have failed to plead that the defendants owed a fiduciary duty to the plaintiffs." So, in their Amended Complaint, Plaintiffs correct this precise defect pleading with much more particularity how an investment advisor like Maraboyina owes fiduciary duties to his clients. This is addressed much more fully below. This, in turn, establishes a breach of fiduciary duty claim. And a breach of fiduciary duty claim does not require the same heightened pleading as a fraud-based claim like negligent misrepresentation does.

In addressing the deficiencies, the Court identified and repleading, Plaintiffs necessarily established new claims. For example, the securities fraud claim and the negligent misrepresentation claim morphed into claims for breach of fiduciary duty and negligence. It is not merely that Maraboyina omitted critical information, it is that he had a duty – a fiduciary duty – to do much more than merely not mislead Plaintiffs. Similarly, Maraboyina's role as an investment advisor brings with it certain professional duties. In repleading and addressing the deficiencies the

court noted, the Plaintiffs' claims fit much more appropriately as claims for breach of fiduciary duty and negligence.

Notwithstanding the fact that Plaintiffs limited their Amended Complaint to the issues the court directed, Texas law makes clear that Plaintiffs are entitled to amend their pleadings. Texas courts give a liberal interpretation to Rule 63 covering amendments to pleadings. *Patterson v. First Nat'l Bank*, 921 S.W.2d 240, 244 (Tex. App. 1996). A trial court has no discretion to refuse an amended pleading unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Russell v. Dall. Cty.*, No. 05-17-01475-CV, 2019 Tex. App. LEXIS 1365, at *8-9 (Tex. App. Feb. 25, 2019). The party opposing the amendment generally has the burden to show prejudice or surprise. *Id*. Defendant asserts no prejudice or surprise because there is none.

An amendment that is prejudicial on its face has three defining characteristics: (1) it asserts a new substantive matter that reshapes the nature of the trial itself; (2) the opposing party could not have anticipated the new matter in light of the development of the case up to the time the amendment was requested; and (3) the amendment would detrimentally affect the opposing party's presentation of its case. *Id*. The Court in *Russell* refused the amendment because it occurred two days prior to trial.

Furthermore, as long as the amended pleading does not allege a wholly new, distinct, or different transaction, then it relates back to the original filing. *Milestone Props. v. Federated Metals Corp.*, 867 S.W.2d 113, 116 (Tex. App. 1993).

Defendant presents no prejudice or surprise in its motion and should be precluded from doing so in a reply brief. Quite simply, there is no surprise and there is no prejudice. The Court

identified the areas of deficiency and the amendments addressed them. The parties are not yet at issue, discovery has not commenced, and Defendant has plenty of time to structure its defense. The amendment hardly reshapes the case at all. It merely reframes the same facts and legal arguments as before.

### C. The Court should not take Judicial Notice of the Participation Agreements.

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Defendant asks the Court to take judicial notice of eleven un-authenticated contracts executed with a third party (CWMF) and to resolve factual disputes about their scope and meaning. One document is unsigned and the others purport to be electronically signed by Plaintiff Casey Oaks. However, there is no way to confirm the authenticity of the generic electronic signatures at this stage. The Fifth Circuit forbids judicial notice where, as here, authenticity and completeness are in dispute and the documents are offered for the truth of disputed assertions. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). In *Scanlan*, the court explained that the district court erred when it considered documents outside the complaint in deciding a motion to dismiss.

It would be inappropriate for the Court to consider the Participation Agreements here.

### D. Plaintiffs State a Claim for Breach of Fiduciary Duty.

The elements of a breach of fiduciary claim are that (1) a fiduciary relationship between the plaintiff and defendant existed; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant. *See,*

*e.g., Dernick Resources v. Wilstein*, 312 S.W.3d 864, 877 (Tex. App.—Houston [1st Dist.] 2009). Furthermore, "[a] fiduciary relationship imposes a duty on the fiduciary to render full and fair disclosure of facts material to the relationship giving rise to the duty." *See id*.

The Securities and Exchange Commission (the "SEC" or the "Commission") published guidance interpreting the standard of conduct for investment advisers under the Investment Advisers Act of 1940. The SEC explained:

> "While the application of the investment adviser's fiduciary duty will vary with the scope of the relationship, the relationship in all cases remains that of a fiduciary to the client. In other words, an adviser's federal fiduciary duty may not be waived, though it will apply in a manner that reflects the agreed-upon scope of the relationship. A contract provision purporting to waive the adviser's federal fiduciary duty generally, such as (i) a statement that the adviser will not act as a fiduciary, (ii) a blanket waiver of all conflicts of interest, or (iii) a waiver of any specific obligation under the Advisers Act, would be inconsistent with the Advisers Act, regardless of the sophistication of the client."

84 FR 33669, 33672.

Consistent with the SEC's interpretation, Texas courts have explained that a person who holds herself out as an investment adviser and provides personal investment advice for compensation owes her customers a fiduciary duty. *See, e.g., Zucker v. Aim Advisors, Inc*., 371 F. Supp. 2d 845, 848 (S.D. Tex. 2005); *W. Res. Life Assurance Co. v. Graben*, 233 S.W.3d 360, 373 (Tex. App. 2007); *Izzo v. Izzo*, No. 03-09-00395-CV, 2010 Tex. App. LEXIS 3623, at *24 (Tex. App. May 14, 2010). A finding that the investment advisor rendered advice on a regular basis is essential to a determination that a fiduciary relationship existed. *Camp v. RCW & Co*., No. H-05-3580, 2008 U.S. Dist. LEXIS 133981, at *25 (S.D. Tex. Aug. 15, 2008).

The Amended Complaint alleges exactly that: Defendant was a registered investment adviser regulated by SEC, was advising clients regularly on the suitability of the Cloth Offering

and received advisory-based compensation. Those allegations – accepted as true on Rule 12(b)(6) – are sufficient to establish that Maraboyina owed fiduciary duties to his clients.

Defendant's reliance on *Moss v. Morgan Stanley*, 719 F.2d 5 (2d Cir. 1983) is misplaced. *Moss* concerned anonymous market professionals transacting on an exchange, not an adviser who cultivated a personal, years-long relationship and solicited investments from individual clients.

Defendant argues that the Plaintiffs do not establish that Maraboyina was *their* fiduciary. To make this argument, Maraboyina would have to ignore established federal regulations as well as the allegations of the Amended Complaint.

Investment advisers have a fiduciary relationship with their clients. *See Securities & Exchange Comm'n v. Capital Gains Research Bureau, Inc*., 375 U.S. 180, 191, 194, (1963); *Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch. Comm'n*, 103 F.4th 1097, 1103 (5th Cir. 2024). This should not be controversial.

Plaintiffs allege that Maraboyina was "serving as an investment advisor to Plaintiffs and the Class." (Am. Cmplt., ¶ 203). Plaintiffs describe themselves as Maraboyina's "Investment Advisor clients." (Am. Cmplt. ¶ 154). Maraboyina even held himself out as "well-equipped to help clients navigate the complexities of the media industry and achieve their financial goals through innovative and creative solutions." (Am. Cmplt, ¶ 34).

As investment advisor to Plaintiffs, Maraboyina "recommend[ed] the [Cloth Offering] investment to Plaintiffs." (Am. Cmplt, ¶ 138). However, even "an iota of due diligence… would have demonstrated this investment was not safe for anyone." (Am. Cmplt, ¶ 131).

Even if this Court somehow concludes that the formal investment advisor-client relationship between Maraboyina and Plaintiffs does not give rise to a fiduciary duty, Texas courts recognize that fiduciary duties may arise from informal relationships as well. *Cardwell v. Gurley*,

12

No. 05-09-01068-CV, 2018 Tex. App. LEXIS 5460, at *13 (Tex. App. July 18, 2018). An informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship. *Associated Indem. Corp. v. CAT Contracting*, 964 S.W.2d 276, 287-88 (Tex. 1998). To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit. *Id*. The existence of an informal fiduciary duty is ordinarily a question of fact. *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 365 (Tex. App. 2016).

Therefore, even if a formal investment advisor-client relationship was disputed – which is a question of fact unsuitable for determination at this stage – the pleaded facts satisfy the Texas test for an informal fiduciary duty. For one, Maraboyina maintained a long-term, personal relationship with his clients. He spent three years courting Plaintiffs, providing regular updates, and urging rollover of proceeds (e.g., the Shadowplay and Ghostbusters communications described at ¶¶ 71-82). Second, Maraboyina made express invitations to his clients to place their trust in him. He told each Plaintiff to "trust [his] judgment" and that he had invested his own and family money—classic language creating "a special confidence." Finally, Maraboyina had discretion in the investments he recommended and superior – if not sole – access to information about the investments from Cloth. Maraboyina held himself out as performing the due diligence that Plaintiffs could not perform themselves. As alleged, though, Maraboyina's due diligence was entirely lacking. And he concealed the compensation he was receiving to boot. Taken together, these facts easily plead the "special confidence" necessary for an informal fiduciary duty.

This argument is discussed more below, however, even if this Court were to consider the Participation Agreements with Creative Wealth, the SEC guidance establishes that the generalized risk disclosures in those documents does not vitiate Maraboyina's fiduciary duty to his clients.

### E.  Plaintiffs State a Claim for Negligence.

The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Williams v. Parker*, 472 S.W.3d 467, 470 (Tex. App. 2015). The components of proximate cause are cause-in-fact and foreseeability. *Id*.

Texas recognizes a common-law duty when a broker or adviser recommends an unsuitable investment. *See, e.g., Villarreal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 113 (Tex. App. 2010); *Miley v. Oppenheimer & Co*., 637 F.2d 318, 326 (5th Cir. 1981).

Beyond that, to establish the applicable standard of care under the circumstances, the Court may examine professional standards of conduct in the industry. In this case, the applicable standards of conduct for Maraboyina are the rules promulgated by FINRA (FINRA Rule 2111 and Reg BI). Those who undertake any work or calling for which a special skill is required such as a broker-dealer or investment advisor have a duty not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability. Defendant owed Plaintiffs a duty to act as a reasonably prudent investment advisor or broker-dealer would do under the same or similar circumstances. The duties set forth herein arise from the regulations, customs and usage of the brokerage trade, including rules promulgated by FINRA. These duties and obligations flow to Plaintiffs as a result of the client relationship between them.

Maraboyina was an investment advisor licensed and going business in Ohio at all times relevant and solicited his client Casey Oaks in Ohio. Accordingly, Ohio Administrative Code - O.A.C 1301:6-3-44 (E)(1)(f)(i) is controlling here and neatly establishes the duty owed by Maraboyina. The controlling regulation provides:

> (1) It shall be unlawful for any investment adviser licensed or required to be licensed under Chapter 1707. of the Revised Code, or any investment adviser representative employed by or associated with an investment adviser licensed or required to be licensed under Chapter 1707. of the Revised Code, to: (f) Engage, or

attempt to engage, **in any act or practice constituting a breach of fiduciary duty**, including but not limited to:

(i) Recommending the purchase, sale, or exchange of any security **without a reasonable basis to believe that the recommendation is suitable for and in the best interest of the client after reasonable inquiry** concerning the client's investment objectives, financial situation and needs, and any other information known, or in the exercise of reasonable diligence should be known, by the investment adviser or investment adviser representative

Maraboyina was required to perform reasonable due diligence on a private placement prior to offering it for sale to its customers pursuant to FINRA Rule 2111.05(a), FINRA Regulatory Notice 10-22, NASD Notice to Members 03-71, and NASD Notice to Members 05-26, 17 C.F.R. § 240.15l-1(b)(1). Reasonable-basis suitability requires that a broker-dealer (1) perform reasonable diligence to understand the potential risks and rewards associated with a recommended security or strategy and (2) determine whether the recommendation is suitable for at least some investors based on that understanding. A broker-dealer can violate reasonable-basis suitability under either prong of the test. Maraboyina could not rely blindly upon the issuer for information concerning a company, nor may he rely on the information provided by the issuer in lieu of conducting his own reasonable investigation.

SEC Regulation Best Interest ("Reg B1") provides Maraboyina as a placement agent owed the following duties to Plaintiff and the Class:

(ii) Care obligation. The broker, dealer, or natural person who is an associated person of a broker or dealer, in making the recommendation, exercises reasonable diligence, care, and skill to:

(A) Understand the potential risks, rewards, and costs associated with the recommendation, and have **a reasonable basis to believe that the recommendation could be in the best interest of at least some retail customers**;

(B) **Have a reasonable basis to believe that the recommendation is in the best interest of a particular retail customer based on that retail customer's investment profile and the potential risks**, rewards, and costs associated with the recommendation and does not place the financial or other interest of the broker, dealer, or such natural person ahead of the interest of the retail customer;

15

(C) Have a reasonable basis to believe that a series of recommended transactions, even if in the retail customer's best interest when viewed in isolation, is not excessive and is in the retail customer's best interest when taken together in light of the retail customer's investment profile and does not place the financial or other interest of the broker, dealer, **or such natural person** making the series of recommendations ahead of the interest of the retail customer.

(17 C.F.R. § 240.15l-1(b)(1).)

As set forth in FINRA Regulatory Notice 10-22 and securities industry standards, a reasonable investigation of Cloth and its history by Maraboyina would have included:

a.    Examining historical financial statements of Cloth, with particular focus, if available, on financial statements that have been audited by an independent certified public accountant and auditor letters to management;

b.    Looking for any trends indicated by Cloth's financial statements;

c.    Contacting customers and suppliers regarding their dealings with Cloth;

d.    Reviewing Cloth's contracts, leases, and financing arrangements;

e.    Inquiring about Cloth's past securities offerings and the degree of their success; and

f.    Inquiring about the length of time that Cloth had been in business and whether the focus of its business was expected to change.

As set forth in FINRA Regulatory Notice 10-22 and securities industry standards, a reasonable investigation of Cloth's business prospects by Maraboyina should include:

a.    Inquiring about the viability and value of any movies funded by Cloth;

b.    Inquiring about the industry in which Cloth operates, and the competitive position of Cloth; and

c.    Requesting any business plan, business model or other description of the business intentions of Cloth and its management and their expectations for the business, and

analyzing management's assumptions upon which any business forecast is based. A broker/dealer should test models with information from representative assets to validate projected returns, break-even points, and similar information provided to investors.

Maraboyina, undoubtedly, owed Plaintiffs a duty to act as a professional in his position would act. And the Amended Complaint is jam-packed with allegations of the ways in which Maraboyina breached those obligations, but it comes down to the fact that he failed to "evaluate the suitability of the investment before offering it." (Am. Cmplt, ¶ 208). More specifically, Maraboyina failed in each one of these regards:

    a. He failed to carefully examine any reports by third-party experts that may raise red flags;

    b. He failed to obtain an expert opinion from auditors and financial experts and others as necessary to form a basis for determining the suitability of the investment prior to recommending the security to investors;

    c. He failed to inquire about previous or potential regulatory or disciplinary problems of the issuer;

    d. He failed to obtain a credit check of Cloth;

    e. He failed to make reasonable inquiries concerning the issuer's management. Maraboyina should have inquired about such issues as the expertise of management for the issuer's business and the extent to which management has changed or is expected to change;

    f. He failed to inquire about the forms and amount of management compensation, who determines the compensation and the extent to which the forms of compensation could present serious conflicts of interest. A party acting as a broker-dealer might make similar inquiries concerning the qualifications and integrity of any board of directors or similar body of the issue; and

    g. He failed to inquire about the length of time that the issuer has been in business and whether the focus of its business is expected to change.

(Am. Cmplt, ¶ 208).

The Amended Complaint alleges Maraboyina failed to perform <u>any</u> due diligence and that easily establishes the element of breach.

Defendant attempts to defeat the negligence claim under the causation prong, arguing that

the Participation Agreements contain a clause whereby Plaintiffs disclaim reliance <u>on CWMF</u>. Even if the Participation Agreements were considered – which they should not be – as a matter of law, generalized risk disclosures cannot bar statutory or fiduciary duties. 84 FR 33669; *see also Italian Cowboy Partners, Ltd. v. Prudential Ins*., 341 S.W.3d 323, 336-38 (Tex. 2011).

Even still, the language is narrow and should be construed strictly and narrowly. *In re Heritage Org., L.L.C*., 375 B.R. 230, 265 n.50 (Bankr. N.D. Tex. 2007) ("This Court concludes that a narrower interpretation of the circumstances under which a prospective reliance disclaimer is enforced is appropriate.) The clause states: "The Financier is not relying on the Lender, its affiliates or counsel to any of them in this regard." This clause is anything but a broad or full disclaimer clause. The critical question when determining whether to enforce a disclaimer is whether the language and structure of the contract, taken in context, evinces a clear intent by a party to disclaim reliance on representations outside of and contrary to the terms of the contract. *Travelhost, Inc. v. Brady*, 3:11-CV-00454-M-BK, 2012 U.S. Dist. LEXIS 186336, at *7-8 (N.D. Tex. 2012).

The clause is clear that it only disclaims reliance on "Lender," "affiliates," and "counsel." The term "Lender" is defined as Creative Wealth. In this situation, the term "counsel" should be understood to mean an attorney. Maraboyina is neither, so he relies on the term "affiliate" in his motion without any factual or legal support to suggest that he is an affiliate of Creative Wealth. Maraboyina simply makes the legal conclusion that "affiliate" includes him. However, the term "affiliate" is undefined in the agreement and does not unambiguously include him.

Black's Law Dictionary has two definitions of the term: (1) "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation," and (2) "[o]ne who controls, is controlled by, or is under common control with an

issuer of a security." Maraboyina is not a corporation so could not be considered a corporate affiliate under the first definition. And there are no allegations or suggestions that Maraboyina controls Creative Wealth, is controlled by Creative Wealth, or is under common control with Creative Wealth to qualify him under the second definition. Besides, Plaintiffs have already acknowledged that Creative Wealth is not "an issuer of a security," thus defeating any suggestion that Maraboyina is an affiliate discussed in the very narrow risk disclosure statement.

In *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, the court concluded that the disclaimer of reliance clause that stated that the party signed the agreement "voluntarily and without reliance upon any statement or representation by any party, lawyer or <u>third party</u>" was clear and unequivocal. 465 S.W.3d 331, 2015 Tex. App. LEXIS 5512 *9(Tex. App 2015) (Emphasis added). If Plaintiffs and Creative Wealth had intended to include Maraboyina in the reliance disclaimer, they needed to be more specific.

Reading the risk disclosure statement strictly and narrowly, as we must, it only applies to Creative Wealth. Besides, the Participation Agreements are between Plaintiffs and <u>Creative Wealth</u>, not Defendant. A third-party fiduciary cannot wipe away his own duty by pointing to a contract to which he is not a party. Likewise, we already know that SEC guidance precludes an investment advisor from relinquishing their fiduciary duties: "adviser's federal fiduciary duty may not be waived." 84 FR 33669. And "[a] contract provision purporting to waive the adviser's federal fiduciary duty generally… would be inconsistent with the Advisers Act, regardless of the sophistication of the client." 84 FR 33669. Moreover, the Participation Agreements' boilerplate "no reliance" language conflicts with Defendant's oral assurances and hidden conflicts; that factual conflict **cannot** be resolved on the pleadings. *Id*. To the extent there is any ambiguity as to whether Maraboyina was intended by the parties to be included within the reliance disclaimer, that

19

ambiguity cannot be determined at this stage.

Ultimately, whether Defendant's inadequate investigation "proximately caused" Plaintiffs' losses is a fact issue inappropriate for resolution on the pleadings. *Praesel v. Johnson*, 967 S.W.2d 391, 394 95 (Tex. 1998). But it is by no means a stretch of the imagination to suggest that if Plaintiffs had been informed of the many red flags surrounding Cloth – his disreputable history, the payment structure of the investments, and Maraboyina's lack of due diligence on the investments – they would not have risked substantial amounts of money in a Ponzi scheme.

Maraboyina's duties are defined by FINRA and the SEC. He cannot close his eyes to the many red flags with which he was faced without performing due diligence. He had a duty to investigate and a duty to inform his clients that the investment was risky and unsuitable. He failed in that regard and cannot avoid a claim for negligence where he had a duty to disclose information and the information, he omitted was material to investors understanding the incredible risks involved.

### F.  Plaintiffs State a Claim for Assumpsit.

Assumpsit was developed to redress circumstances involving unjust enrichment or an implied promise to pay what in good conscience defendant was bound to pay the plaintiff. *Tri-State Chem., Inc. v. Western Organics, Inc*., 83 S.W.3d 189, 193-94 (Tex. App.—Amarillo 2002, pet. denied). Over time, assumpsit was divided into various categories. *Id*. at 194. Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund. *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ). The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All Plaintiffs need show is that defendant holds money which in

equity and good conscience belongs to him. *Staats v. Miller*, 150 Tex. 581, 584, 243 S.W.2d 686, 687-88 (1951) (quoting 58 C.J.S., Money Received § 4a). A cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money which ... belongs to the plaintiff. *Id*. (quoting *United States v. Jefferson Elec. Mfg. Co*., 291 U.S. 386, 402-03 (1934)).

A cause of action for money had and received is not premised on wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another. *Amoco*, 946 S.W.2d at 164. Such an action may be maintained to prevent unjust enrichment when a party obtains money which in equity and good conscience belongs to another. *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App. 2005). In short, it is an equitable doctrine applied to prevent unjust enrichment. *Id*.

To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him. *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied). A plaintiff may plead assumpsit in the alternative even where an express contract exists with a **different** party. *Sewell v. Smithkline Beecham Corp.*, 584 F. Supp. 2d 548, 550-51 (W.D. Tex. 2008).

The Participation Agreements run between Plaintiffs and CWMF, not Defendant. As such, the Participation Agreements do not preclude Plaintiffs' claim for assumpsit. The Amended Complaint alleges Defendant retained millions in placement-based commissions and producer fees that "in equity and good conscience" belong to Plaintiffs. Plaintiffs, undoubtedly, paid more for their investment to cover the fees that Cloth would, in turn, compensate Maraboyina. The money may have passed through a middleman, but it was Plaintiffs' investment that funded Maraboyina's

fees. And he profited handsomely. Under the circumstances, Maraboyina should not be entitled to retain his ill-gotten gains while Plaintiffs have lost millions. As such, Plaintiffs establish a claim for assumpsit.

## CONCLUSION

WHEREFORE, Plaintiffs pray for an order denying Defendants' Motion to Dismiss and awarding such other and further relief as the Court deems just.

Dated: April 30, 2025

Respectfully submitted,

**CASEY OAKS and JAMES MORMILE,**
Plaintiffs

By: _Alexander Loftus_

ALEXANDER LOFTUS, Esq.
**LOFTUS & EISENBERG, LTD.**
161 N. Clark Suite 1600
Chicago, Illinois 60601
Ph: 312.899.6625
alex@loftusandeisenberg.com

*- and -*

JAMES CREWSE, Esq.
Texas Bar No. 24045722
**CREWSE LAW FIRM, PLLC**
5919 Vanderbilt Ave.
Dallas, Texas 75206
Ph:  214.394.2856
jcrewse@crewselawfirm.com

**ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASSES**

22