IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | |
|---|---|
| **CASEY OAKS and JAMES MORMILE** individually and on behalf of a class of similarly situated investors, §§§§ Plaintiffs, §§ v. §§ **SURAJ MARABOYINA,** §§ Defendant. §§§ | Case No. 3:23-cv-02833-X |

**DEFENDANT'S REPLY IN SUPPORT OF HIS
MOTION TO STRIKE AND DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs' Response to Defendant's Motion to Dismiss demonstrates why this case cannot move forward. Plaintiffs' Response confirms that their amendments far exceed the scope of leave granted in the Court's February 6, 2025 order. Plaintiffs' amendments drop the securities fraud/misrepresentation theory from their first complaint, in part because Plaintiffs concede the investments are not even securities as initially pled and to avoid the heightened pleading standard that applies to securities fraud claims. ECF No. 27 at 8. Even if Plaintiffs' new claims are considered, Plaintiffs fail to allege sufficient facts to support the elements of those claims, they rely on securities-based theories that do not apply to non-securities, and they executed contracts that contradict their allegations. As this is Plaintiffs' second attempt to concoct claims against Maraboyina, their claims should be dismissed with prejudice. For these reasons, and those in the Motion, the Court should strike Plaintiffs' original claim or dismiss Plaintiffs' Complaint in its entirety with prejudice.

I.   ARGUMENT

a. **Plaintiffs' new claims and the Conover allegations should be stricken.**

Plaintiffs' new claims should be stricken without reaching their merits. Plaintiffs' Amended Complaint goes well beyond "curing the defects [the Court's] opinion identifies." ECF No. 18 at 11; ECF No. 27 at 7. Plaintiffs initially sued Maraboyina for securities fraud and negligent misrepresentation on the theory that Maraboyina had made false representations that induced their investment. The Amended Complaint wholly abandons the securities fraud/misrepresentation theory and changes the case to one about negligently offering investments. Plaintiffs concede the real reasons for the amendments were that (1) they determined the investments involved were not securities and (2) to avoid the heightened pleading standards that apply to fraud-based claims under Federal Rule of Civil Procedure Rule 9. ECF No. 27 at 8.

Plaintiffs cite Texas Rule of Civil Procedure 63 and Texas state court cases to argue that the Court has no discretion to refuse their amendments. ECF No. 27 at 8-9. But federal procedural rules, not state rules, govern here. *Klocke v. Watson*, 936 F.3d 240, 244–45 (5th Cir. 2019), *as revised*

(Aug. 29, 2019). Under the Federal Rules, once a brief window has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P 15(a)(2). Although the "court should freely give leave when justice so requires," *id.*, trial judges in federal court retain the discretion to deny or limit the scope of amendment. *See, e.g.*, *Williams v. City of Irving*, No. 3:15-CV-1701-L, 2018 WL 4145052, at *8 (N.D. Tex. Aug. 30, 2018); *cf. Gilmore v. Off. of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*, No. CV 14-00434-JWD-EWD, 2016 WL 3675482, at *7 (M.D. La. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 3675485 (M.D. La. July 7, 2016). This Court has the authority and discretion to strike Plaintiffs' Amended Complaint, which went well beyond the scope of correcting the defects identified by the Court without first seeking the Court's leave.

In addition to the new claims, Plaintiffs' allegations related to a separate case with distinct facts should be stricken. The Conover case does not involve the same "acts and omissions," and there are significant differences between that case and this one. ECF No. 23 at 8-9. Plaintiffs claim the settlement order between Conover and the SEC is persuasive authority, but negotiated settlement agreements between private parties and the government reflect compromises and thus are neither precedential nor persuasive. *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971). ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes…."). Further, Conover is fundamentally inapplicable; Plaintiffs do not plead any violations of the Advisers Act, nor do they allege that Maraboyina invested clients' money he held in a fund. The Conover allegations have no possible relation to this case and appear intended only to cause prejudice. They should be stricken. *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012); *Jefferson Parish Consol. Garbage Dist. No. 1 v. Waste Mgmt. of La.*, 2010 WL 1731204, at *5 (E.D. La. Apr. 28, 2010).

### b. The Court may take judicial notice of the Participation Agreements.

Next, the Court should take judicial notice of the Participation Agreements, which are "attached to the motion to dismiss and that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Plaintiffs do not dispute that the investments at issue are governed by the Participation Agreements, that the Participation Agreements are central to their claims, or that their own Complaint refers to and quotes from them. *See, e.g.*, ECF No. 19, ¶ 99. Nor do Plaintiffs argue that the Participation Agreements are in fact incomplete or inauthentic. Rather, Plaintiffs' sole objection is that Maraboyina has not sufficiently authenticated the Agreements. ECF No. 27 at 10. Plaintiffs' argument is disingenuous. Contrary to Plaintiffs' claim that "there is no way to confirm the authenticity of the generic electronic signatures at this stage," *id.*, each of the Participation Agreements submitted with the Motion to Dismiss (except one, as noted in the Terwey Declaration) bears Casey Oaks's signature. Casey Oaks is one of the lead plaintiffs in this case and is represented by the counsel that drafted Plaintiffs' response. As a party to the agreements, Oaks would be in the best position to dispute authenticity—yet he makes no such claim. If Plaintiffs believe the Participation Agreements are inauthentic or are not the latest or best version of their agreements with CWMF, they must say that directly. If Plaintiffs are not actually challenging the authenticity of the Participation Agreements, the Court should be able to take judicial notice of them.

### c. Plaintiffs fail to state a claim for breach of fiduciary duty.

Despite the Court's guidance, Plaintiffs have doubled down on breach of fiduciary duty without adding any facts that make that claim plausible. Plaintiffs' reliance on securities regulations to make up for their lack of factual allegations fails, not least because Plaintiffs now concede that this case does not involve securities. The Court should dismiss their breach of fiduciary duty claim.

> i. **Plaintiffs fail to allege facts that establish that Maraboyina was formally or informally their personal investment advisor.**

In the Court's opinion, the Court noted Plaintiffs failed to allege facts that would support the existence of a principal-agent relationship. ECF No. 18 at 10-11. This flaw persists in the Amended Complaint. Despite the Court's guidance, Plaintiffs claim a fiduciary relationship while at the same time describing Maraboyina as a "middleman" between them and Cloth. ECF No. 19 ¶ 131. Plaintiffs repeatedly refer to Maraboyina as a "placement agent," a "representative of [CWMF] selling investment [*sic*] to wealthy individuals in the United States," or a "broker for Cloth," which, taking their own allegations as true, would make him an affiliate of their counterparty, not their own representative. *Id.* ¶¶ 5, 14, 129, 154, 157, 176, 177.

Plaintiffs point to "new" allegations they claim establish an informal fiduciary relationship, if not a formal one, ECF No. 27 at 12-13, but Plaintiffs' allegations are more consistent with Maraboyina acting as a placement agent for CWMF, not as Plaintiffs' personal investment advisor. Plaintiffs' allege that Maraboyina discussed only investments with CWMF with Plaintiffs, told them he had invested his own funds, and had more access to information from Cloth. ECF No. 27 at 13. Plaintiffs do not dispute that their Amended Complaint is still missing several hallmarks of a fiduciary relationship: Plaintiffs do not allege that they ever exchanged any money with or paid any money to Maraboyina, that they participated in any fund invested by Maraboyina, that Maraboyina offered any investments to them other than the investments in CWMF, or that they were ever clients of the FINRA-registered financial firm Maraboyina purportedly worked for. ECF No. 23 at 12-13.

> ii. **Plaintiffs' repeated citation to FINRA and SEC regulations is not sufficient to establish that Maraboyina owed them a fiduciary duty, particularly because this case does not involve securities.**

Once again, Plaintiffs' fiduciary duty allegations primarily consist of block quotations from SEC and FINRA regulations addressing the private placements of securities. As the Court noted in its order, allegations that Maraboyina was licensed as a certified financial advisor—or that FINRA

4

or the SEC regulate broker-dealers or investment advisors selling securities—do not, without more, establish the existence of a fiduciary duty in ***this*** case. ECF No. 18 at 10-11. Plaintiffs' conclusory assertion that "Maraboyina owed Plaintiffs and the Class a fiduciary duty as a Registered Investment Advisor as a matter of law" does not cut it. ECF No. 19, ¶ 202. Plaintiffs attempt to distinguish *Moss v. Morgan Stanley Inc.*, but they do not its central principle: the existence of SEC and FINRA regulations does not automatically impose a "special duty of disclosure on broker-dealers simply by virtue of their status as market professionals." 719 F.2d 5, 15 (2d Cir. 1983), *cert. denied* 465 U.S. 1025 (1984). Plaintiffs agree with the basic premise that investment advisers only have a fiduciary relationship "with their clients," not to the general public or with counterparties. ECF No. 27 at 12.

Further, for the first time in their response brief, Plaintiffs concede that the investments at issue are not securities: "Plaintiffs…determined that the Cloth Offering likely ***does not qualify as a security***." ECF No. 27 at 8 (emphasis added). Yet all the regulations they cite in their Amended Complaint and response are regulations related to the private placement of securities. As discussed further below, Regulation D and the corresponding FINRA rules do not apply to transactions that do not involve securities and thus cannot create a fiduciary duty here.

### d.  Plaintiffs fail to state a claim for negligence.

Plaintiffs' negligence claim fails because they do not establish Maraboyina owed them any duty or that Maraboyina proximately caused their injuries. Plaintiffs' new admission[1] that their case does not involve securities raises an additional flaw: they rely exclusively on securities regulations to supply the duty of care, yet securities regulations do not apply to the transactions at issue.

### i.  Plaintiffs do not sufficiently allege Maraboyina owed them a duty.

As discussed in the opening brief, the threshold question in a negligence action is the

---

[1] Maraboyina raised this issue briefly in his opening brief (ECF No. 23 at 14) because Plaintiffs' position was that the investments were securities. *See* ECF No. 19, ¶ 205 ("securities such as the Cloth notes"). Plaintiffs abandoned this position for the first time in their response brief; thus, this is Maraboyina's first opportunity to respond.

5

existence of a duty. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). FINRA and SEC regulations, without allegations supporting a client relationship, cannot supply a duty of care until it has been established that a defendant owes a plaintiff such a duty. *Weatherly v. Pershing, LLC*, 2015 WL 13742270, at *3 (N.D. Tex. June 23, 2015). For the reasons above, Plaintiffs' response fails to identify any *facts* demonstrating that Maraboyina owed them a particular duty.

> ii. **Plaintiffs rely exclusively on securities regulations to establish a standard of care, but Plaintiffs concede the investments at issue are not securities.**

Plaintiffs contend that the "applicable standards for conduct for Maraboyina are the rules promulgated by FINRA which each broker offering securities such as the Cloth notes should be a member of." ECF No. 19 ¶ 205. The cited FINRA regulations govern private placements *of securities* under SEC Regulation D. For the first time in its response brief, however, Plaintiffs concede this case does not involve securities. ECF No. 27 at 8. Yet Plaintiffs rely on securities regulations to supply a duty of care even though those regulations expressly do not apply to non-securities. Plaintiffs cite "the suitability requirements of FINRA Rule 2111" to define what a "reasonable investigation" by an investment advisor should entail. ECF No. 19, ¶¶ 171-72. But FINRA explicitly states that "where a broker-dealer's or registered representative's recommendation does not refer to a security or securities, *the suitability rule is not applicable*." *See* FINRA Rule 2111 (Suitability) FAQ at A4.3 (emphasis added).[2] Plaintiffs assert for the first time in their response brief that Ohio securities laws are another source of the duty of care. ECF No. 27 at 14-15. Not only did Plaintiffs fail to include any such allegations in their Amended Complaint, but the Ohio provision they cite also applies only to "[r]ecommending the purchase, sale, or exchange *of any security*." O.A.C 1301:6-3-44 (E)(1)(f)(i) (emphasis added). Similarly, Plaintiffs cite in their response brief SEC Regulation BI for the duty of care, but again Regulation BI applies to "broker-dealers that make recommendations of *any securities transaction* or *investment strategy involving securities* to retail

---

[2] Available at https://www.finra.org/rules-guidance/key-topics/suitability/faq.

customers," not to transactions involving non-securities. *See* FAQs on Regulation Best Interest, U.S. Securities and Exchange Commission (Feb. 11, 2020).[3] Plaintiffs identify no cases in which a court applied securities regulations to set the duty of care for non-security transactions, nor do they even acknowledge this inconsistency. As Plaintiffs fail to allege or identify any applicable duty of care, their allegations are insufficient to establish that Maraboyina breached any duty of care.

### iii. Plaintiffs fail to allege facts to support causation.

Plaintiffs also fail to allege that anything Maraboyina did directly or proximately caused their injuries. Plaintiffs' response focuses only on whether the disclaimer language in the Participation Agreements applies to Maraboyina, who is not a signatory to those agreements. Specifically, they argue that Maraboyina is not an affiliate because he is not a corporation and is not controlled by CWMF, as affiliate is defined in Black's Law Dictionary. ECF No. 24 at 18-19. First, Plaintiffs' allegations in the Amended Complaint support the finding that Maraboyina worked for CWMF and thus was an affiliate of CWMF. To list just a few examples, Plaintiffs allege that Maraboyina was a placement agent and broker for Cloth[4] in America; "Maraboyina was a representative of Creative Wealth Media Finance Corp. ("CWMF"); Maraboyina was paid by CWMF for his work as a placement agent/broker; and all but one production Maraboyina raised money for were for Bron or Creative Wealth (companies Plaintiffs allege were under common control). ECF No. 19, ¶¶ 5, 14, 31, 35, 56. Taking Plaintiffs' allegations as true, then, Maraboyina was an affiliate of CWMF.

Second, Maraboyina's argument regarding causation is not limited to whether the disclaimers and "no reliance" language are enforceable as applied to him. Rather, there are several provisions in the Participation Agreements and Term Sheets that Plaintiffs, and specifically Casey Oaks signed, that would render their reliance on Maraboyina's representations unjustifiable and thus vitiate

---

[3] Available at https://www.sec.gov/rules-regulations/staff-guidance/trading-markets-frequently-asked-questions/faq-regulation-best.
[4] Plaintiffs appear to use "Cloth" and "CWMF" interchangeably throughout their Amended Complaint.

causation. Plaintiffs emphasize purported statements made by Maraboyina that the investments were "low risk," ECF No. 19, ¶¶16, 22, yet signed agreements in which they acknowledged "the risks inherent in making loans and/or equity investments in the Picture and the related risks inherent in developing, producing, and marketing the Picture, including but not limited to the possibility of cost overruns, lower sales than anticipated and loss of financing"; that there "is no assurance that [they] will earn a profit from or recoup its Participation"; that they "relied on [their] own examination of the investment"; and were "aware that [they] may be required to bear the financial risks of this investment for an indefinite period of time." *See* ECF No. 23 at 2-3 (quoting agreements and term sheets). Whether asserted under a fraud or negligence theory, "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms," nor can such a party reasonably expect outcomes or conditions that contradict terms expressly written in that contract. *Beauty MedSpa, Inc. v. FPG The Point LP*, 2021 WL 4991998, at *4 (N.D. Tex. Oct. 27, 2021) (citing *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424-25 (Tex. 2015); *accord JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 659-60 (Tex. 2018)); *see also Beauty MedSpa, Inc.*, 2021 WL 4991998, at *5. Plaintiffs cannot claim they relied on extracontractual statements promising a result different from the one they expressly consented to in the contracts.

Finally, other than to state that proximate cause is a fact question that cannot be resolved on the pleadings, ECF No. 24 at 20, Plaintiffs do not respond to—and therefore concede—Maraboyina's argument that they have failed to allege that Maraboyina, and not a third party like Jason Cloth or CWMF, proximately caused their injury. For these reasons, Plaintiffs have not alleged facts establishing the causation element of their negligence claim, and that claim must be dismissed.

   e. **Plaintiffs fail to state a claim for assumpsit.**

Plaintiffs' third and final claim for assumpsit also fails. "Where one seeks a recovery in assumpsit ... the complaining party must only show that the defendant holds money which in equity

8

and good conscience belongs to the plaintiff." *King v. Tubb*, 551 S.W.2d 436, 442 (Tex.App.—Corpus Christi 1977, no writ); *see also Staats v. Miller*, 243 S.W.2d 686 (Tex. 1951). For a plaintiff to recover under this theory, he must show that there is "a quasi-contractual obligation to repay funds advanced for another's benefit." *Tubb*, 551 S.W.2d at 442; *Staats*, 243 S.W.2d 686. Plaintiffs fail to allege any of these elements: Plaintiffs appear to allege that they are entitled to money from Maraboyina because Plaintiffs invested money **with Cloth/CWMF** and were not repaid, ECF No. 19 ¶ 216 (emphasis added), but Plaintiffs fail to allege in their Amended Complaint that they paid any money to or exchanged any money with Maraboyina, that they advanced any money to Maraboyina, or that there was any sort of quasi-contractual understanding between Plaintiffs and Maraboyina through which **he** received funds from Plaintiffs and unjustly retained them or under which Plaintiffs expected any repayment or future benefit from Maraboyina. Plaintiffs state in their response brief that "Plaintiffs, undoubtedly, paid more for their investment to cover the fees that Cloth would, in turn, compensate Maraboyina. The money may have passed through a middleman, but it was Plaintiffs' investment that funded Maraboyina's fees," ECF No. 24 at 21-22, but these facts do not establish the existence of a quasi-contract, nor are not alleged in the Amended Complaint. *Hicks v. Ashworth*, No. CV H-23-2234, 2024 WL 3243474, at *6 (S.D. Tex. June 26, 2024) ("[N]ew facts alleged in a response to a motion to dismiss are not properly before the court and will not be considered when ruling on the motion to dismiss.").

Additionally, as Maraboyina argued in opening, express contracts exist that govern Plaintiffs' claims. "Texas courts have repeatedly held that '[w]here there exists a valid express contract covering the subject matter, there can be no implied contract." *McIntosh v. Wiley*, 2006 WL 3691109, at *6 (S.D. Tex. Dec. 11, 2006) (quoting *Woodard v. S.W. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964), *see also Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied). Courts have enforced this rule even where "the plaintiff is seeking recovery from a third party foreign to the original contract but who benefited from its performance,'" which are precisely

9

the circumstances alleged by Plaintiffs. *McIntosh*, 2006 WL 3691109, at *6. Plaintiffs claim they can nonetheless plead assumpsit in the alternative even where an express contract exists with a different party, but the case they cite does not support that proposition, nor is that proposition consistent with other Texas cases that have addressed this issue. ECF No. 27 at 21.[5] Plaintiffs' assumpsit claim should be dismissed.

### f. Dismissal should be with prejudice to refiling.

Finally, Plaintiffs' response further demonstrates that dismissal with prejudice is appropriate. This is Plaintiffs' second attempt to state claims against Maraboyina, and Plaintiffs have abandoned their initial set of claims from the original Complaint. As Plaintiffs' second attempt should also be dismissed in its entirety under Rule 12(b)(6), it is clear that facts that could support claims against Maraboyina do not exist and any further amendment will be futile. *Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004). Plaintiffs are not entitled to use the amendment process to guess at claims against Maraboyina until they find something that works.

## II. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant the Motion and dismiss Plaintiffs' Amended Complaint in its entirety with prejudice and award Defendant all other relief to which he is entitled.

---

[5] In Plaintiffs' original response brief, Plaintiffs cited *Sewell v. Smithkline Beecham Corp.*, 584 F. Supp. 2d 548, 550-51 (W.D. Tex. 2008), for the proposition that Texas courts allow assumpsit to be pleaded in the alternative even where an express contract exists. ECF No. 24 at 21. Counsel for Maraboyina attempted to find the *Sewell* case but could not find any case that matched the citation or case name, even after searching for the case in Westlaw and on the Western District of Texas docket using PACER. Defense counsel asked Plaintiffs' counsel for a correct citation or a copy of the case, which Plaintiffs were unable to provide. Plaintiffs contend that the citation was a typo and the correct citation should have been an "*id.*" citation to the previously cited case, *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied), but that case, which reviews a post-trial judgment, does not involve pleadings made in the alternative and instead supports Defendants' argument that the existence of an express contract bars quasi-contractual claims. *See id.* at 838. Plaintiffs submitted a corrected brief with the "*id.*" cite. ECF No. 27 at 21 n.2. Defense counsel's concern is that the proposition and the *Sewell* citation may have been the result of an AI "hallucination" and that, if generative AI was used, there could be other portions of the brief that were also "hallucinated," although defense counsel has not identified any other instances. Plaintiffs' counsel has represented to defense counsel they did not use AI, and their brief does not contain the generative AI disclosure required by N.D. Tex. Local Rule 7.2(f).

Respectfully submitted,

*/s/ Margaret D. Terwey*
Margaret D. Terwey
Texas Bar No. 24087454
margaret.terwey@rm-firm.com
Tyler Bexley
Texas Bar No. 24073923
tyler.bexley@rm-firm.com
REESE MARKETOS LLP
750 N. Saint Paul St.,
Suite 600
Dallas, Texas 75201-3201
214.382.9810 telephone
214.501.0731 facsimile

ATTORNEYS FOR DEFENDANT

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served by electronic transmittal by CM/ECF to all counsel of record on May 14, 2025.

*/s/ Margaret D. Terwey*